JEFFREY L. METZNER, M.D., P.C.
3300 EAST FIRST AVENUE
SUITE 590
DENVER, COLORADO

TELEPHONE (303) 355-6842
FACSIMILE (303) 322-2155

December 21, 2010

The Honorable Virginia M. Kendall
United States District Court
Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

RE: *U.S.A. v Cook County, et al*
    No. 10 C 2946

Dear Judge Kendall:

The enclosed report is my second report re: mental health services at the Cook County Jail pursuant to the Agreed Order of May 13, 2010. Please contact me if you have any questions.

Sincerely,

Jeffrey L. Metzner, M.D.
Clinical Professor of Psychiatry
University of Colorado School of Medicine

Attachments (Executive Summary, 12-21-10 Final Report, Appendices I-III)

Copies:

Donald J. Pechous, Esq.
Cook County State's Attorney's Office

500 Richard J. Daley Center
Chicago, Illinois 60610

Daniel Gallagher, Esq.
Querrey & Harrow, Ltd.
175 West Jackson, Suite 1600
Chicago, Illinois 60604

David Deutsch, Esq.
U.S. Department of Justice
P.O. Box 66400
Washington, DC 20035-6400

JEFFREY L. METZNER, M.D., P.C.
3300 EAST FIRST AVENUE
SUITE 590
DENVER, COLORADO

TELEPHONE (303) 355-6842
FACSIMILE (303) 322-2155

# MEMORANDUM

**TO:** Donald J. Pechous, Esq.
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60610

Daniel Gallagher, Esq.
Querrey & Harrow, Ltd.
175 West Jackson, Suite 1600
Chicago, Illinois 60604

David Deutsch, Esq.
U.S. Department of Justice
P.O. Box 66400
Washington, DC 20035-6400

**FROM:** Jeffrey L. Metzner, M.D.
**DATE:** December 21, 2010
**RE:** *U.S.A. v Cook County, et al*
No. 10C2946

I have completed my assessment of the mental health services offered at the Cook County Department of Corrections (CCDOC) through Cermak Health Services of Cook County (CHSCC). I site visited CCDOC from December 12-17, 2010.

Sources of information utilized in compiling this report included the following:

1. review of documents provided in response to my written request for pre-site information (see Appendix I), which included a status update to the Agreed Order,
2. review of agendas and minutes, since September 2010, re: weekly psychiatry/psychology meetings,
3. review of the following documents:
    a. Cermak Health Services Mental Health Classification – Levels of Care,
    b. draft intake mental health screening policy,

Re: Mental Health Services at CCDOC
*USA v Cook County, et al.*
Page 2 of 3

      c. draft post-intake mental health screening policy,
      d. draft suicide prevention program policy,
      e. draft restraint and seclusion policy,
      f. draft psychotropic medication policy,
      g. job descriptions for the mental health unit director, psychiatrist and the relief psychiatrist positions,
      h. the CHS action item tracker,
      i. draft health services request form,
      j. Cermak MH CQI Metrics,
      k. MH CQI minutes from October – November 2010,
      l. draft Guidelines for Limited Use: Controlled Substances within a Correctional Environment Benzodiazepines and Other Sedative-Hypnotics ,
      m. slides relevant to the Cook County Sheriff's Training Institute re: suicide prevention,
4. the proposed unit-based psychiatric coverage plan,
5. the DMH waitlist,
6. interviews with many inmates in group settings in Divisions II, IV, X, and in the Cermak mental health units, and
7. information obtained from key administrative and clinical staff that included, but was not limited to the following persons:

      a. Michael Puisis, D.O. (Director of Cook County Bureau of Health),
      b. Terre Marshall (Mental Health Director),
      c. Avery Hart, M.D. (Director of Medical Services),
      d. Nneka Jones, Psy.D. (Chief of Psychology),
      e. Ralph Menezes, M.D. (Chief Psychiatrist (A)),
      f. Elli Montgomery (Sheriff's Office Patient Advocate),
      g. Marilyn Martinez (Superintendent, Division 10),
      h. Carlos Quezada-Gomez, Psy.D.,
      i. Pierre Nunez, Ph.D.,
      j. Kelly Combs, Psy.D.,
      k. Jamie Wernsman, Ph.D., and
      l. Gary Knuik, Psy.D.

I also met with the line mental health staff in a group setting during the December 16, 2010.

I found the staff from CHSCC to be courteous and helpful throughout my five-day site visit.

In this report the term "inmate" will be used in contrast to "detainee" in order to be consistent with the Agreed Order's terminology, although the vast majority of persons admitted to CCDOC are pre-trial detainees.

The Cook County Department of Corrections consists of 9 main divisions in a group of buildings

covering over 100 acres.

The authorized number of available beds at CCDOC during December 10, 2010 was about 9837 with the inmate count being 8861. Reference should be made to Appendix II for a more detailed summary of population and capacity information.

