**UNITED STATES OF AMERICA VS. COOK COUNTY, ET. AL.**
**Civil No. CV-02946**
Summary As of August 26, 2011

# Corrections Monitor Susan McCampbell's Report # 3

# 08 26 2011

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| **A.** | **Protection from Harm** | | | |
| **31.** | **Use of Force by Staff** | | | |
| A. 31. a. (15) | CCDOC shall maintain comprehensive and contemporary policies and procedures, in accordance with generally accepted correctional standards, surrounding the use of force and with particular emphasis regarding permissible and impermissible uses of force. | | x 9/10 x 3/11 x 8/11 | |
| A.31. b. (15) | CCDOC shall maintain use of force policies and pre-service and in-service training programs for correctional officers and supervisors that address the following impermissible uses of force: <br><br> 1. use of force as a response to verbal insults or inmate threats where there is no immediate threat to the safety of the institution, inmates, or staff; <br> 2. use of force as a response to inmates' failure to follow instructions where there is no immediate threat to the safety of the institution, inmates, or staff, unless CCDOC has attempted a hierarchy of nonphysical alternatives that are documented; <br> 3. use of force as punishment or retaliation; <br> 4. use of force involving striking, hitting, or punching a restrained and  non-combative inmate; <br> 5. use of force against an inmate after the inmate has ceased to offer resistance and is under control; <br> 6. use of choke holds on an inmate, unless lethal force is justified; and <br> 7. use of inappropriate or excessive force. | | x 9/10 x 3/11 x 8/11 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| A.31.c. (16) | CCDOC shall maintain a policy to ensure that staff adequately and promptly report all uses of force, in accordance with generally accepted correctional standards. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.d. (17) | CCDOC shall require that use of force reports:<br>1. be written in specific terms in order to capture the details of the incident<br>2. contain an accurate account of the events leading to the use of force incident;<br>3. include a description of the instrument(s) of restraint or control, if any, and the manner in which it was used;<br>4. note whether an inmate disciplinary report was completed in connection with the incident that prompted the use of force;<br>5. describe the nature and extent of apparent and reported injuries sustained both by the inmate and staff member;<br>6. contain the date and time medical attention was actually provided;<br>7. describe, in detailed, factual terms, the type and amount of force used as well as the precise actions taken in a particular incident; and<br>8. note whether a use of force was videotaped. If the use of force is not videotaped, the reporting correctional officer and supervisor will provide an explanation as to why it was not videotaped. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.e. (18) | CCDOC shall continue to require prompt review by the shift commander of all use of force reports. The shift commander's review of use of force reports shall include review for completeness and procedural errors, as well as review of the substantive content. If the use of force report does not comply with provision 31.d. of this Agreed Order, the shift commander shall return it to the reporting officer for revision and resubmission until it is compliant. If the shift commander believes a use of force may have been inappropriate or excessive, he or she shall immediately refer the incident for investigation. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.f. (19) | CCDOC shall ensure that senior management review of uses of force includes:<br>1. a timely review of medical documentation of inmate injuries, if any is submitted, as provided by Qualified Medical Staff, including documentation surrounding the initial medical encounter, an anatomical drawing that depicts the areas of sustained injury, and information regarding any further medical care;<br>2. the inmate disciplinary report, if any, associated with the use of force; and<br>3. the incident report, if any, associated with the use of force. | | x 9/10<br>x 3/11<br>x 8/11 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| A. 31.g. (20) | CCDOC [and Cermak] shall establish criteria that trigger referral for inappropriate or excessive use of force investigations, including but not limited to, documented or known injuries that are extensive or serious; injuries involving fractures or head trauma; injuries of a suspicious nature (including black eyes, injuries to the mouth, injuries to the genitals, etc.); and injuries that require treatment at outside hospitals. | | x 3/11<br><br>x 8/ll | x 9/10 |
| A. 31. h. (20) | When CCDOC review of use of force reports, and supporting records if applicable, reveals that reports of a use of force are materially inconsistent, conflicting, or suspicious, CCDOC shall refer that use of force incident for internal investigation. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.i. (21) | CCDOC shall develop and implement a system to track all incidents of use of force that, at a minimum, includes the following information:<br>1. a tracking number;<br>2. the inmate(s) name;<br>3. housing assignment;<br>4. date;<br>5. type of incident;<br>6. injuries (if applicable);<br>7. medical care provided (if applicable);<br>8. staff involved;<br>9. reviewing supervisor;<br>10. external reviews and results (if applicable);<br>11. remedy taken (if appropriate); and<br>12. administrative sign-off. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.j. (22) | CCDOC shall ensure that, promptly following a use of force incident, video or photographs are taken of any and all reported or apparent injuries sustained by inmates and staff. The video or photographs will be maintained and will be included in the investigation package, if applicable. See 31. F. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.k. (23) | CCDOC shall establish an "early warning system" that will document and track correctional officers who are involved in use of force incidents and any complaints related to the inappropriate or excessive use of force, in order to alert CCDOC administration to any potential need for retraining, discipline, problematic policies, or supervision lapses. Appropriate CCDOC leadership, supervisors, and investigative staff shall have access to this information and monitor the occurrences. CCDOC senior management shall use information from the early warning system to improve quality management practices, identify patterns and trends, and take necessary corrective action both on an individual and systemic level. | | x 9/10<br>x 3/11<br>x 8/11 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| A.31.l. (24) | CCDOC shall ensure that a supervisor is present during all pre-planned uses of force, such as cell extractions. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.m. (24) | Where there is evidence of staff misconduct related to inappropriate or unnecessary use of force against inmates, CCDOC shall initiate personnel actions and seek disciplinary action appropriately for any correctional officer found to have:<br>1. engaged in inappropriate or excessive use of force;<br>2. failed to report or report accurately the use of force;<br>3. retaliated against an inmate or other staff member for reporting an inappropriate or excessive use of force; or<br>4. interfered or failed to cooperate with an internal investigation regarding use of force in a manner inconsistent with the staff member's statutory or contractual rights. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.n. (25) | Where there is evidence of staff misconduct related to inappropriate or unnecessary use of force against inmates, CCDOC shall consider, develop, and initiate systemic remedies as appropriate. | x 8/11 | x 9/10<br>x 3/11 | |
| A.31.o (26) | CCDOC shall maintain accountability policies and procedures for the effective and accurate maintenance, inventory, and assignment of chemical and other security equipment, in accordance with generally accepted correctional standards. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.p. (26) | CCDOC shall continue to conduct use of force training in accordance with generally accepted correctional standards, including:<br>1. CCDOC shall maintain an effective and comprehensive use of force training program.<br>2. CCDOC shall continue to ensure that correctional officers receive adequate training in CCDOC's use of force policies and procedures, including de-escalation and defensive tactics relating to use of force.<br>3. CCDOC shall continue to ensure that correctional officers receive pre-service and in-service training on reporting use of force and completing use of force reports. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.q. (27) | CCDOC shall provide a process for inmates to report allegations of the inappropriate or excessive use of force orally to any CCDOC staff member; said staff member shall give the inmate the opportunity to reduce his or her report to writing through a grievance or complaint form without discouragement. | | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.r. (28) | Following a use of force, when CCDOC staff transport an inmate to receive medical care by Cermak, as necessary, the CCDOC staff member shall inform the Cermak staff member that the inmate was involved in a use of force. | x 8/11 | X 9/10<br>x 3/11 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| A.31.s. (29) | Cermak shall ensure that, when providing medical treatment or assessment to an inmate following a use of force, Qualified Medical Staff document the inmate's injuries, if any, and any medical care provided.  Cermak shall provide CCDOC senior management [OPR] with a brief summary documenting the initial medical encounter following a use of force, including an anatomical drawing that depicts the areas of sustained injury, if any, and information regarding any further medical care.   See 31.f. | x 8/11 | x 9/10 x 3/11 | |
| A.31.t. (29) | Cermak shall ensure that Qualified Medical Staff question, outside the hearing of other inmates or correctional officers if appropriate, each inmate who reports for medical care with an injury, regarding the cause of the injury.  If, in the course of the inmate's medical encounter, a health care provider suspects staff-on-inmate or inmate-on-inmate abuse, that health care provider shall immediately: <br> 1.  report the suspected abuse to the Executive Director of the Office of Professional Review or other appropriate CCDOC administrator; and <br> 2.  adequately document the matter in the inmate's medical record. | x 8/11 | X  3/11 | x 9/10 |
| **32.** | **Safety and Supervision** | | | |
| 32. a. (30) | CCDOC shall maintain security and control-related policies, procedures, and practices that will result in a reasonably safe and secure environment for all inmates and staff, in accordance with generally accepted correctional standards. <br> Coordinate with Grenawitzke | | x 9/10 x 3/11 x 8/11 | |
| 32.b. (30) | CCDOC shall maintain policies, procedures, and practices to ensure the adequate supervision of inmate work areas and trustees, in accordance with generally accepted correctional standards. <br> Coordinate with Grenawitzke | | x 8/11 | x 9/10 x 3/11 |
| 32.c. (31) | CCDOC shall ensure that security staff conduct appropriate rounds with sufficient frequency to provide inmates with reasonable safety.  Rounds shall be conducted at least once every half hour, at irregular intervals, inside each housing unit.   In the alternative, CCDOC may provide direct supervision of inmates by posting a correctional officer inside the day room area of a housing unit to conduct constant surveillance.   More frequent rounds shall be conducted for special management inmates who require more intensive supervision for security and safety reasons.  All security rounds shall be documented on forms or logs that do not contain pre-printed rounding times.  Video surveillance may be used to supplement, but must not be used to replace, rounds by correctional officers. | | x 9/10 x 3/11 X 8/11 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| 32.d. (32) | CCDOC shall ensure that security supervisors conduct daily rounds in the inmate housing units, and document the results of their inspections. | | x 3/11<br>x 8/11 | x 9/10 |
| 32.e. (32) | Cook County shall increase the use of overhead video surveillance and recording cameras to provide adequate coverage throughout the common areas of the Facility, including the RCDC, all division intake areas, mental health units, special management units, inmate housing units, and in common areas of the divisions. | | x 9/10<br>x 3/11<br>x 8/11 | |
| 32.f. (33) | CCDOC shall maintain a procedure to prevent inmates from possessing or having access to dangerous contraband, including conducting regular inspections of cells and common areas of the housing units to identify and prevent rule violations by inmates. | | x 9/10<br>x 3/11<br>x 8/11 | |
| 32.g. (34) | CCDOC shall review, and revise as applicable, all General Orders ("GOs"), Standard Operating Procedures ("SOPs"), and Post Orders on an annual basis, or more frequently as needed. | x 8/11 | x 9/10<br>x 3/11 | |
| 32.h. (34) | CCDOC shall revise policies, SOPs, and post orders for all armed posts to include proper use and safe handling of weapons and provide specific instructions on use of deadly force and when and under what circumstances such force should be used, in accordance with generally accepted correctional standards. | | x 9/10<br>x 3/11<br>x/8/11 | |
| 32.i. (35) | CCDOC shall standardize security policies, procedures, staffing reports, and post analysis reports across the divisions, to the extent possible, taking into account the different security levels and different physical layouts in the various divisions. | | x 9/10<br>x 3/11<br>x 8/11 | |
| 32.j. (35) | CCDOC shall provide formal training on division-specific SOPs to correctional officers in accordance with their assignments, and shall provide further specialized training for officers assigned to Special Management Units. Cermak Hospital shall provide Specialized training for officers assigned to psychiatric units. Coordinate with Drs. Shansky and Metzner. See also 44.f., 44.g., 44.h., 46.b., 46.e.,68. | | x 9/10<br>x 3/11<br>x 8/11 | |
| 32.k. (36) | CCDOC shall maintain in working order all monitoring equipment at the Facility that is under CCDOC's direct control, including cameras, alarms, radios (hand held), interior and exterior lighting, x-ray and other screening equipment, and walk-through metal detectors. To the extent that the maintenance of any Facility monitoring equipment is under the control of DFM, CCDOC shall promptly report any maintenance needs and DFM shall prioritize its services to ensure that all monitoring equipment is maintained in working order. Coordinate with Grenawitzke | | x 9/10<br>x 3/11<br>x 8/11 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| 32.l. (37) | Absent exigent circumstances, CCDOC: (i) shall house each inmate assigned to a division that is celled to one permanent bed in a cell and shall not house any inmates (including those assigned to dormitory divisions) such that they are sleeping on the floor, on a mattress on the floor, or in any area not designed or redesigned as sleeping quarters; (ii) shall not house more than two inmates to a single cell (triple-bunking); and (iii) shall not hot-bunk any inmates. | x 8/11[1] | | |
| 32.m. (37) | When exigent circumstances give rise to triple-bunking, CCDOC shall provide the third inmate in the triple-bunked cell a "boat," stackable bunk, moveable platform, or cot, so that the inmate is not required to lay down directly on the cell floor or on a mattress on the floor. | x 8/11[2] | | |
| **33.** | **Security Staffing.**<br>**The parties agree that correctional officer staffing and supervision levels at the Facility must be appropriate to adequately supervise inmates, to carry out the requirements of this Agreed Order, and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards. Cook County and CCDOC shall take such actions as shall ensure that correctional officer staffing and supervision at the Facility are sufficient to achieve these purposes. These actions shall include the following:** | | | |
| 33.a. (38) | In the fiscal year 2010 budget, Cook County shall allocate funds sufficient to allow for 210 additional correctional officer positions at the Facility. Consistent with provision 33.c, such funding may occur on a rolling basis, as appropriate in light of the time required to hire, train, and put on duty the additional 210 new correctional officers. | x 8/11 | x 9/10<br>x 3/11 | |
| 33.b. (39) | CCDOC shall use its best efforts (through the maintenance of the written staffing plan required by provision 33.h and otherwise) to ensure that the number of correctional officer vacancies is kept to the minimum practicable number at all times, taking into account that the timing of terminations and resignations and the resulting rate of attrition may, in ordinary course, result in there being some vacancies at any given time. | | x 9/10<br>x 3/11<br>x 8/11 | |
| 33.c.i.ii (39) | CCDOC shall fill the 210 additional correctional officer slots provided for in provision 33.a; fill the 285 correctional officer vacancies that existed at the Facility as of July 17, 2009; and fill any correctional officer vacancies coming into existence after that date in the following manner:<br>i. By December 31, 2010, CCDOC shall hire, train, and put on duty at the Facility at least 448 [381] newly qualified correctional officers (in addition to those on duty as of December | x 8/11 | | x 9/10<br>x 3/11 |

---

[1] Noted as "NA" in two previous reports.