As per the June 3, 2010 memorandum regarding the June 2, 2010 meeting that included attorneys from the Department of Justice, attorneys and representatives of the Defendants, and the monitors, my findings relevant to the Mental Health Care section of the Agreed Order are summarized in Appendix III (5-13-10 Agreed Order Mental Health provisions). Consistent with the June 2, 2010 meeting, I have forwarded my input to the other monitors who have primary responsibility for sections that overlap with various mental health provisions as summarized in the June 3, 2010 memorandum.

Please do not hesitate to contact me if I can answer any further questions.

Sincerely,

Jeffrey L. Metzner, M.D.

**Executive Summary**

This second site visit has focused on assessing the current state of compliance with the mental health provisions of the Agreed Order. The mental health services remain in the early stages of implementing the relevant provisions of the Agreed Order although some areas of significant progress were found as compared to the June 2010 site assessment.

The major areas of progress were as follows:

1. Two key leadership positions have been filled within the mental health services (Terre K Marshall, mental health director and Nneka Jones, Psy.D., chief psychologist).
2. All mental health staff positions are now Cook County employees in contrast to the prior structure which included contract employees.
3. The new "temporary" intake area for healthcare screening is now operational.
4. Beginning implementation of the electronic medical record (EMR) has occurred.
5. Mental health programming in most of the mental health housing units has increased.
6. A unit-based staffing model has very recently been implemented.

My September 2010 executive summary included the following:

> Policies and procedures are in the process of being developed and/or revised, which is a necessary before the implementation process re: most provisions of the Agreed Order can be initiated. The policies and procedures will also have a significant impact on the staffing plan that is required by the Agreed Order. Paragraph 59 g addresses specific concerns about the current draft staffing plan.

As of December 2010, approximately 30% of the necessary mental health policies and procedures have been finalized.

The September 2010 executive summary indicated that basic system issues that are in need of change and improvement include the following:

1. access to care via both the intake mental health screening processes and the post-intake referral processes,
2. treatment programming in the intermediate care programs and infirmary level of care programs,
3. communication and joint decision making between custody and mental healthcare administrators re: actions that impact on the mental healthcare system,
4. mental healthcare staffing allocations,

1

5. development of a treatment team concept,
6. development of treatment plans,
7. mental health input into the disciplinary process,
8. medication management issues,
9. suicide prevention program, and
10. quality improvement activities.

Improvement was noted found during the December 2010 site assessment in many of the above areas, but it should be emphasized that such improvements did not come close to compliance in these areas with the Agreed Order. The need for improved communication and joint decision making between custody and mental healthcare staffs at all levels re: actions that impact on the mental health care system continues. This meeting is reflective of long-standing institutional cultural barriers that involve both staffs. It was my understanding that Cermak and CCDOC are in the final stages of completion of the Inter-Agency MOA. It is unfortunate that the Department of Facilities Management has chosen not to participate in this Inter-Agency MOA process.

The planned construction of a new RTU building remains on schedule.

Not surprisingly, the obstacles to implementing provisions of the Agreed Order continue to include the following:

1. staffing allocation issues,
2. physical plant limitations,
3. institutional cultural issues, and
4. apparent longstanding interagency working relationship issues between DFM, CCDOC and Cermak.

**Summary of Compliance Findings**

All the mental health provisions of the Agreed Order assessed by this monitor were found to be in partial compliance. The following mental health provisions were/will be assessed by other monitors (Ronald Shansky, M.D. or Susan McCampbell).

*Not assessed by this Monitor*

68.   b.   **Within 24 months of the effective date of this Agreed Order, CCDOC shall train all CCDOC staff members who work with inmates on the Facility's suicide prevention program. Implementation of such training shall begin as soon as possible following the effective date of this Agreed Order. Staff shall demonstrate competency in the verbal and behavioral cues that indicate**

2

potential suicide, and how to respond appropriately. Initial and at least annual training shall be provided in accordance with generally accepted professional standards.

**Compliance Assessment:** Refer to the report by Dr. Shansky.

**Factual Findings:**

**June 2010 Cermak status update:**

**June 2010 Metzner assessment:** Refer to the report by Dr. Shansky.

68. c. Within 12 months of the effective date of this Agreed Order, Cermak shall train all Cermak staff members who work with inmates on the Facility's suicide prevention program. Implementation of such training shall begin as soon as possible following the effective date of this Agreed Order. Staff shall demonstrate competency in the verbal and behavioral cues that indicate potential suicide, and how to respond appropriately. Initial and at least annual training shall be provided in accordance with generally accepted professional standards.

**Compliance Assessment:** Refer to the report by Dr. Shansky.

**Factual Findings:**

**June 2010 Metzner assessment:** Refer to the report by Dr. Shansky.

**Recommendation:**

69. CCDOC shall ensure that security staff posts will be equipped, as appropriate, with readily available, safely secured, suicide cut-down tools.

**Compliance Assessment:** Refer to the report by Susan McCampbell.

**Factual Findings:**

**June 2010 Metzner assessment:** Refer to the report by Susan McCampbell.