[2] Noted as "NA" in two previous reports.

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| | 31, 2009).<br>ii. By March 30, 2011, CCDOC shall hire, train, and put on duty at the Facility at least 174 [107] newly qualified correctional officers (in addition to those on duty as of December 31, 2010). | | | |
| 33.d. (40) | The parties agree that for 30 months following the effective date of this Agreed Order, Cook County and CCDOC shall not be required to provide additional correctional officer staffing and supervision at the Facility beyond that which is necessary to ensure that correctional officer staffing and supervision are sufficient to achieve the purposes set out in the introductory paragraph of provision 33 and to comply with provisions 33.a-c above. | | | NA at this time |
| 33.e. (40) | Within 30 months of the effective date of this Agreed Order, the CCDOC Monitor shall assess and make a recommendation on whether the correctional officer staffing and supervision levels are appropriate to adequately supervise inmates at the Facility, in accordance with generally accepted correctional standards. If the CCDOC Monitor determines that staffing is inadequate, the CCDOC Monitor will make a recommendation regarding the appropriate number of correctional officer staff. If the parties do not accept the CCDOC Monitor's staffing recommendation, CCDOC and Cook County shall agree to an independent, comprehensive study to determine the appropriate correctional officer staffing and supervision. The parties agree that the results of this staffing study shall provide guidance as to the sufficient number of qualified correctional officers necessary to operate the Facility safely and to carry out the requirements of this Agreed Order. | | | NA at this time |
| 33.f. (40) | If the staffing study requires additional correctional officers, Cook County shall allocate funds sufficient to maintain correctional officer staffing levels necessary to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards. | | | NA at this time |
| 33.g. (40) | If the staffing study requires additional correctional officers, and consistent with Cook County's allocation of funds for security staffing, CCDOC shall hire and train sufficient number of qualified correctional officers and other staff to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards, including:<br>1. Investigative staffing sufficient to meet the internal investigation responsibilities outlined in this Agreed Order;<br>2. Correctional officer staffing sufficient to provide inmates requiring treatment with adequate access to appropriate medical and mental health care by providing timely | | | NA at this time |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| | movement of inmates to medical units, transport of inmates who have been referred for outside specialty care, and escort, if necessary, to Qualified Medical and Mental Health Staff on housing units; and   [Coordinate with Shansky, Metzner]<br>3.   Qualified staff sufficient to monitor security cameras in real time and allow for supervisory viewing and retrieving at any time. | | | |
| 33.h. (41) | CCDOC shall maintain a written staffing plan that requires sufficient staffing to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards. | | x 8/11 | x 9/10<br>x 3/11 |
| 33.i. (41) | Absent exigent circumstances, CCDOC shall maintain a practice that does not allow for scheduled, planned, or expected cross-watching (a CCDOC practice of allowing one correctional officer to simultaneously supervise two housing units from the control center of one of the units) at any time on all maximum security and Special Management Units, and during first and second shifts throughout the Facility. | x 8/11[3] | | |
| 33.j. (42) | CCDOC may permit cross-watching on third shift in housing units that are not maximum security or Special Management Units only if the Monitor does not object after consultation and review. The Monitor's review of the appropriateness of third-shift cross-watching on a particular housing unit shall be guided by the sufficiency of sightlines between the units being cross-watched, the adequacy of video and/or audio technologies in place, and/or other factors that bear on the safety and security of inmates and staff.  If the Monitor later objects to any cross-watching that is in effect because of the Monitor's concerns that cross-watching on a particular housing unit presents an undue risk to the safety and security of inmates and staff, CCDOC shall immediately cease such cross-watching.  CCDOC may renew cross-watching on that unit again if, after further consultation with and review by the Monitor, the Monitor does not object to such renewal.  Although cross-watching is permitted under the limited circumstances described herein, CCDOC will work to eliminate the practice at the Facility. | x 8/11[4] | | |

---

[3] Noted as "NA" in two previous reports.
[4] Noted as "NA" in two previous reports.

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| **34.** | **Incidents and Referrals** | | | |
| 34. a. (42) | CCDOC shall continue to ensure that staff adequately and promptly document all reportable incidents, including inmate fights, rule violations, inmate injuries, suicides and suicide attempts, cell extractions, medical emergencies, contraband, vandalism, escapes and escape attempts, fires, and other incidents causing a disruption to standard CCDOC practice, in accordance with generally accepted correctional standards. | | x 9/10 x 3/11 x 8/11 | |
| 34.b. (43) | CCDOC shall continue to ensure that correctional officers receive formal pre-service and in-service training on proper incident reporting policies and procedures, in accordance with generally accepted correctional standards. | x 8/11 | x 9/10 x 3/11 | |
| 34.c. (43) | CCDOC shall maintain a system to track all reportable incidents (as described in provision 34.a) that, at a minimum, includes the following information:<br>1. incident tracking number;<br>2. the inmate(s) name;<br>3. housing assignment;<br>4. date;<br>5. type of incident;<br>6. injuries (if applicable);<br>7. medical care (if applicable);<br>8. primary and secondary staff involved;<br>9. reviewing supervisor;<br>10. external reviews and results (if applicable);<br>11. remedy taken (if appropriate); and<br>12. administrative sign-off. | | x 9/10 x 3/11 x 8/11 | |
| 34.d. (44) | CCDOC shall require prompt administrative review of incident reports. Such reviews shall include a case-by-case review of individual incidents as well as a systemic review in order to identify patterns of incidents. CCDOC shall incorporate such information into quality management practices and take necessary corrective action. | x 8/11 | x 9/10 x 3/11 | |
| 34.e. (44) | CCDOC shall ensure that incident reports, use of force reports and inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, that it is referred for investigation. | | x 9/10 x 3/11 x 8/11 | |
| 34.f. (45) | CCDOC shall maintain policies, procedures and practices requiring investigations to resolve issues identified during review of incident reports, disciplinary hearings, or inmate grievances, and determine appropriate remedies, in accordance with generally accepted correctional | | x 9/10 x 3/11 x 8/11 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| | standards. At a minimum, CCDOC shall require timely and appropriate investigations of all suicides, serious suicide attempts, inmate-on-inmate violence resulting in serious injury, inmate-on-staff violence, inmate injuries requiring treatment by an outside hospital, inmate injuries of a suspicious nature (including black eyes, injuries to the mouth, injuries to the genitals, etc.), sexual misconduct between inmates, sexual misconduct involving staff, fires, escapes, escape attempts, and deaths. | | | |
| 34.g. (45) | CCDOC [OPR shall ensure that any investigation reports indicating possible criminal behavior will be referred to the appropriate law enforcement authority. | x 8/11 | x 9/10 x 3/11 | |
| 35. | **Investigations:** **Investigations at the Facility are conducted by independent departments under the Cook County Sheriff's Office, including the Office of Professional Review, the Criminal Investigations Unit, and the Sheriff's Police Department. The Cook County Sheriff will assume responsibility for requiring these investigatory units to comply with the relevant provisions of this Agreed Order.** | | | |
| 35.a. (46) | CCDOC [OPR] shall maintain comprehensive policies, procedures, and practices for the timely and thorough investigation of alleged staff misconduct, in accordance with generally accepted correctional standards. | | x 9/10 x 3/11 x 8/11 | |
| 35.b. (46) | Internal investigations [OPR] shall be conducted by persons who do not have supervisory responsibility for the staff member(s) being investigated. | | x 9/10 x 3/11 x 8/11 | |
| 35.c. (46) | CCDOC [OPR] shall ensure that all internal investigations will include timely, thorough, and documented interviews of all relevant staff and inmates who were involved in, or witnessed, the incident in question. | x 9/10 x 3/11 x 8/11 | | |
| 35.d. (46) | CCDOC [OPR] shall ensure that internal investigation reports shall include all supporting evidence, including witness and participant statements, policies and procedures relevant to the incident, physical evidence, video or audio recordings, and relevant logs. | x 9/10 x 3/11 x 8/11 | | |
| 35.e. (47) | CCDOC [OPR] shall ensure that all investigatory staff will receive pre-service and in-service training on appropriate investigations policies and procedures, the investigations tracking process, investigatory interviewing techniques, and confidentiality requirements. | | x 9/10 x 3/11 x 8/11 | |
| 35.f. (47) | CCDOC [OPR] shall provide all investigators who will be assigned to conduct investigations of use of force incidents with specialized training in investigating use of force incidents and allegations. | | x 9/10 x 3/11 x 8/11 | |
| 35.g. | CCDOC [OPR] shall ensure that the results of each internal investigation shall be documented in | | x 9/10 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| (47) | an investigation report.  CCDOC administration shall review the investigation reports, along with the underlying documentation, and take appropriate action.  CCDOC shall implement appropriate remedies based upon the results of internal investigations. | | x 3/11<br>x 8/11 | |
| **36.** | **Inmate Disciplinary Process** | | | |
| 36.a. (48) | CCDOC shall maintain policies, procedures, and practices for a formal disciplinary process, including prompt issuance of written disciplinary citations, administrative review and disciplinary reports for alleged minor rule violations, and due process for alleged major rules violations, in accordance with generally accepted correctional standards. | | x 9/10<br>x 3/11<br>x 8/11 | |
| 36.b. (48) | CCDOC shall ensure that inmate disciplinary hearings are conducted in a reasonably private and secure setting. | x 8/11 | x 9/10<br>x 3/11 | |
| 36.c. (49) | CCDOC shall ensure that all inmates placed in lock down status are provided with appropriate due process that has been developed and implemented in policies and procedures, in accordance with generally accepted correctional standards.<br><br>In an emergency, the Executive Director of CCDOC may order a lock down of entire areas of the Facility in order to control the situation and address serious security concerns.  In such circumstances, it is not necessary to provide disciplinary hearings to each inmate affected by the lock down.  However, lock downs of this nature shall be limited to only the time and scope necessary to address the emergency.<br><br>For the purposes of this Agreed Order, a "lock down" shall not include the routine instances in which inmates are confined to their cells, including periods of count, over night, shift change, movement, and routine contraband sweeps. | | x 9/10<br>x 3/11<br>x 8/11 | |
| 36.d. (49) | CCDOC shall ensure that the disciplinary board's written record accurately reflects the testimony and discussion from the disciplinary hearing, including any recommendations from a mental health professional regarding the extent to which disciplinary charges are related to an inmate's serious mental illness or suggestions for minimizing the deleterious effect of disciplinary measure on the mental health status of the inmate. | | X 3/11<br>X 8/11 | x 9/10 |
| 36.e. (50) | CCDOC shall alert Cermak when inmates are placed in disciplinary segregation or protective custody. | | x 9/10<br>x 3/11<br>x 8/11 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| 36.f. (50) | CCDOC shall permit a Cermak Qualified Mental Health Staff member to serve on the disciplinary board. | | x 3/11 x 8/11 | x 9/10 |
| **37.** | **Classification** | | | |
| 37.a. (51) | CCDOC shall maintain policies and procedures for an appropriate, objective classification system that separates inmates in housing units by classification levels in order to protect inmates from unreasonable risk of harm. The system shall include consideration of an inmate's security level, severity of current charge, types of prior commitments, suicide risk, history of escape attempts, history of violence, and special needs. CCDOC shall use best efforts to anticipate periods of unusual intake volume and schedule sufficient classification staff to timely classify inmates. | | x 9/10 x 3/11 x 8/11 | |
| 37.b. (51) | CCDOC shall ensure that classification staff have sufficient access to current information regarding cell availability on each division. | | x 9/10 x 3/11 x 8/11 | |
| 37.c. (52) | CCDOC shall include information on each inmate's assignment to the Special Incarceration Unit "level system" at the Facility in the new Jail Management System, starting with the date the new Jail Management System becomes operational. | x 9/10 x 3/11 x 8/11 | | |
| 37.d. (52) | CCDOC shall provide training and access to all correctional officer supervisors on the full capabilities of the new Jail Management System's classification and inmate tracking system (or any replacement system). | | x 9/10 x 3/11 x 8/11 | |
| 37.e. (52) | CCDOC shall provide ongoing internal and external review and validation of the inmate classification system to ensure its reliability and objectivity. | | | x 9/10 x 3/11 x 8/11 |
| **38.** | **Inmate Grievance Procedure** | | | |
| 38.a. (53) | CCDOC shall maintain policies and procedures to ensure inmates have access to an adequate grievance process and to ensure that grievances may be accessed and filed confidentially, without requiring the intervention of a correctional officer, in accordance with generally accepted correctional standards. These policies and procedures should be applicable and standardized across all the Facility divisions. | X 8/11 | x 9/10 x 3/11 | |
| 38.b. (53) | CCDOC shall ensure that the grievances receive appropriate follow-up, including informing the grievant of the outcome, providing a timely written response, and tracking implementation of resolutions. | X 8/11 | x 9/10 x 3/11 | |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-compliance |
|---|---|---|---|---|
| 38.c. (54) | CCDOC shall ensure that grievance forms are available on all units and are available in Spanish. CCDOC shall ensure that there is adequate opportunity for illiterate inmates and inmates who have physical or cognitive disabilities to access the grievance system. | x 8/11 | x 9/10 x 3/11 | |
| 38.d. (54) | CCDOC shall ensure that inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, are referred for investigation. A member of the management staff shall review the grievance tracking system regularly in order to identify areas of concern. | x 8/11 | x 3/11 | x 9/10 |
| **39.** | **Access to Information** | | | |
| 39.a. (55) | CCDOC shall ensure that newly admitted inmates receive information, through an inmate handbook or orientation video, regarding the following areas: facility rules and regulations; how to report misconduct; how to report sexual abuse or assault; the process for accessing medical and mental health care; emergency procedures; rules for sending and receiving mail; the visitation process; facility schedule; the disciplinary process; and how to seek redress of grievances. | | x 9/10 x 3/11 x 8/11 | |
| 39.b. (55) | CCDOC shall ensure that materials on facility rules and services are available for non-literate and non-English speaking inmates. | | x 9/10 x 3/11 x 8/11 | |
| 40. (55) | CCDOC shall provide training and supervision to all correctional officers and supervisors sufficient to implement the provisions of this Agreed Order. | x 8/11 | x 9/10 x 3/11 | |
| 41. (56) | Inter-Agency Agreement<br>a.    CCDOC shall enter into a written Inter-Agency Agreement with Cermak that delineates the mutual responsibilities of each party, relative to the provision of health care to inmates at the Facility. The Inter-Agency Agreement shall be finalized within 60 days of the effective date of this Agreed Order.<br>b.    Cermak shall enter into a written Inter-Agency Agreement with CCDOC that delineates the mutual responsibilities of each party, relative to the provision of health care to inmates at the Facility. The Inter-Agency Agreement shall be finalized within 60 days of the effective date of this Agreed Order. | x 8/11 | x 3/11 | x 9/10 |
| 69. (56) | CCDOC shall ensure that security staff posts will be equipped, as appropriate, with readily available, safely secured, suicide cut-down tools. *Coordinate with Dr. Metzner | x 8/11 | | x 9/10 x 3/11 |

31. Use of Force

a.    CCDOC shall maintain comprehensive and contemporary policies and procedures, in accordance with generally accepted correctional standards, surrounding the use of force and with particular emphasis regarding permissible and impermissible uses of force.

**July 2011 Status Update:**    Partial compliance.

**Status Update:** All relevant directives have been completed; and training will be completed by the end of September 2011.  The directives that have been completed are:

- Officer Battery Report 11.2.0.0 (effective date 9/19/11)
- Response to Resistance Use for Force Policy 11.2.1.0 (effective date 9/19/11)
- Response to Resistance Use of Force Reporting 11.2.2.0 (effective date 9/19/11)
- Use of Oleoresin Capsicum Spray 11.2.4.0 (effective date 9/19/11)
- Use of Baton 11.2.5.0 (effective date 9/19/11)
- Use of Electronic Control Weapons (11.2.6.0 (effective date 9/19/11)
- Use of Restraints 11.2.7.0(effective date 9/19/11)

Additionally, CCSO is designating a single person as the "Use of Force Compliance" monitor, and has drafted an order outlining this position's role and duties.  This compliance monitor will assure compliance with uses of force provisions throughout the agency, not just within CCDOC.

**Monitor's Assessment:**  The reason this paragraph remains in partial compliance is because the effective dates of the relevant orders are 9/19/11.

CCSO and CCDOC have been deliberate in crafting the written directives to meet this paragraph as well as designing and delivering training to employees.

**Monitor's Recommendations:**  Continue to monitor any needed revisions to policy and/or training.

## 31. Use of Force

b.       CCDOC shall maintain use of force policies and pre-service and in-service training programs for correctional officers and supervisors that address the following impermissible uses of force:
1.       use of force as a response to verbal insults or inmate threats where there is no immediate threat to the safety of the institution, inmates, or staff;
2.       use of force as a response to inmates' failure to follow instructions where there is no immediate threat to the safety of the institution, inmates, or staff, unless CCDOC has attempted a hierarchy of nonphysical alternatives that are documented;
3.       use of force as punishment or retaliation;

4. use of force involving striking, hitting, or punching a restrained and non-combative inmate;
5. use of force against an inmate after the inmate has ceased to offer resistance and is under control;
6. use of choke holds on an inmate, unless lethal force is justified; and
7. use of inappropriate or excessive force.

**July 2011 Status Update:**   Partial compliance.

**Status Update:**   See 31.a.  In regard to the specific numbered paragraphs above:

Subsection1 – 11.2.1.0, VII. H., X. A. 4.          Subsection 5 – 11.2.1.0. X. A. 7
Subsection 2 – 11.2.1.0, VI. D.                         Subsection 6 – 11.2.1.0, IX. A.
Subsection 3 – 11.2.1.0 X. A. 5.                       Subsection 7 – 11.2.1.0, II.,VI.
Subsection 4 – 11.2.1.0. X. A. 6.

CCDOC reports that as of July 11, 2011, 28 in-service training sessions on the revised use of force policies have been conducted; 1,344 employees have been trained, 191 staff missed the training and have been rescheduled, and 1,839 will attend before the effective date of the order.   Five (5) employees failed the post-training testing and are being remediated.

The soon-to-be appointed use of force monitor will also be providing feedback to policy writers and trainers as a result of the review of all use of force incident reports.

**Monitor's Assessment:**  CCSO has incorporated the elements of the paragraph into two orders that will be effective 9/19/11.  The only reason for partial compliance is that the orders are not yet effective.  I  also reviewed training materials

**Monitor's Recommendations:**  Continue to ensure compliance with relevant written directives.

## 31. Use of Force

c.       CCDOC shall maintain a policy to ensure that staff adequately and promptly report all uses of force, in accordance with generally accepted correctional standards.

**July 2011 Compliance Status:**   Partial Compliance

**Status Update:**   See 31.a.  To meet this paragraph's requirement, CCSO drafted two separate orders, one addressing use of force (11.2.1.0) and Response to Resistance Use of Force Duties, Notifications and Reporting Procedures (11.2.2.0).  Section V. Duties, Notifications, and Reporting Procedures provides compliance for this paragraph.

Ultimately, use of force reports will be part of the integrated information system, but until that time, the written report format is included in this directive.

**Monitor's Assessment:** CCSO has incorporated the elements of the paragraph into two orders, which are effective 9/19/11. The only reason for partial compliance is that the orders are not yet effective.

It is important to note that as the employees are trained on the new procedures, including the emphasis on reporting, and with the designation of the use of force monitor, incidents may increase.

**Monitor's Recommendations:**

Continue to ensure compliance with relevant written directives.

## 31. Use of Force

d.      CCDOC shall require that use of force reports:

1.  Be written in specific terms in order to capture the details of the incident;
2.  Contain an accurate account of the events leading to the use of force incident;
3.  Include a description of the instrument(s) of restraint or control, if any, and the manner in which it was used;
4.  Note whether an inmate disciplinary report was completed in connection with the incident that prompted the use of force;
5.  Describe the nature and extent of apparent and reported injuries sustained both by the inmate and staff member;
6.  Contain the date and time medical attention was actually provided;
7.  Describe, in detailed, factual terms, the type and amount of force used as well as the precise actions taken in a particular incident; and
8.  Note whether a use of force was videotaped. If the use of force is not videotaped, the reporting correctional officer and supervisor will provide an explanation as to why it was not videotaped.

**July 2011 Compliance Status:**    Partial compliance.

**Status Update:** Written directive 11.2.2.0 responds to the subsection as follows:

Subsection 1 – 11.2.2.0, V. B. 2. a - h
Subsection 2 – 11.2.2.0, V. B. 4., 5.
Subsection 3 – 11.2.2.0, V. C. 4. c.
Subsection 4 – 11.2.2.0, V. C. 4. h.
Subsection 5 – 11.2.2.0, V. C. 4. d.
Subsection 6 – 11.2.2.0, V. C. 4. e.
Subsection 7 – 11.2.2.0, V. C. 4. f.
Subsection 8 - 11.2.2.0, V. C. 4. g

The CCSO's use of force monitor will evaluate events and compliance with policy, and provide feedback to the leadership and the training academy.

**Monitor's Assessment:** CCSO has incorporated the elements of the paragraph into an order, which is effective 9/19/11. The only reason for partial compliance is that the order is not yet effective. I reviewed training materials.

**Monitor's Recommendations:** Continue to ensure compliance with relevant written directives.

## 31. Use of Force

e.        CCDOC shall continue to require prompt review by the shift commander of all use of force reports. The shift commander's review of use of force reports shall include review for completeness and procedural errors, as well as review of the substantive content. If the use of force report does not comply with provision 31.d. of this Agreed Order, the shift commander shall return it to the reporting officer for revision and resubmission until it is compliant. If the shift commander believes a use of force may have been inappropriate or excessive, he or she shall immediately refer the incident for investigation.

**July 2011 Compliance Status:**    Partial compliance

**Status Update:**    Written directive 11.2.2.0 sets policy and procedure to address this paragraph.

- Prompt review by the shift commander of all use of force reports – 11.2.2.0 V. C. 4.
- Shift commander's review for completeness and procedural errors and substantive content - 11.2.2.0 V. C. 4.
- Return of insufficient report to reporting officer for revision and resubmission - 11.2.2.0 V. C. 4.
- Referral of inappropriate or excessive incident immediately for investigation - 11.2.2.0 V. C. 4.

The CCSO's use of force monitor will evaluate events and compliance with policy, and provide feedback to the leadership and the training academy.

CCDOC notes that the training for persons holding the newly created positions of "Commander" was conducted May 2 – 6, 2011 and included the responsibilities for reporting, as well the elements of the agreed order.

**Monitor's Assessment:** CCSO has incorporated the elements of the paragraph into an order, which is effective 9/19/11. The only reason for partial compliance is that the order is not yet effective. I reviewed training materials.

**Monitor's Recommendations:** Continue to ensure compliance with relevant written directives.

## 31. Use of Force

f.      CCDOC shall ensure that senior management review of uses of force includes:

1.      A timely review of medical documentation of inmate injuries, if any is submitted, as provided by Qualified Medical Staff, including documentation surrounding the initial medical encounter, an anatomical drawing that depicts the areas of sustained injury, and information regarding any further medical care;
2.      The inmate disciplinary report, if any, associated with the use of force; and
3.      The incident report, if any, associated with the use of force.

**July 2011 Compliance Status:**   Partial compliance

**Status Update:**   Written directive 11.2.2.0 sets policy and procedure to address this paragraph.  Also referenced as compliance-related documentation are the Interagency Health Inquiry directive (effective June 27, 2011) and the directive governing the Accountability Meetings.

Subsection 1 – 11.2.2.0. IV. N., O., V. D. 14, 17, H. i – ii;
-   Interagency Health Inquiry 61.5.20.0 – (effective 6/27/11) – VI. A., B.
-   Dept. of Corrections Accountability Meetings 24.1.10.0 (effective June 13, 2011), VI. A., B., VII. A. 3. a.
Subsection 2 – 11.2.2.0, V. C. 4. h.
Subsection 3 – 11.2.2.0. IV. N. 5., O.

The CCSO's use of force monitor will evaluate events and compliance with policy, and provide feedback to the leadership and the training academy.

 **Monitor's Assessment:**   CCSO has incorporated the elements of the paragraph in several places, as noted above.  The only reason for partial compliance is that 11.2.2.0 is not yet effective.

**Monitor's Recommendations**:  Continue to ensure compliance with relevant written directives.

## 31. Use of Force

g.      CCDOC [and Cermak] shall establish criteria that trigger referral for inappropriate or excessive use of force investigations, including but not limited to, documented or known injuries that are extensive or serious; injuries involving fractures or head trauma; injuries of a suspicious nature (including black eyes, injuries to the mouth, injuries to the genitals, etc.); and injuries that require treatment at outside hospitals.

**July 2011 Compliance Status:**   Partial compliance.

**Status Update:**   The CCSO written directive governing reporting use of force incident reports includes language as follows in 11.2.2.0, V. D, a – e. regarding when to notify OPR:

"b.     there are documented or known injuries to a subject including but not limited to, extensive or serious injuries; injuries involving fractures or head trauma; injuries of a suspicious nature (including black eyes, injuries to the mouth, injuries to the genitals, etc.).

c.     an inmate's injuries, as a result of a response to resistance/use of force incident, cannot be treated within Cermak Health Services and requires transfer to an outside hospital.

d.     an incident occurs involving a battery to an employee who refused to pursue criminal charges against the subject; or

e.     great bodily harm occurs to the subject due to the officer's use of force."

The directive, Interagency Health Inquiry, 65.5.20.0, addresses this requirement: "This directive establishes the notification and procedures to be followed by officers and health staff with regard to response to situations in which, due to heath emergency or other circumstances, evaluation and/or management by qualified health staff should not wait until an appointment can be scheduled. Specifically, these situations are: . . . 2. Response to resistance/use of force incidents; 3. Suspected or alleged physical abuse incidents."

The CCSO's use of force monitor will evaluate events and compliance with policy, and provide feedback to the leadership and the training academy.

**Monitor's Assessment:** CCSO has incorporated the elements of the requirements in several places, as noted above. The only reason for partial compliance is that 11.2.2.0 is not yet effective.

**Monitor's Recommendations**: Continue to ensure compliance with relevant written directives.

## 31. Use of Force

h.     When CCDOC review of use of force reports, and supporting records if applicable, reveals that reports of a use of force are materially inconsistent, conflicting, or suspicious, CCDOC shall refer that use of force incident for internal investigation.

**July 2011 Compliance Status:**   Partial Compliance.

**Status Update:**   The written directive governing reporting uses of force incorporates the language of this paragraph – 11.2.2.0, IV. O. " . . . The form ensures proper review of the incident by the chain of command and that department policy is followed or any inconsistencies with this policy are documented and reported to the office of Professional Review (OPR)."

The draft directive governing the responsibilities of the use of force monitor

provides in V.B. 3. "If, during the review of a use of force reports or other relevant reports, the Monitor discovers that the reports are materially inconsistent, conflicting, or suspicious, the Compliance Monitor shall refer the underlying incident to OPR for investigation.

**Monitor's Assessment:** CCSO has incorporated the elements of the requirements in several places, as noted above. The only reason for partial compliance is that 11.2.2.0 and the directive governing the use of force monitor are not yet effective.

**Monitor's Recommendations**: Continue to ensure compliance with relevant written directives.

## 31. Use of Force

i.      CCDOC shall develop and implement a system to track all incidents of use of force that, at a minimum, includes the following information:

1.      a tracking number;
2.      the inmate(s) name;
3.      housing assignment;
4.      date;
5.      type of incident;
6.      injuries (if applicable);
7.      medical care provided (if applicable);
8.      staff involved;
9.      reviewing supervisor;
10.     external reviews and results (if applicable);
11.     remedy taken (if appropriate); and
12.     administrative sign-off.

**July 2011 Compliance Status:**   Partial compliance.

**Status Update:**   CCDOC reports that all 12 elements contained in this paragraph are captured in the software, IAPro, used by OPR.

Additionally, the use of force monitor will have as one of their responsibilities tracking data regarding: lawsuits alleging excessive force, inmate grievances alleging excessive force, inmate disciplinary forms that reveal excessive force, letters or phone calls from members of the public alleging excessive force by staff, and staff complaints of other staff using excessive force. Quarterly reports required of the use of force compliance monitor include data on location of uses of force in the jail, what triggered the use of force, number of staff involved, allegations of excessive force, employee discipline as a result of failing to follow use of force policies, information regarding the inmates involved in uses of force, information regarding planned uses of force, how de-escalation tactics were used, data regarding injuries and medical care, examination of security equipment used, staff injuries, inmate grievances, lawsuits, information on remedial training provided to employees, and analysis of training related to

employees involved in uses of force.

The Sheriff's accountability meetings will review uses of force (Dept. of Corrections Accountability Meetings 24.1.10.0 (effective June 13, 2011), VI. A., B., VII. A. 3. a.

Directive 11.2.2.0, V. F. 5. j. provides: "document and track all officers who are involved in response to resistance use of force incidents and any complaints related to the inappropriate or excessive use of force, in order to alert CCSO department heads to any potential need for retaining, discipline, problematic policies, or supervision lapses. The CCSO shall use information from the performance measure system to improve quality management practices, identify patterns and trend, and take necessary corrective action both on an individual and systematic level."

**Monitor's Assessment:** CCSO has incorporated the elements of the requirements in several places, as noted above. The only reason for partial compliance is that 11.2.2.0 and the directive governing the use of force monitor are not yet effective.

**Monitor's Recommendations**: Continue to ensure compliance with relevant written directives.

### 31. Use of Force

j.        CCDOC shall ensure that, promptly following a use of force incident, video or photographs are taken of any and all reported or apparent injuries sustained by inmates and staff. The video or photographs will be maintained and will be included in the investigation package, if applicable.

**July 2011 Compliance Status:** Partial compliance

**Status Update:** Written directive 11.2.2.0 V. C. 2. h. requires that a supervisor must ensure that all department procedures are followed regarding photographing or video recording all subject(s) with or without injuries involved in resistance/use of force incident. Also section D. 11. provides the watch commander shall before the end of tour "Ensure photographs and video recordings of all subject(s) and officer(s) involved, with or without injuries, have been taken and inventoried by the responding supervisor."

CCDOC General Order 9.28, effective 11/16/07 sets policy guidance "to use hand held video recorders for the recording of potential disturbances, use of force incidents . . . " and outlines supervisory and line officers' responsibilities.

**Monitor's Assessmen**t: The partial compliance with this paragraph is due to the effective date of the use of force reporting directive of 9/19/11.

**Monitor's Recommendations:** When the directive on reporting use of force is reviewed in the annual cycle the link between the CCDOC General Order and 11.2.2.0 might be clearer. Current practice requires use the recorders and this practice is noted by me in the review of incident reports.

## 31. Use of Force

k.      CCDOC shall establish an "early warning system" that will document and track correctional officers who are involved in use of force incidents and any complaints related to the inappropriate or excessive use of force, in order to alert CCDOC administration to any potential need for retraining, discipline, problematic policies, or supervision lapses. Appropriate CCDOC leadership, supervisors, and investigative staff shall have access to this information and monitor the occurrences. CCDOC senior management shall use information from the early warning system to improve quality management practices, identify patterns and trends, and take necessary corrective action both on an individual and systemic level.

**July 2011 Compliance Status:**   Partial compliance

**Status Update:**   CCDOC reports the following initiatives regarding this requirement:

- Drafting a directive governing Employee Performance Measures, V. A. 4. Which sets the OPR IAPro alert threshold for an employee at three uses of force incidents in a 12 months period.
- Providing IAPro access to CCDOC's Assistant Executive Director (AED) to allow for monitoring of incidents of use of force and employees involved.
- Generating through IAPro to the AED an alert when an employee has three incidents of use of force in a 12-month period.
- Completing directive 11.2.2.0, V. F. 5. j. that provides: "document and track all officers who are involved in response to resistance use of force incidents and any complaints related to the inappropriate or excessive use of force, in order to alert CCSO department heads to any potential need for retaining, discipline, problematic policies, or supervision lapses. The CCSO shall use information from the performance measure system to improve quality management practices, indentify patterns and trend, and take necessary corrective action both on an individual and systematic level."
- Drafting a directive outlining the work of the use of force compliance monitor includes tracking the employees involved and remedial training given as a result of incidents.
- Drafting a directive "Remedial Training" providing the mechanism for referring employees involved in uses of force to re-training in a structured manner.
- Implementing the directive governing the Sheriff's Accountability Meetings, 24.1.10.0, provides a forum for review and discussion of the summary of all use of force incidents in the reporting period (weekly) as

well as discipline outcomes for all sworn and non-sworn employees, including the nature of the violations.

- Collecting and analyzing data on a monthly basis , overseen by the acting CCDOC Executive Director modeled after Shelby County, Tennessee jail's "report card". As this process matures, the data will provide an overview of operations and identify systemic issues.

**Monitor's Assessmen**t: CCSO and CCDOC have enacted, or will enact several strategies to assure that uses of force on an individual employee level is tracked, evaluated, and acted upon.

**Monitor's Recommendations:** Continue to finalize relevant directives.

## 31. Use of Force

l.        CCDOC shall ensure that a supervisor is present during all pre-planned uses of force, such as cell extractions.

**July 2011 Compliance Status:**   Partial compliance

**Status Update:** Written directive 11.2.1.0 Reporting Use of Force, provides in VIII. B. that "Whenever a situation occurs where use of force in pre-planned, a supervisor shall be assigned and respond to the incident, evaluate, plan for and prepare a plan of action which shall be written or verbalized . . . "

**Monitor's Assessmen**t: Current policy addresses this paragraph.  Partial compliance is due to the effective date of the order as 9/19/11.

**Monitor's Recommendations:** Continue to evaluate compliance with relevant orders.

## 31. Use of Force

m.       Where there is evidence of staff misconduct related to inappropriate or unnecessary use of force against inmates, CCDOC shall initiate personnel actions and seek disciplinary action appropriately for any correctional officer found to have:

1.       engaged in inappropriate or excessive use of force;
2.       failed to report or report accurately the use of force;
3.       retaliated against an inmate or other staff member for reporting an inappropriate or excessive use of force; or
4.       interfered or failed to cooperate with an internal investigation regarding use of force in a manner inconsistent with the staff member's statutory or contractual rights.

**July 2011 Compliance Status**:   Partial compliance

**Status Update:**  Written directive 11.2.2.0, Reporting Uses of Force responds to the subsections as follows:

- Subsection 1 – V.C. 4, h., requires the supervisor, if applicable, to note whether the employee's disciplinary write up report was completed in connection with the incident that prompted the use of force.

- Subsections 2, 3, 4, – V. E. 4. provides for referral to OPR when the employee engaged in use of inappropriate or excessive force; failed to report or report accurately the use of force; retaliated against a subject or other staff member for reporting the use of inappropriate to excessive force; or interfered or failed to cooperate with an internal investigation regarding use of force in a manner inconsistent with the staff member's statutory or contractual rights.

The CCSO's use of force compliance monitor will review cases and report based on these requirements; as well as the Sheriff's Accountability Meetings addressing use of force incidents.

In instances where more than a 30-day suspension, or termination is recommended, the Merit Board must act upon the CCSO's recommendation.

**Monitor's Assessment**:  The only reason for partial compliance is that 11.2.2.0 and the directive governing the use of force monitor are not yet effective.

**Monitor's Recommendations**:  Continue to ensure compliance with relevant written directives.

## 31. Use of Force

n.      Where there is evidence of staff misconduct related to inappropriate or unnecessary use of force against inmates, CCDOC shall consider, develop, and initiate systemic remedies as appropriate.

**July 2011 Compliance Status:**   Substantial compliance

**Status Update:**  Systemic remedies regarding use of force will result from the strategies reviewed under 31.f., 31.g., 31.i., and 31. k.  The Sheriff's Accountability Meetings and the CCSO's use of force compliance monitor will also provide the platform for systemic review and remedies.

**Monitor's Assessment**: Broader approaches to identifying issues proactively are being put into place.  The Sheriff's decision to create a use of force compliance monitor is an indication of the agency's commitment to insuring this approach..

**Monitor's Recommendations:**  Continue to ensure compliance with relevant written directives.

## 31. Use of Force

o.      CCDOC shall maintain accountability policies and procedures for the effective and accurate maintenance, inventory, and assignment of chemical and other security equipment, in accordance with generally accepted correctional standards.

**July 2011 Compliance Status:**   Partial compliance

**Status Update:**  CCDOC reports that it is reconfiguring policies regarding the requirements of this paragraph.   Specifically (see also 31.a.)

- Officer Battery Report 11.2.0.0 (effective date 9/19/11)
- Response to Resistance Use for Force Policy 11.2.1.0 (effective date 9/19/11)
- Response to Resistance Use of Force Reporting 11.2.2.0 (effective date 9/19/11)
- Use of Oleoresin Capsicum Spray 11.2.4.0 (effective date 9/19/11)
- Use of Baton 11.2.5.0 (effective date 9/19/11)
- Use of Electronic Control Weapons (11.2.6.0 (effective date 9/19/11)
- Use of Restraints 11.2.7.0(effective date 9/19/11)

CCDOC notes that an inventory of security equipment has been completed. CCDOC is exploring the possibility of using IMACS to provide the reporting mechanisms for equipment needing repair, updating inventories, and monitoring use.

**Monitor's Assessmen**t: The process of revision is underway, with a set timetable for completion.  Partial compliance is noted as work is underway, with significant directives due to be effective 9/19/11.

**Monitor's Recommendations:**  Continue to finalize and coordinate directives.

## 31. Use of Force
p.      CCDOC shall continue to conduct use of force training in accordance with generally accepted correctional standards, including:

1.      CCDOC shall maintain an effective and comprehensive use of force training program.
2.      CCDOC shall continue to ensure that correctional officers receive adequate training in CCDOC's use of force policies and procedures, including de-escalation and defensive tactics relating to use of force.
3.      CCDOC shall continue to ensure that correctional officers receive pre-service and in-service training on reporting use of force and completing use of force reports.

**July 2011 Compliance Status:**   Partial compliance

**Status Update:**   In regard to the subsections above:

- Subsection 1 – I have reviewed the training lesson plans and found them

to meet these requirements.  See also 31.a. and 31.b.  Written directive 11.2.2.0, reporting uses of force, Section VII. C. 1-7 provides that the Executive Director of the Training Institute is responsible for the requirements of this paragraph, specifically.  [See also 11.2.1.0, XII. B. for responsibilities of the Training Institute.]

- Subsection 2 – I have reviewed the pre-service lesson plans and found them to meet these standards.  I hope to observe a class on the next tour.  See also 31.a and 31. B.  CCDOC is updating its field training officer program to provide post-academy supervision to new hires, as well as facilitate remedial training if needed.

- Subsection 3 – See above, also 31.a and 31.b.

The CCSO's use of force compliance monitor will evaluate training needs based on the position's reporting and analysis of uses of force.

**Monitor's Assessmen**t:  Partial compliance is as the relevant use of force directives are not effective until 9/19/11.

**Monitor's Recommendations:**  Continue to coordinate policy development and training.

## 31. Use of Force

q.      CCDOC shall provide a process for inmates to report allegations of the inappropriate or excessive use of force orally to any CCDOC staff member; said staff member shall give the inmate the opportunity to reduce his or her report to writing through a grievance or complaint form without discouragement.

**July 2011 Compliance Status:**   Partial compliance.

**Status Update:**   As noted in the March 2011 report, the goal of this paragraph, according to Kerry K. Dean and Cook County staff who worked on the language in this agreement was to insure that inmates were not deterred or intimidated from reporting.  It was not the intent of this paragraph to mandate or even suggest that CCDOC establish a telephone "hot-line" or such technological options to facilitate inmate reporting.

CCSO's written directive 11.2.2.0, Reporting Use of Force, in Section V. A. requires staff with knowledge of the suspected and/or actual use of excessive force to immediately report such to his/her supervisor.  [Same requirement in 11.2.1.0, VIII, D. 1.]  It is my understanding that mandate would include circumstances in which an inmate reports an allegation to an officer.

The inmate grievance procedure, implemented in July, specifies the process, by which Correctional Rehabilitation Workers (CRWs) are the conduit through

which inmates can file grievances. If a CRW receives an oral allegation of excessive force, the supervisor must be notified, who immediately forwards the allegation to the facility superintendent. If an officer learns that an inmate needs any assistance preparing a grievance, a CRW is notified. If a grievance is received regarding staff misconduct (including physical abuse, sexual abuse) the CRW must immediately notify a supervisor.

Inmates may also notify medical or OPR directly if they wish to make an allegation.

OPR notes that allegations are received via all these sources, as well as from the inmates' families.

**Monitor's Assessment:** Partial compliance due to use of force policies not yet finalized. It will be important to continue to monitor how allegations (from inmates, employees, or third parties0 are surfaced, and if the allegations in contemporaneous to the event. Records from the inmate grievance process, and those of the CCSO's use of force compliance monitor can be reviewed and compared.

**Monitor's Recommendation:** Continuously review the means by which allegations are surfaced, and the timeliness of the notifications.

## 31. Use of Force

r.       Following a use of force, when CCDOC staff transport an inmate to receive medical care by Cermak, as necessary, the CCDOC staff member shall inform the Cermak staff member that the inmate was involved in a use of force.

**July 2011 Compliance Status:** Substantial Compliance.

**Status Update:** The Interagency Health Inquiry 61.5.20.0 (effective June 27, 2011) provides the procedures for transporting inmates involved in uses of force to Cermak, and assuring that Cermak is aware of that the referral is the result of a use of force. Section VI. B. 3 provides that the officer transporting the inmate to Cermak will complete the Inter-Agency Health Inquiry Form and indicate that the inmate was involved in a use of force incident. A copy of this form is also provided to the watch commander and the Medical Advocate's Office.

**Monitor's Assessment:** In addition to the requirement for the transporting officer to notify Cermak regarding the use of force, Cermak medical providers appear to also be evaluating the circumstances of an inmate's medical condition, and notifying OPR when they believe that excessive force was used. OPR is acknowledging Cermak's correspondence.

**Monitor's Recommendation:** Continue to monitor compliance.

## 31. Use of Force

s.      Cermak shall ensure that, when providing medical treatment or assessment to an inmate following a use of force, Qualified Medical Staff document the inmate's injuries, if any, and any medical care provided.  Cermak shall provide CCDOC senior management with a brief summary documenting the initial medical encounter following a use of force, including an anatomical drawing that depicts the areas of sustained injury, if any, and information regarding any further medical care.

**July 2011 Compliance Status:**   Substantial compliance.

**Status Update:**   Written directive 61.5.20.0 Interagency Health Inquiry provides in Sections VII. B and D. specify that Cermak will prepare and transmit records based on the requirements of this paragraph.

**Monitor's Assessmen**t:  Cermak is documenting the status and treatment for inmates following a use of force incident.  OPR reports that records are shared as required to facilitate OPR's review of any allegation of use of excessive force. The Interagency Coordinating Committee provides a regular forum to surface, solve and issues relating to this requirement.

**Monitor's Recommendations:**  Continue to monitor compliance with this paragraph.

## 31. Use of Force

t.      Cermak shall ensure that Qualified Medical Staff question, outside the hearing of other inmates or correctional officers if appropriate, each inmate who reports for medical care with an injury, regarding the cause of the injury.  If, in the course of the inmate's medical encounter, a health care provider suspects staff-on-inmate or inmate-on-inmate abuse, that health care provider shall immediately:

1.      report the suspected abuse to the Executive Director of the Office of Professional Review or other appropriate CCDOC administrator; and
2.      adequately document the matter in the inmate's medical record.

**July 2011 Compliance Status:**   Substantial Compliance

**Status Update:**   Written directive 61.5.20.0 Interagency Health Inquiry provides in Section VII. A. that Cermak shall ensure that Qualified Medical Staff question an inmate about any injuries at a distance from other inmates and correctional officers, in such circumstances that afford  normal speech privacy, regarding the cause of an injury.

Section VII. D. provides for notifications by Cermak, including that allegations of suspected abuse by staff are forwarded to the Executive Director of CCDOC and the Director of OPR.

Section VII. B. specifies reporting in the inmate's medical record.

**Monitor's Assessmen**t:  Coordination is now occurring between CCDOC and Cermak and OPR and Cermak on the matters specified in this paragraph. (See 31.s.)

**Monitor's Recommendations:**  Continue to monitor compliance with this paragraph.

## 32.    Safety and Security

a.        CCDOC shall maintain security and control-related policies, procedures, and practices that will result in a reasonably safe and secure environment for all inmates and staff, in accordance with generally accepted correctional standards. Coordinate with Grenawitzke, Shansky, Metzner.

**July 2011 Compliance Status:**    Partial compliance.

**Status Update:**  CCSO and CCDOC are continuing their substantial investment of resources into developing and updating the written directive system.  The staff assigned to the effort meet, along with a committee, to review directives and revisions. There is clear evidence that they are achieving their objectives.  They produce a spreadsheet listing all directives, their status, and the dates that any revisions will be completed is produced and regularly updated.

In addition to the written directive system, CCDOC has developed inspection protocols and sanitation plans for each division.

**Monitor's Assessment:**  The work completed to date is substantial and the effort is impressive.  After six more months of assessing the outcome of this work, and insuring sustainability, substantial compliance should be achieved.

**Monitor's Recommendation:** Continue to update, issues and training on policies/procedures.

## 32.    Safety and Security

b.        CCDOC shall maintain policies, procedures, and practices to ensure the adequate supervision of inmate work areas and trustees, in accordance with generally accepted correctional standards. Coordinate with Grenawitzke.

**July 2011 Compliance Statue:**  Partial compliance

**Status Update:**   CCDOC provided draft general order, Inmate Work Program (14.3) due to be completed in October 2011 that addresses this paragraph's requirements.   The draft order includes procedures for the selection of inmate workers, criteria for selection, the selection and screening processes, orientation and assignment, and the responsibilities of the supervising officer.

**Monitor's Assessment:** CCDOC is working toward achieving compliance with this paragraph. They are also developing videos in support of the sanitation plans. Assessment of compliance will be made with Mr. Grenawitzke.

**Monitor's Recommendations:** Complete and implement the order. Monitor compliance.

## 32. Safety and Security

c. CCDOC shall ensure that security staff conduct appropriate rounds with sufficient frequency to provide inmates with reasonable safety. Rounds shall be conducted at least once every half hour, at irregular intervals, inside each housing unit. In the alternative, CCDOC may provide direct supervision of inmates by posting a correctional officer inside the day room area of a housing unit to conduct constant surveillance. More frequent rounds shall be conducted for special management inmates who require more intensive supervision for security and safety reasons. All security rounds shall be documented on forms or logs that do not contain pre-printed rounding times. Video surveillance may be used to supplement, but must not be used to replace, rounds by correctional officers.

**July 2011 Compliance Status:** Partial compliance.

**Status Update:** The subsections of this paragraph are addressed by CCDOC as follows: (Draft General Order Division/Unit Inspection – currently in the development/review process):

- Security staff shall conduct appropriate rounds with sufficient frequency to provide inmates with reasonable safety – Section VII., A. 1. requires 30 minute irregular rounds in all inmate living areas;

- Rounds shall be conducted at least once every half hour, at irregular intervals, inside each housing unit - Section VII., A. 1. requires 30 minute irregular rounds in all inmate living areas; and 15 minute rounds for special management;

- More frequent rounds shall be conducted for special management inmates who require more intensive supervision for security and safety reasons - Section VII., A. 1. requires 30 minute irregular rounds in all inmate living areas; and 15 minute rounds for special management; and

- All security rounds shall be documented on forms or logs that do not contain pre-printed rounding times - Section VII., A. 1. requires that supervisory round be logged in the Watch Commander logbook and the living unit logbook; but doesn't address officers assigned to the units.

This draft directive also includes requirements for inspections for cells and living areas, post/area inspections, perimeter inspections and general area inspections. This draft sets out the procedures by which officers working in living units submit work orders.

**Monitor's Assessmen**t:  CCDOD is moving forward with substantial changes, creating forms and an accountability process for security rounds, inspections and repairs. The directive should state how the officers' security checks are logged. I saw the results of this, even through the directive is still in draft – when I inquired about why a toilet in a housing area was not working, and CCDOC was able to produce the documentation that the request for repair had been sent to DFM almost three weeks prior.  In this case, the responsiveness of DFM was the issue, not the officer.  This coordination will continue to be the subject of the committee working to address such issues.

**Monitor's Recommendations:**  Complete, implement and train on the new directive.  Assure on-going collaboration with DFM.  As draft order is finalized, note how officers will log their security checks.

## 32.  Safety and Security

d.       CCDOC shall ensure that security supervisors conduct daily rounds in the inmate housing units, and document the results of their inspections.

**July 2011 Compliance Status:**   Partial compliance.

**Status Update:**  Draft General Order Division/Unit Inspection requires that "All supervisory staff will conduct daily rounds on each living units in their area of responsibility and document the rounds in the Watch Commander Logbook and the Living Unit Logbook.

**Monitor's Assessmen**t:  When the directive is completed, there will be the ability to assess whether supervisors are conducting their inspections by reviewing the supporting documentation.

**Monitor's Recommendations:**  Complete and implement the directive.

## 32.    Safety and Security

e.       Cook County shall increase the use of overhead video surveillance and recording cameras to provide adequate coverage throughout the common areas of the Facility, including the RCDC, all division intake areas, mental health units, special management units, inmate housing units, and in common areas of the divisions.

**July 2011 Compliance Status:**   Partial Compliance

**Status Update:**  The project manager, Jay Rutili, provided on May 24, 2011 a memorandum updating the status of this initiative.  The memo noted that the County Board had approved funding for the final phase of the initiative.  The project is on track for completion.

**Monitor's Assessment:**  The County Board's funding of the 2011 Capital

Improvement Program, of which the installation of video is included, assures, that absent any technical or physical plant issues, the project will be completed as designed.

**Monitor's Recommendations**:  Continue with implementation strategies.

## 32.    Safety and Security

f.        CCDOC shall maintain a procedure to prevent inmates from possessing or having access to dangerous contraband, including conducting regular inspections of cells and common areas of the housing units to identify and prevent rule violations by inmates.

**July 2011 Compliance Status**:   Partial compliance

**Status Update:**  CCSO Order 24.1.20.0, Weapons Free Institution, responds to this paragraph, and was effective April 18, 2011.  CCDOC is drafting Division/Unit Inspection processes to focus on inspections as a means of preventing the possession of contraband by inmates.

CCDOC reports that they are developing a Tool Control Interagency Agreement with DFM and Cermak.

CCDOC also notes that it is evaluating the impact of the WIMP (weapons in my possession) housing/deck.  Inmates seem to be clearly getting the message that having weapons in their possession will be quickly addressed.  Superintendents Holmes and Moreci, of the Weapons Free Committee, noted that the number of inmates housed in the WIMP deck is down from 44 to 14.

**Monitor's Assessmen**t:  The CCDOC is commended for its aggressive approach to contraband control through the Weapons Free Committee.  Contrand when found is secured and referred to the Weapons Free Committee.  I met again with representatives of the Committee and reviewed their meeting summaries.  I also reviewed the Shank/Weapon Identification and Inventory form, which identifies the source of the contraband. DFM is included in the Committee's meetings, and present for the Sheriff's Accountability meetings. Contrand is included on the agenda for each of the weekly Sheriff's Accountability meetings.  Cermak is informed of meetings and outcomes, and if contrand is from medical.  Cermak is also working with the Committee to insure that any medical devices allowed in the facility are appropriate to a secure setting – such as use of elastic back braces, rather than braces with imbedded metal as previously used.

An integral part of the initiatives to prevent inmates from possessing contrand will be elements of the Division/Unit Inspection directives that will revise/establish security procedures to be division-specific.  While finding and analyzing contraband is critical, prevention also requires vigilance.  Division/Unit Inspection directives are scheduled for completion in August 2011.

This paragraph will be in substantial compliance upon implementation of the division/unit inspection directive.

**Monitor's Recommendations:**  Continue the aggressive monitoring and identification of seized contraband.  Work is continuing on the directive governing tool control with DFM and Cermak.  When the Division/Unit Inspection directives are completed, compliance will be achieved.

## 32.    Safety and Security

g.      CCDOC shall review, and revise as applicable, all General Orders ("GOs"), Standard Operating Procedures ("SOPs"), and Post Orders on an annual basis, or more frequently as needed.

**July 2011 Compliance Status:**   Substantial Compliance

**Status Update:**  CCSO has issued directive 11.1.1.0 Office Directives Systems: Written Directives, effective February 8, 2010.  Section VIII., 6. States "All directive outlined in this order will be reviewed on an annual basis, from the effective date, to determine if the order requires editing, updating or any other action. The post orders (more than 1,100) were updated and issued (on July 14, 2011).

**Monitor's Assessmen**t:  The CCDOC provided me with a spreadsheet used to track all parts of the written directive system including prior #, date effective [prior], amends, rescinds, new number system, date assigned, returned date, reviewed by, review outcome, reason for rescind.  This strategy provides a very effective means of tracking to assure compliance.

I have also have read revised orders.

CCDOC has done the mammoth job of updating all post orders, more than 1,000 orders.  These were previously provided to me for review, and my assessment is that the staff did a good job of including updated requirements for posts that flowed from revised written directives – that is, specific duties and levels of accountability.

**Monitor's Recommendations:**  Continue the process of review and updating.

## 32.    Safety and Security

h.      CCDOC shall revise policies, SOPs, and post orders for all armed posts to include proper use and safe handling of weapons and provide specific instructions on use of deadly force and when and under what circumstances such force should be used, in accordance with generally accepted correctional standards.

**July 2011 Compliance Status:**   Partial compliance

**Status Update:** No change from March 2011 report; except that substantial compliance will be achieved when the Use of Force/Response to Resistance is effective in September 2011.

**Monitor's Assessmen**t: Post orders have been updated and issued.

**Monitor's Recommendations:** Monitor compliance.

### 32. Safety and Security

i.       CCDOC shall standardize security policies, procedures, staffing reports, and post analysis reports across the divisions, to the extent possible, taking into account the different security levels and different physical layouts in the various divisions.

**July 2011 Compliance Status:** Partial compliance

**Status Update:** Regarding the subsections of this paragraph compliance is supported by:

- standardize security policies , procedures;
- staffing reports; and
- post analysis reports across the divisions.

The written directive committee is coordinating the development and implementation of the security policies and procedures. The staffing reports will be centralized monitored through the Centralized Roster Management (general order 3.30) that is currently being revised. A draft directive, 3.9 Regular Review of staffing requirements will address the post analysis across the divisions.

**Monitor's Assessmen**t: CCDOC is proceeding with finalizing the written directives that address this paragraph. Additionally a draft staffing analysis has been completed.

**Monitor's Recommendations:** Continue to finalize relevant directives and implement.

### 32. Safety and Security

j.       CCDOC shall provide formal training on division-specific SOPs to correctional officers in accordance with their assignments, and shall provide further specialized training for officers assigned to Special Management Units. Cermak Hospital shall provide specialized training for officers assigned to psychiatric units. [From Consent agreement "Special Management Units" means those housing units of the Facility designated for inmates in administrative or disciplinary segregation, in protective custody, on suicide precautions, or with mental illness."] Coordinate with Drs. Shansky and Metzner.

**July 2011 Compliance Status:** Partial Compliance.

**Status Update:** CCDOC has provided training on a continual basis for officers assigned to Special Management units, and the psychiatric units. This training has been evaluated by Drs. Metzner and Shansky. The CCDOC is completing division-specific standard operating procedures that will address management of special populations. These SOPs will form the basis for division-specific training.

**Monitor's Assessment:** The CCDOC has been diligent in meeting the requirement by providing specialized training for officers assigned to Cermak and Division IX. The other divisions, which include some special management populations will have division-specific SOPs and training. (Such as now done for staff assigned to Division IX.)

I note, that while training is provided to officers working with mental health clients, CCDOC needs to find incentives to retain those officers to work in those specific units, allowing continuity with both clients and medical/mental health staff.

Substantial compliance with this paragraph will be attained with division/unit SOPs are done, training outlines completed (draft Divisional Orientation and Handbooks Unit General Order, and training conducted.

**Monitor's Recommendations:** Complete and implement the division/unit SOPs. Consider implementing strategies to retain officers for the mental health/psychiatric and special management housing who have completed training and are interested and skilled in working with these inmates.

## 32.   Safety and Security

k.       CCDOC shall maintain in working order all monitoring equipment at the Facility that is under CCDOC's direct control, including cameras, alarms, radios (hand held), interior and exterior lighting, x-ray and other screening equipment, and walk-through metal detectors. To the extent that the maintenance of any Facility monitoring equipment is under the control of DFM, CCDOC shall promptly report any maintenance needs and DFM shall prioritize its services to ensure that all monitoring equipment is maintained in working order. Coordinate with Grenawitzke.

**July 2011 Compliance Status:**   Partial Compliance.

**Status Update:** No change from September 2010 report.

**Monitor's Assessment:**

CCDOC needs to develop and implement policy that addresses each requirement of the paragraph. Partial compliance is noted because of the video capital project. There are division/unit inspection directives under

development.

**Monitor's Recommendations:** Develop the policies and procedures related to this paragraph.

## 32. Safety and Security

l.      Absent exigent circumstances, CCDOC:  (i) shall house each inmate assigned to a division that is celled to one permanent bed in a cell and shall not house any inmates (including those assigned to dormitory divisions) such that they are sleeping on the floor, on a mattress on the floor, or in any area not designed or redesigned as sleeping quarters; (ii) shall not house more than two inmates to a single cell (triple-bunking); and (iii) shall not hot-bunk any inmates.

**July 2011 Compliance Status:**   Substantial Compliance.

**Status Update:**  Acting CCDOC Executive Director Hickerson provided on July 12, 2011 a memorandum stating, "Since 2008, the CCDOC has had adequate bed space available, therefore alleviating the need for detainees sleeping on the mattresses directly on the floor.  If exigent circumstances give rise to triple-bunking, the CCDOC shall provide the third inmate in the triple-bunked cell a "BOAT", stackable bunk, moveable platform, or cot, so that the inmate is not required to lay down directly on the cell floor or on a mattress on the floor.   If circumstances change regarding the use of "BOATS" or triple-bunking, the CCDOC will notify you [the Monitor] as soon as possible."

Additionally, the Court has approved a process by which up to 1,500 inmates can be screened for release if the facility becomes critically overcrowded.

**Monitor's Assessmen**t:   I will tour all facilities in the compound in December 2011 and determine if CCDOC continues to follow this commitment.  As the classification system is revised, there will be new housing plans developed, which will also address this issue.

**Monitor's Recommendations:** CCDOC continue to carefully monitor to insure no inmate is required to sleep on a mattress on the floor.

## 32. Safety and Security

m.      When exigent circumstances give rise to triple-bunking, CCDOC shall provide the third inmate in the triple-bunked cell a "boat," stackable bunk, moveable platform, or cot, so that the inmate is not required to lay down directly on the cell floor or on a mattress on the floor.

**July 2011 Compliance Status:**   Substantial Compliance

See 32. l.

**33.** **Security Staffing.** The parties agree that correctional officer staffing and supervision levels at the Facility must be appropriate to adequately supervise inmates, to carry out the requirements of this Agreed Order, and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards. Cook County and CCDOC shall take such actions as shall ensure that correctional officer staffing and supervision at the Facility are sufficient to achieve these purposes. These actions shall include the following:

a.      In the fiscal year 2010 budget, Cook County shall allocate funds sufficient to allow for 210 additional correctional officer positions at the Facility. Consistent with provision 33.c, such funding may occur on a rolling basis, as appropriate in light of the time required to hire, train, and put on duty the additional 210 new correctional officers.

**July 2011 Compliance Status:**   Substantial Compliance

**Status Update:**   Data provided by CCSO indicates that:
- There were 495 funded vacant positions for corrections officers as of 12/1/2009;
- A total of 458 officers were hired since 12/9/09;
  - 269 hires between 12/1/09 and 12/7/10; and
  - 189 hires from 12/8/10 – 7/11/11.
- There is an anticipated hiring of 141 by the end of the year (bringing the total for CY 2011 to 330 – for a total of 604 officers in the last two calendar years);
- During the period 12/9/09 – 7/11/11:
  - 81 officers left employment;
  - 16 officers transferred into CCDOC from other CCSO divisions; and
  - 30 officers were promoted to sergeant.

CCDOC has a draft staffing plan to evaluate and assess where additional staffing may be needed. CCDOC has not yet developed the staffing plan for the new RCDC that may, or may not, pull from existing posts/positions in the current operations thus not requiring additional new positions. As this facility's opening is 28 months away, assessing the date to implement a transition team, along with developing requests to the funding authority for additional staff, if needed, should be a priority for CCSO and CCDOC.

**Monitor's Assessment:**   CCSO has hired a remarkable number of corrections officers since December 2009, while at the same time raising hiring standards. Through accounts from the Training Institute and the divisional superintendents, all new hires are performing well. The attrition rate is very low for a correction workforce (perhaps due to the economy).

CCSO has demonstrated that it can hire, and is able, in my view, continue the momentum.

**Monitor's Recommendation:**   Continue to refine the hiring process. Be vigilant to

changes in the local economic scene that might result in individuals leaving (for example, hiring by CPD). Develop a process to anticipate vacancies due to retirement.

## 33. Security Staffing.

b. CCDOC shall use its best efforts (through the maintenance of the written staffing plan required by provision 33.h and otherwise) to ensure that the number of correctional officer vacancies is kept to the minimum practicable number at all times, taking into account that the timing of terminations and resignations and the resulting rate of attrition may, in ordinary course, result in there being some vacancies at any given time.

**July 2011 Compliance Status:** Partial compliance

**Status Update:** CCSO and CCDOC have made significant progress with hiring. This paragraph will be in substantial compliance when the staffing plan is complete, along with the staffing analysis for the new RCDC.

**Monitor's Assessment:** CCSO is aware of the current vacancies and need to fill those, as well as assure appropriate supervisory staffing – with the promotion of 30 individuals to sergeant, and the pending promotion of lieutenants. CCDOC needs to assess the staffing needs of the new RCDC. CCDOC has reorganized the command structure of the agency eliminating the ranks of Captain and Chief, and replacing those with the rank of Commander (N=54). This reorganization was to increase accountability in the divisions.

**Monitor's Recommendations:** Continue to monitor the hiring process; continue to monitor retirements and attrition; complete the staffing plan; and complete a staffing impact analysis for the new RCDC.

## 33. Security Staffing.

c. CCDOC shall fill the 210 additional correctional officer slots provided for in provision 33.a; fill the 285 correctional officer vacancies that existed at the Facility as of July 17, 2009; and fill any correctional officer vacancies coming into existence after that date in the following manner:
    i.    By December 31, 2010, CCDOC shall hire, train, and put on duty at the Facility at least 448 [381] newly qualified correctional officers (in addition to those on duty as of December 31, 2009).
    ii.   By March 30, 2011, CCDOC shall hire, train, and put on duty at the Facility at least 178 [107] newly qualified correctional officers (in addition to those on duty as of December 31, 2010).

**July 2011 Compliance Status:** Substantial Compliance.

**Status Update:** See 33.a. Although the CCSO and CCDOC were not in compliance with hiring by the dates specified in this paragraph – the totality of hiring meets the requirement, and therefore, I find them in substantial compliance. They have hired 458 officers since 12/9/09, with another 141

officers to be hired from 7/11/11 through the end of the calendar year. The number of new vacancies created by attrition since 12/9/11 is 81.

**Monitor's Assessmen**t: See 33.a.

**Monitor's Recommendations:** See 33. a. and 33.b.

## 33. Security Staffing.

d. The parties agree that for 30 months following the effective date of this Agreed Order, Cook County and CCDOC shall not be required to provide additional correctional officer staffing and supervision at the Facility beyond that which is necessary to ensure that correctional officer staffing and supervision are sufficient to achieve the purposes set out in the introductory paragraph of provision 33 and to comply with provisions 33.a-c above.

**July 2011 Compliance Status:** Not applicable at this time.

## 33. Security Staffing.

e. Within 30 months of the effective date of this Agreed Order, the CCDOC Monitor shall assess and make a recommendation on whether the correctional officer staffing and supervision levels are appropriate to adequately supervise inmates at the Facility, in accordance with generally accepted correctional standards. If the CCDOC Monitor determines that staffing is inadequate, the CCDOC Monitor will make a recommendation regarding the appropriate number of correctional officer staff. If the parties do not accept the CCDOC Monitor's staffing recommendation, CCDOC and Cook County shall agree to an independent, comprehensive study to determine the appropriate correctional officer staffing and supervision. The parties agree that the results of this staffing study shall provide guidance as to the sufficient number of qualified correctional officers necessary to operate the Facility safely and to carry out the requirements of this Agreed Order.

**July 2011 Compliance Status:** Not applicable at this time.

## 33. Security Staffing.

f. If the staffing study requires additional correctional officers, Cook County shall allocate funds sufficient to maintain correctional officer staffing levels necessary to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards.

**July 2011 Compliance Status:** Not applicable at this time.

## 33. Security Staffing.

g. If the staffing study requires additional correctional officers, and consistent with Cook County's allocation of funds for security staffing, CCDOC shall hire and train sufficient number of qualified correctional officers and other staff to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards, including:
1. Investigative staffing sufficient to meet the internal investigation responsibilities outlined in

this Agreed Order;

2.      Correctional officer staffing sufficient to provide inmates requiring treatment with adequate access to appropriate medical and mental health care by providing timely movement of inmates to medical units, transport of inmates who have been referred for outside specialty care, and escort, if necessary, to Qualified Medical and Mental Health Staff on housing units; and

3.      Qualified staff sufficient to monitor security cameras in real time and allow for supervisory viewing and retrieving at any time.

**July 2011 Compliance Status:**   Not applicable at this time.

## 33.    Security Staffing.

h.        CCDOC shall maintain a written staffing plan that requires sufficient staffing to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards.

**July 2011 Compliance Status:**   Partial compliance.

**Status Update:**  CCDOC has drafted staffing plan and provided it to me for review.  It does not include staffing for the new RCDC.   The plan will be the subject to further review during the December 2011 tour.

**Monitor's Assessmen**t:  See 33.a.

**Monitor's Recommendation:**  Continue to finalization of the plan.

## 33.    Security Staffing.

i.        Absent exigent circumstances, CCDOC shall maintain a practice that does not allow for scheduled, planned, or expected cross-watching (a CCDOC practice of allowing one correctional officer to simultaneously supervise two housing units from the control center of one of the units) at any time on all maximum security and Special Management Units, and during first and second shifts throughout the Facility.

**March 2011 Compliance Status:**        Substantial Compliance

**Status Update:**  Acting CCDOC Executive Director Hickerson has provided a memorandum dated July 12, 2011 that states that the CCDOC "does not allow for scheduled, planned or expected cross watching absent exigent circumstances, at any time on maximum security and special management units, and during the first and second shifts throughout the facility.   The CCDOC may permit cross watching on the third shift in Divisions/Units II, IV, V, VI and XI, expect for "special management units," provided special orders are issued directing the times and manner of cross watching based on the Monitor's July 11, 2011 review of the sightlines and technology available.  In Division I, the Monitor approved Lieutenant Imhof's plan for staffing the tiers, which was reviewed on July 11, 2011, provided a special order setting forth the process is issues.  If the Monitor later objects to any cross watching, the CCDOC will

immediately cease cross watching until further consultation or review by the Monitor and the Monitor approves renewal. The CCDOC will make efforts to eliminate cross watching at the facility."

**Monitor's Assessmen**t: I toured the areas in question, spoke with the staff, looked at the sight lines, and concur with the CCDOC's policy directive noted above. In a meeting with members of various collective bargaining units on July 13th, the issue of cross watching was raised, and some attendees stated that the practice was unsafe and that employees and inmates were at risk. They offered to provide documentation, which has not yet been produced. Absent the documentation, I find that the CCDOC is in compliance with this paragraph. I will review again during the next tour, and am open to additional information that any of the collective bargaining units may provide.

**Monitor's Recommendation:** CCDOC continue to monitor staffing and inmate safety when and if cross watching is used.

## 33.    Security Staffing.

j.        CCDOC may permit cross-watching on third shift in housing units that are not maximum security or Special Management Units only if the Monitor does not object after consultation and review. The Monitor's review of the appropriateness of third-shift cross-watching on a particular housing unit shall be guided by the sufficiency of sightlines between the units being cross-watched, the adequacy of video and/or audio technologies in place, and/or other factors that bear on the safety and security of inmates and staff. If the Monitor later objects to any cross-watching that is in effect because of the Monitor's concerns that cross-watching on a particular housing unit presents an undue risk to the safety and security of inmates and staff, CCDOC shall immediately cease such cross-watching. CCDOC may renew cross-watching on that unit again if, after further consultation with and review by the Monitor, the Monitor does not object to such renewal. Although cross-watching is permitted under the limited circumstances described herein, CCDOC will work to eliminate the practice at the Facility.

**July 2011 Compliance Status:**    Substantial Compliance

See 33.i.

## 34.    Incidents and Referrals

a.        CCDOC shall continue to ensure that staff adequately and promptly document all reportable incidents, including inmate fights, rule violations, inmate injuries, suicides and suicide attempts, cell extractions, medical emergencies, contraband, vandalism, escapes and escape attempts, fires, and other incidents causing a disruption to standard CCDOC practice, in accordance with generally accepted correctional standards.

**July 2011 Compliance Status:**    Partial compliance

**Status Update:**    CCSO's General Order, Reporting Incidents, 24.9.1.0, effective July 11, 2011, VII. Procedures specifies the requirements for employee reporting. CCSO's General Order 11.2.2.0, Response to Resistance/Use of Force Duties,

Notifications and Reporting Procedures (effective 9/19/11) addresses specifically reporting on these incidents.

The incident reporting module in IMACS is not fully operational, currently in the test phase.

**Monitor's Assessmen**t  This paragraph will be in substantial compliance with the incident reporting in IMACS is fully implemented.

**Monitor's Recommendation:**  Continue implementation of incident reporting module in IMACS.

## 34.    Incidents and Referrals

b.        CCDOC shall continue to ensure that correctional officers receive formal pre-service and in-service training on proper incident reporting policies and procedures, in accordance with generally accepted correctional standards.

**July 2011 Compliance Status:**  Substantial compliance

**Status Update:**   CCDOC's pre-service and in-service training  includes modules regarding report writing.  Training is currently underway regarding the use of force/response to resistance general order (effective 9/19/11).

**Monitor's Assessmen**t: CCDOC has the process in place and is providing the training.

**Monitor's Recommendations:**  Monitor training to determine if any updates are needed.

## 34.    Incidents and Referrals

c.        CCDOC shall maintain a system to track all reportable incidents (as described in provision 34.a) that, at a minimum, includes the following information:

| | | | | |
|---|---|---|---|---|
| 1. | incident tracking number; | 8. | primary and secondary staff |
| 2. | the inmate(s) name; | | involved; |
| 3. | housing assignment; | 9. | reviewing supervisor; |
| 4. | date; | 10. | external reviews and results (if |
| 5. | type of incident; | | applicable); |
| 6. | injuries (if applicable); | 11. | remedy taken (if appropriate); and |
| 7. | medical care (if applicable); | 12. | administrative sign-off. |

**July 2011 Compliance Status:**  Substantial Compliance

**Status Update:**  See 34.a.  Section VII. B. 5. Includes all 12 requirements noted in the paragraph.

**Monitor's Assessment:**  See 34.a.

**Monitor's Recommendation:**  See 34.a.

## 34.    Incidents and Referrals

d.      CCDOC shall require prompt administrative review of incident reports.  Such reviews shall include a case-by-case review of individual incidents as well as a systemic review in order to identify patterns of incidents.  CCDOC shall incorporate such information into quality management practices and take necessary corrective action.

**July 2011 Compliance Status:**  Substantial Compliance.

**Status Update:**  CCSO's General Order, Reporting Incidents, 24.9.1.0, effective July 11, 2011, VII. Procedures specifies:

- shall require prompt administrative review of incident reports – Section VII. D.
- Such reviews shall include a case-by-case review of individual incidents as well as a systemic review in order to identify patterns of incident. Section VII. D. and Sheriff's Accountability 24.1.10.0
- shall incorporate such information into quality management practices and take necessary corrective action - Sheriff's Accountability 24.1.10.0

**Monitor's Assessment:**  CCDOC has the procedures in place to insure that the requirements of this paragraph;  full implementation of IMACS will ensure that this information is available on a real-time basis.

**Monitor's Recommendation:**  None at this time.

## 34.    Incidents and Referrals

e.      CCDOC shall ensure that incident reports, use of force reports and inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, that it is referred for investigation.

**July 2011 Compliance Status:**  Partial Compliance.

**Status Update:**  There are several written directives that address this paragraph: Use of Force/Reporting Procedures (effective 9/19/11), Section IV. O., Reporting Incidents, Section VII. D. (effective July 11, 2011), and Inmate Grievance Procedures VIII. C. (effective July 14, 2011)  The use of force monitor will be reviewing reports.

**Monitor's Assessment:**  CCDOC has the procedures in place to address this paragraph.  This section will be in substantial compliance after 9/19/2011 when the use of force/reporting is effective. See also 34.a.

**Monitor's Recommendation:**  Continue to monitor compliance.

## 34.    Incidents and Referrals

f.        CCDOC [OPR] shall maintain policies, procedures and practices requiring investigations to resolve issues identified during review of incident reports, disciplinary hearings, or inmate grievances, and determine appropriate remedies, in accordance with generally accepted correctional standards.  At a minimum, CCDOC shall require timely and appropriate investigations of all suicides, serious suicide attempts, inmate-on-inmate violence resulting in serious injury, inmate-on-staff violence, inmate injuries requiring treatment by an outside hospital, inmate injuries of a suspicious nature (including black eyes, injuries to the mouth, injuries to the genitals, etc.), sexual misconduct between inmates, sexual misconduct involving staff, fires, escapes, escape attempts, and deaths.

**July 2011 Compliance Status:**  Partial compliance

**Status Update:** See 35 a.

**Monitor's Assessment:**  CCDOC is moving toward compliance with review and update process for all written directives.

**Monitor's Recommendation:**  See 35.a.

## 34.    Incidents and Referrals

g.        CCDOC [OPR] shall ensure that any investigation reports indicating possible criminal behavior will be referred to the appropriate law enforcement authority.

**July 2011 Compliance Status:**  Substantial compliance

**Status Update:**  OPR procedure 100.5, Mission and Law Enforcement Authority, provides the sequence of referrals to appropriate law enforcement agencies (or within the CCSO) for criminal or administrative misconduct by employees, or detainee/detainee violations.

**Monitor's Assessment:**  The section provides the specifics needed to assure that investigative reports are referred to appropriate law enforcement agencies.

**Monitor's Recommendation:**  Monitor compliance with this requirement.

**35.     Investigations** - Investigations at the Facility are conducted by independent departments under the Cook County Sheriff's Office, including the Office of Professional Review, the Criminal Investigations Unit, and the Sheriff's Police Department.  The Cook County Sheriff will assume responsibility for requiring these investigatory units to comply with the relevant provisions of this Agreed Order.

a.      CCDOC [OPR] shall maintain comprehensive policies, procedures, and practices for the timely and thorough investigation of alleged staff misconduct, in accordance with generally accepted correctional standards.

**July 2011 Compliance Status:**  Partial Compliance

**Status Update:**  No change since March 2011 report.  Awaiting CCDOC companion policies to OPR's for substantial compliance.

**35.     Investigations**

b.      Internal investigations shall be conducted by persons who do not have supervisory responsibility for the staff member(s) being investigated.

**July 2011 Compliance Status**:  Partial compliance.

**Status Update:**  OPR's procedures are in place;  what is needed is the corresponding CCDOC procedures.

**Monitor's Assessmen**t:   The completion of the CCDOC companion written directives will result in substantial compliance.

**Monitor's Recommendations:**  Complete CCDOC companion written directive(s).

**35.     Investigations**

c.      CCDOC [OPR] shall ensure that all internal investigations will include timely, thorough, and documented interviews of all relevant staff and inmates who were involved in, or witnessed, the incident in question.

**July 2011 Compliance Status**:   Substantial compliance.

**Status Update:**  I will review files during the December 2011 tour.

**35.     Investigations**

d.      CCDOC [OPR] shall ensure that internal investigation reports shall include all supporting evidence, including witness and participant statements, policies and procedures relevant to the incident, physical evidence, video or audio recordings, and relevant logs.

**July 2011 Compliance Status**:   Substantial compliance.

**Status Update:** I will review files during the December 2011 tour.

## 35.    Investigations

e.        CCDOC [OPR] shall ensure that all investigatory staff will receive pre-service and in-service training on appropriate investigations policies and procedures, the investigations tracking process, investigatory interviewing techniques, and confidentiality requirements.

**July 2011 Compliance Status**:   Partial compliance.

**Status Update:**  Training has been provided to the Commanders who will be coordinating or conducting department head investigations.  What is needed for compliance is the CCDOC written directive governing this process

**Monitor's Assessmen**t:  Progress is being made, especially with the potential designation of those at the rank of commander as investigators

**Monitor's Recommendations:**  Complete CCDOC companion policies; train Commander rank individuals in those specific procedures

## 35.    Investigations

f.        CCDOC shall provide all investigators who will be assigned to conduct investigations of use of force incidents with specialized training in investigating use of force incidents and allegations.

**July 2011 Compliance Status**:   Partial compliance.

**Status Update:**  Training has been provided to OPR investigators.  Orientation has been provided to the newly designated persons at the rank of Commander. When the CCDOC companion policies are completed, and those who will be conducting investigation trained on those procedures, this paragraph will be in substantial compliance.

**Monitor's Assessmen**t: Progress is being made, especially with the potential designation of those at the rank of commander as investigators.

**Monitor's Recommendations:**  Complete CCDOC companion policies; train Commander rank individuals in those specific procedures.

## 35.    Investigations

g.        CCDOC [OPR] shall ensure that the results of each internal investigation shall be documented in an investigation report.  CCDOC administration shall review the investigation reports, along with the underlying documentation, and take appropriate action.  CCDOC shall implement appropriate remedies based upon the results of internal investigations.

**July 2011 Compliance Status:**  Partial Compliance.

**Status Update:**  No change from March 2011 report; awaiting completion of companion CCDOC policies/procedures.

**Monitor's Assessment:**  Progress is being made, especially with the potential designation of those at the rank of commander as investigators.

**Monitor's Recommendations:**  Complete the directive governing Department Head reviews in CCDOC.

## 36.   Inmate Disciplinary Process

a.      CCDOC shall maintain policies, procedures, and practices for a formal disciplinary process, including prompt issuance of written disciplinary citations, administrative review and disciplinary reports for alleged minor rule violations, and due process for alleged major rules violations, in accordance with generally accepted correctional standards.

**July 2011 Compliance Status:**  Partial Compliance

**Status Update:**  CCDOC continues to update and refine the written directive governing inmate discipline.  The decision has been to designate and train a designated cadre of officers to conduct hearings in all divisions, working toward coordination and uniformity in the process.  The newly designated Commander rank in each division will also be involved with the process.  It is anticipated that the inmate discipline module in IMACS will be used for the data entry.  Thus the information will be available for classification and re-housing decisions

**Monitor's Assessment:**  CCDOC has analyzed the current inmate disciplinary process, identified deficiencies, and is working toward instituting a process that conforms to accepted correctional practice.  Designating individuals as hearing board members will ensure uniformity in the inmate discipline process, as well as quality control in the reports, and data entry.

**Monitor's Recommendations:**  Complete the written directive, begin training, and monitor compliance.

## 36.   Inmate Disciplinary Process

b.      CCDOC shall ensure that inmate disciplinary hearings are conducted in a reasonably private and secure setting.

**July 2011 Compliance Status:**  Partial Compliance

**Status Update:**  See 36. a. CCDOC notes that the Assistant Executive Director notified all superintends on 4/1/11 that inmate disciplinary hearings are to be

held in a location in the division to insure privacy.

**Monitor's Assessmen**t: CCDOC is proceeding with finalizing the written directives.

**Monitor's Recommendations:**  Complete the written directives, begin training of individuals assigned to hearing board.

## 36.    Inmate Disciplinary Process

c.       CCDOC shall ensure that all inmates placed in lock down status are provided with appropriate due process that has been developed and implemented in policies and procedures, in accordance with generally accepted correctional standards.

In an emergency, the Executive Director of CCDOC may order a lock down of entire areas of the Facility in order to control the situation and address serious security concerns.  In such circumstances, it is not necessary to provide disciplinary hearings to each inmate affected by the lock down.  However, lock downs of this nature shall be limited to only the time and scope necessary to address the emergency.  For the purposes of this Agreed Order, a "lock down" shall not include the routine instances in which inmates are confined to their cells, including periods of count, over night, shift change, movement, and routine contraband sweeps.

**July 2011 Compliance Status:**   Partial Compliance

**Status Update:**  See 36. a., and b.

**Monitor's Assessmen**t:  See 36. a., and b.

**Monitor's Recommendations:**  Complete the written directives, begin training, monitor outcomes.

## 36.    Inmate Disciplinary Process

d.       CCDOC shall ensure that the disciplinary board's written record accurately reflects the testimony and discussion from the disciplinary hearing, including any recommendations from a mental health professional regarding the extent to which disciplinary charges are related to an inmate's serious mental illness or suggestions for minimizing the deleterious effect of disciplinary measure on the mental health status of the inmate.

**July 2011 Compliance Status:**   Partial Compliance

**Status Update:**  CCDOC is working to complete the updated policy/procedure governing inmate discipline.   The draft is being updated to include the specific language noted above. See also 36 f.

**Monitor's Assessmen**t:  CCDOC is proceeding with finalizing the written directive.

**Monitor's Recommendations:**  Complete the written directive, begin staff training.

**36.    Inmate Disciplinary Process**

e.        CCDOC shall alert Cermak when inmates are placed in disciplinary segregation or protective custody.

**July 2011 Compliance Status:**    Partial Compliance

**Status Update:** CCDOC is working to complete the updated policy/procedure governing inmate discipline.    The draft is being updated to identify the contact at Cermak to which the notification is sent, the timeliness and means of the notification.    A corresponding Cermak policy/procedure will be needed to insure that the appropriate person/position receives the notification and action initiated.

**Monitor's Assessmen**t:    CCDOC is proceeding with finalizing the written directive.

**Monitor's Recommendations:**    Complete the written directive, begin staff training. Ensure that Cermak has a companion policy/procedures.

**36.    Inmate Disciplinary Process**

f.        CCDOC shall permit a Cermak Qualified Mental Health Staff member to serve on the disciplinary board.

**July 2011 Compliance Status:**    Partial Compliance

**Status Update:**    This paragraph is being addressed through these strategies:

1.    CCDOC is updating the General Order governing (draft dated 6/30/2011) "Inmate Discipline:  Disciplinary Reports and Hearing Procedures" to include language in Section VII. Procedures, A. Pre-Hearing Procedures, 8. Cermak Notification of Prehearing Disciplinary Detention.    This directive is to become effective on 10/24/2011.
2.    The Inter-Agency Agreement Between the Office of the Sheriff of Cook County and the Cook County Health and Hospitals System, under Scope of Cermak's Services and Obligation includes the following:
    ▪    "Evaluate the health status of detainees placed in segregation and determine whether health needs require special accommodation and contraindicate the placement". (Page 3 of 10)
3.    A memoranda dated August 2, 2011 from Michael Puisis, Cermak COO to John Murphy, Assistant to the Sheriff, in which Cermak declines to serve as a member of the disciplinary board, but "will make a professional staff member available to consult and advise the Disciplinary Board whether a mental health disorder may have contributed to the inmate's behavior in committing the violation, whether disciplinary segregation will exacerbate the detainee's mental health condition, and if so, steps which can be

taken to minimize adverse mental health effect."  Cermak has also in this memoranda designated a point of contact.

**Monitor's Assessment:**  This paragraph will be in compliance when the CCDOC's policy is in effect.

**Monitor's Recommendations:**  Complete the CCDOC directive.  Ensure that the communication mechanisms are sound and that Cermak has the chance to provide, or decline to provide input to the Disciplinary Hearing Board.

## 37.    Classification

a.      CCDOC shall maintain policies and procedures for an appropriate, objective classification system that separates inmates in housing units by classification levels in order to protect inmates from unreasonable risk of harm.  The system shall include consideration of an inmate's security level, severity of current charge, types of prior commitments, suicide risk, history of escape attempts, history of violence, and special needs.  CCDOC shall use best efforts to anticipate periods of unusual intake volume and schedule sufficient classification staff to timely classify inmates.

**July 2011 Compliance Status:**    Partial compliance

**Status Update:**   There remains a substantial amount of work to do to update the classification system, and ultimately implement using IMACS.  CCDOC has developed a Classification Model Action Plan that details the tasks to be undertaken to achieve compliance, the date due, the individuals responsible and the date completed.  CCDOC has also contracted with one of the leading jail classification experts in the country, Dr. Patricia Hardyman, to assist them. They have designated an individual to oversee the work, and that person, along with two others will be attending NIC training in August 2011.  The Classification Committee has provided its draft work to Dr. Hardyman for her review and comment.

**Monitor's Assessment:**  CCDOC has implemented an excellent plan, with appropriate resources and expertise to ultimately comply with this paragraph, and make the facility safer for inmates and staff.

**Monitor's Recommendations:**  Continue to work on the action plan and collaborate with Dr. Hardyman.  Work with IMACS vendor to be able to enter classification data.

## 37.    Classification

b.      CCDOC shall ensure that classification staff have sufficient access to current information regarding cell availability on each division.

**July 2011 Compliance Status:**    Partial compliance.

**Status Update:**   See 37.a.  Classification staff have access to this information, but the process needs to be finalized via written directive.

**Monitor's Assessment:**  See 37. a.

**Monitor's Recommendation:**  See 37.a.

### 37.   Classification

c.     CCDOC shall include information on each inmate's assignment to the Special Incarceration Unit "level system" at the Facility in the new Jail Management System, starting with the date the new Jail Management System becomes operational.

**July 2011 Compliance Status**:   Substantial compliance.

**Status Update:**  No change since March 2011 report.

### 37.   Classification

d.     CCDOC shall provide training and access to all correctional officer supervisors on the full capabilities of the new Jail Management System's classification and inmate tracking system (or any replacement system).

**July 2011 Compliance Status:**   Partial compliance.

**Status Update:**  New employees are trained, and in-service training provided. Substantial compliance will be attained with the classification revisions are completed and implemented via written directives.

**Monitor's Assessment:**  Training continues;  revising the classification system continues.

**Monitor's Recommendation** No additional recommendation.

### 37.   Classification

e.     CCDOC shall provide ongoing internal and external review and validation of the inmate classification system to ensure its reliability and objectivity.

**July 2011 Compliance Status:**   Non-compliance.

**Status Update:**  CCDOC has initiated actions that will ultimately lead to the ability for ongoing internal and external validations of the classification system. See 37.a.

## 38.    Inmate Grievance Process

a.      CCDOC shall maintain policies and procedures to ensure inmates have access to an adequate grievance process and to ensure that grievances may be accessed and filed confidentially, without requiring the intervention of a correctional officer, in accordance with generally accepted correctional standards.   These policies and procedures should be applicable and standardized across all the Facility divisions.

**July 2011 Compliance Status:**   Substantial Compliance.

**Status Update:**  CCSO General Order 11.14.5.0 Inmate Grievance Procedure (effective July 14, 2011) responds to the subsections as follows:

- policies and procedures to ensure inmates have access to an adequate grievance process – 11.14.5.0 – Section II, Policy.
- ensure that grievances may be accessed and filed confidentially, without requiring the intervention of a correctional office – 11.14.5.0, A. 2, 3. B. 1., 4. A.
- these policies and procedures should be applicable and standardized across all the Facility divisions, 11.14.5.0 – Section II, Policy,

Staffing for the Correctional Rehabilitation Workers (CRWs) has been changed to provide inmate access to the CRWs and hence the grievance process on a 7-day a week basis.

Standard forms have been developed.  The process is in place even as the input into IMACS is pending.  Grievances continue to be tracked across divisions, and are a point of discussion at the Sheriff's weekly accountability meetings.  A training curriculum for managing grievances is being developed for the CRWs. Commanders have already been trained.  Work continues to coordinate with Cermak regarding grievances as three-quarters or more of inmate grievances concern medical/dental/mental health care.

**Monitor's Assessmen**t:  CCDOC has implemented the procedures, and has a process in place to collect, respond to, and track grievances.  Grievances also are reviewed at the Sheriff's Accountability Meetings.

**Monitor's Recommendations:**  Complete the training curriculum for CRWs and conduct training; re-orient inmates; coordinate with Cermak.  Assess Cermak's QA/QI data regarding response to inmate grievances.

## 38.    Inmate Grievance Process

b.      CCDOC shall ensure that the grievances receive appropriate follow-up, including informing the grievant of the outcome, providing a timely written response, and tracking implementation of resolutions.

**July 2011 Compliance Status:** Substantial Compliance.

**Status Update:** See 38.a. CCSO General Order 11.14.5.0 Inmate Grievance Procedure (effective July 14, 2011)

**Monitor's Assessmen**t: See 38.a.

**Monitor's Recommendations:** See 38.a.

### 38.    Inmate Grievance Process

c.    CCDOC shall ensure that grievance forms are available on all units and are available in Spanish. CCDOC shall ensure that there is adequate opportunity for illiterate inmates and inmates who have physical or cognitive disabilities to access the grievance system.

**July 2011 Compliance Status:** Substantial Compliance

**Status Update:** See 38.a.

**Monitor's Assessmen**t:   See 38.a.

**Monitor's Recommendations:** See 38.a.

### 38.    Inmate Grievance Process

d.    CCDOC shall ensure that inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, are referred for investigation. A member of the management staff shall review the grievance tracking system regularly in order to identify areas of concern.

**July 2011 Compliance Status:** Substantial Compliance

**Status Update:** CCSO General Order 11.14.5.0 Inmate Grievance Procedure (effective July 14, 2011) Section C. addresses Staff Misconduct Grievances and establishes the process by which allegations are screened and referred to the OPR. The grievance tracking is reviewed by the management team as well as at part of the Sheriff's Accountability Meetings.

**Monitor's Assessmen**t: CCDOC has implemented a grievance process, with appropriate review and referral mechanisms. A review of the process outcomes during the next tour in December 2011.

**Monitor's Recommendations:** Monitor compliance, including referrals to the OPR.

### 39.    Access to Information

a.    CCDOC shall ensure that newly admitted inmates receive information, through an inmate handbook or orientation video, regarding the following areas:  facility rules and regulations; how to report misconduct; how to report sexual abuse or assault; the process for accessing medical and mental health care; emergency procedures; rules for sending and receiving mail; the visitation process; facility schedule; the disciplinary process; and how to seek redress of grievances.

**July 2011 Compliance Status:**   Partial compliance.

**Status Update:**  CCDOC reports that it continues to update/revise the inmate handbook, and is producing a video that will summarize the issues noted above.

**Monitor's Assessmen**t:  CCDOC is making progress with the revisions, which need to be developed in coordination with changing internal procedures that effect inmates (e.g. inmate discipline process, inmate grievance procedures).

**Monitor's Recommendations:**  Continue to work on inmate handbook and videos, updating as policies/procedures revised.

### 39.    Access to Information

b.    CCDOC shall ensure that materials on facility rules and services are available for non-literate and non-English speaking inmates.

**July 2011 Compliance Status:**   Partial compliance.

**Status Update:**  See 39. a. and March 2011 report.

**Monitor's Assessmen**t:  See 39.a.

**Monitor's Recommendations:**  Please see 39.a.

### 40.    CCDOC shall provide training and supervision to all correctional officers and supervisors sufficient to implement the provisions of this Agreed Order.

**July 2011 Compliance Status**:  Substantial Compliance.

**Status Update:**   CCDOC has taken the following actions to assure that the employees are aware of the Agreed Order:

- Placed in on the CCDOC intra-net, which is accessible for all employees;
- Included orientation in the training for newly promoted sergeants and newly designated commanders
- Prepared pre-service and pre-service one-hour presentations.

August 26, 2011                                                                                          55

This will be an on-going educational process, but CCDOC has provided the information, and will continue to do so.

**Monitor's Assessmen**t:   Strategies have been implemented and the educational process will continue at the Training Institute.  While knowledge about the provisions of the Agreed Order might be uneven through the agency, that, in my view is because employees haven't asked or looked for the Agreed Order, which is literally available by one "click" on all computers in the agency.

**Monitor's Recommendations:** Monitor training; adjust training as needed.

## 41.   Inter-Agency Agreement

a.   CCDOC shall enter into a written Inter-Agency Agreement with Cermak that delineates the mutual responsibilities of each party, relative to the provision of health care to inmates at the Facility.  The Inter-Agency Agreement shall be finalized within 60 days of the effective date of this Agreed Order.

b.   Cermak shall enter into a written Inter-Agency Agreement with CCDOC that delineates the mutual responsibilities of each party, relative to the provision of health care to inmates at the Facility.  The Inter-Agency Agreement shall be finalized within 60 days of the effective date of this Agreed Order.

**July 2011 Compliance Status**:   Substantial compliance.

**Status Update:**  The agreement was signed by the parties, effective January 2011.  Additionally, a directive entitled Interagency Health Inquiry (65.5.20.0) is under development operationalizing the agreement.  The parties hold regularly scheduled meeting, Interagency Coordinating Committee (IACC), along with providing minutes, to further cooperation.  DFM and Cermak participate in the IACC.

**Monitor's Assessmen**t:  The agreement is in place and the process of implementing using the IACC meetings continue.  Minutes of the meetings are maintained and available to all parties.

**Monitor's Recommendations:**  Continue to use the regularly scheduled IACC meetings.

**69.**   CCDOC shall ensure that security staff posts will be equipped, as appropriate, with readily available, safely secured, suicide cut-down tools. Coordinate with Dr. Metzner

**July 2011 Compliance Status**:   Substantial Compliance

**Status Update:**

The written directive implementing this paragraph was issued on February 18,

2011 (74.9.20.0 Security and Control Rescue Tool).   The tool was issued.   Since that time, there have been several instances in which the tool has been used as intended.

**Monitor's Assessment:**

The use of the tool is under review at each of the Sheriff's Accountability Meetings.

**Monitor's Recommendations:**

Continue to monitor the use, any additional training needs, and coordinate with Cermak's mental health services.