**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10 C 2946 |
| | ) | |
| COOK COUNTY, ILLINOIS; | ) | Judge Virginia M. Kendall |
| THOMAS DART, COOK COUNTY | ) | |
| SHERIFF; TONI PRECKWINKLE, | ) | |
| COOK COUNTY BOARD | ) | |
| PRESIDENT, COOK COUNTY | ) | |
| BOARD OF COMMISSIONERS, | ) | |
| | | |
| Defendants. | | |

**COOK COUNTY BOARD PRESIDENT TONI PRECKWINKLE'S
PETITION FOR APPOINTMENT OF SPECIAL STATE'S ATTORNEY
COUNSEL TO REPRESENT HER IN THIS MATTER**

Petitioner TONI PRECKWINKLE, in her official capacity as Cook County Board President, by and through undersigned counsel, petitions for the appointment of Special State's Attorneys *nunc pro tunc* to March 12, 2013, to represent her in this matter pursuant to 55 ILCS 5/3-9008. In support of this Petition, she states as follows:

1.  Toni Preckwinkle, in her official capacity as Cook County Board President ("President Preckwinkle"), is named as a defendant in this action. She is currently represented by the Cook County State's Attorney's Office.

2.  Sheriff Thomas Dart, another individual defendant named in this action, is represented by private counsel.

3. Under Illinois Counties Code, 55 ILCS 5/3-9008(a), this Court has the authority to appoint private counsel, as a "Special State's Attorney," to represent President Preckwinkle in this action. *Schmude v. Sheahan*, 420 F.3d 645, 650-51 (7th Cir. 2005) ("[F]ederal courts presiding over a case share authority with state courts to appoint Special State's Attorneys under 55 Ill. Comp. Stat.. 5/3-9008 . . . ."); *see also Suburban Cook Cnty. Reg'l Office of Educ. v. Cook Cnty. Bd.*, 282 Ill. App. 3d 560, 574 (1996) (finding that the trial judge had the discretion to appoint outside counsel).

4. For the reasons stated in this motion, President Preckwinkle seeks the exercise of this authority by the Court under Illinois Counties Code, 55 ILCS 5/3-9008(a), in order to appoint the undersigned to represent her, in lieu of continuing representation by the State's Attorney. As explained below, President Preckwinkle's interests are not and cannot be adequately represented while the Cook County State's Attorney serves as her counsel because her interests are adverse to those of the Cook County State's Attorney. President Preckwinkle intends to seek revised relief in this action that would involve taking discovery from the Cook County State's Attorney, and may also involve amending the Agreed Order in current case to seek action by the Cook County State's Attorney, or joining the Cook County State's Attorney as an additional party necessary for complete relief. Very clearly, President Preckwinkle cannot advocate effectively for such positions while the Cook County State's Attorney is her advocate: no party should be placed in the position of advocating for discovery or relief against its own counsel.

The conflict of interest under which the Cook County State's Attorney would then be laboring is manifest. *See generally, People v. Courtney*, 288 Ill.App.3d 1025, 1031–32 (1997) ("'[A]n attorney cannot represent conflicting interests or undertake to discharge inconsistent duties.'") (internal quotation and citation omitted). President Preckwinkle has informed the States Attorney Office of her intentions, and the State's Attorney's Office has nonetheless indicated that it will oppose the appointment of a Special State's Attorney for President Preckwinkle, further underscoring the need for independent counsel to represent President Preckwinkle's interests.

5.  It is precisely for circumstances like the present, where a conflict of interest exists between the State's Attorney and her client, that 55 ILCS 5/3-9008(a) exists. That section provides: "[w]henever the State's attorney . . . is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding, and the attorney so appointed shall have the same power and authority in relation to such cause or proceeding as the State's attorney would have had if present and attending to the same." 55 ILCS 5/3-9008(a)

6.  President Preckwinkle wishes to have the State's Attorney, as well as the current parties to this action, held responsible for their continuing role in the *worsening* overcrowding at the Jail. President Preckwinkle cannot effectively do that while she continues to be represented by the State's Attorney.

3

7. As this Court has recognized, "overcrowding is a primary cause of unconstitutional conditions at the jail." *See* Jan. 11, 2011 Opinion of Three-Judge District Court (Dkt. No. 62) ("We further, and crucially, find that overcrowding is a primary cause of unconstitutional conditions at the jail."). *See also* Corrections Monitor Susan W. McCampbell's Report #6, Apr. 11, 2013, at iv, (Dkt. No. 161) ("McCampbell Report #6") ("I have addressed jail crowding and I continue to identify it as the most serious threat to gaining and maintaining compliance with provisions I am charged with monitoring.").

8. President Preckwinkle is concerned that overcrowding is getting worse, not better. Recent reports make it all but certain that the population at the Jail will very imminently exceed full capacity. *See* McCampbell Report #6 at iv ("As of March 25, 2013, there were 9,899 detainees housed in CCDOC. This is perilously close to an all-time high during the life of this Agreed Order."); Hal Dardick, *Cook County Jail Population Nears Capacity Again*, Chicago Tribune, Mar. 2, 2013 (stating that as of March 2, 2013, the population was 500 detainees shy of the Jail's 10,136 maximum).[1]

9. President Preckwinkle believes that a primary cause of continued overcrowding is the failure of other parties to this litigation, and of other actors in

---

[1] The Jail is likely already significantly in excess of capacity as a practical matter. Although the "maximum capacity" is 10,136 inmates, because of restrictions for reasons of security and health issues, no areas of the Jail are appropriate for use by all inmates. See Corrections Monitor Susan McCampbell's Report #4, May 14, 2012, at iii, (Dkt. No. 105) ("The jail can most effectively operate at 85% of capacity, allowing for the appropriate housing of inmates by their classification, mental health status, and other special needs.").

4

the criminal justice system, including the Cook County State's Attorney, (who is not yet a party), to take steps that only they can take to alleviate overcrowding. As President Preckwinkle has publicly stated, "[i]t is within the power of Cook County criminal justice leaders — the chief judge, sheriff, *state's attorney* and public defender — to reduce the jail population and reduce the burden on taxpayers." Toni Preckwinkle, *We Lock Up Too Many People*, Chicago Tribune, Apr. 2, 2013 (emphasis added).

10. The clearest means to reduce overcrowding will be to implement the provisions of the Release Order entered by this Court, by causing the State's Attorney, the Sheriff, the Chief Judge, and others to cooperate in effectuating the appropriate release of more non-violent inmates on recognizance bonds and electronic monitoring, while minimizing the impact on public safety, as authorized by this Court. President Preckwinkle submits, however, that the Chief Judge, Sheriff, the State's Attorney, and the Public Defender have all failed to perform their functions in a manner calculated to effectuate the releases contemplated by this Court's Release Order and, furthermore, that left to their own devices, these officials will continue not to discharge their responsibilities, resulting in the continued, and worsening, overcrowding of the Jail.

11. President Preckwinkle's perspective on this issue has been welcomed and lauded by the Corrections Monitor. *See* Corrections Monitor Susan McCampbell's Report #4, May 14, 2012, at v, (Dkt. No. 105) ("Chairperson Toni Preckwinkle's focus on *systems* that contribute to jail crowding is a refreshing and

5

unique approach by an elected official. She is in a position to hold the leaders of the various agencies accountable for what they contribute and don't contribute to jail crowding, without compromising public safety.") (emphasis in original) (internal footnote omitted).

12. President Preckwinkle submits that, for political reasons, the State's Attorney, as well as the Chief Judge of the Circuit Court of Cook County and the Sheriff, have been unwilling to take actions that would reduce overcrowding of the Jail, despite the fact that this is the very goal of this Court's Release Order. It appears that they are avoiding responsibility for releasing inmates in order to evade blame if a released inmate subsequently engages in further alleged misconduct. Regardless of the reason, what is clear is that the actions necessary to reduce overcrowding at the Jail are not being taken. And as a result, overcrowding is worsening not improving, unconstitutional conditions continue unabated, and, in addition, the County budget and taxpayers suffer.

13. President Preckwinkle submits that the State's Attorney must be included among those with responsibility for the continuing overcrowding at the jail. The State's Attorney plays a crucial role. In her position as prosecutor for Cook County, the Cook County State's Attorney is integral to the process of determining the release of pre-trial detainees on bond. *See* 725 ILCS 5/110-5(a); 725 ILCS 5/110-5(b)(5).

14. In order to alleviate overcrowding and break the logjam that causes overcrowding, and given the State's Attorney's role in perpetuating the status quo,

President Preckwinkle intends to seek relief from this Court to ensure that the Cook County State's Attorney increases the frequency with which it agrees to or declines to oppose electronic monitoring and other forms of pre-trial release in appropriate cases. If overcrowding is to be brought under control, then the State's Attorney's role in the bond process and pretrial services must be examined and must change. However, it is clear that President Preckwinkle cannot advocate for these changes while she is represented by the Cook County State's Attorney. An inevitable conflict exists. Accordingly, this Court should exercise its discretion to appoint the undersigned as Special State's Attorneys to represent President Preckwinkle, as she seeks relief adverse to the State's Attorney. *Suburban Cook Cnty. Reg'l Office of Educ.*, 282 Ill. App. 3d 560, 574 (1996) (finding that the trial judge had the discretion to appoint outside counsel).

15. If the State's Attorney is named as a party to this litigation, the State's Attorney will be "interested" for purposes of 55 ILCS 5/3-9008(a), requiring the appointment of a Special State's Attorney. *Environmental Protection Agency v. Pollution Control Board*, 69 Ill.2d 394 (1977) (discussing a predecessor statute, Ill.Rev.Stat.1975, ch. 14, par. 6); *see also Bickerstaff*, 403 Ill.App.3d at 352; *Baxter v. Peterlin*, 156 Ill.App.3d 564 (3d Dist. 1987). For President Preckwinkle even to explore or propose joinder of the State's Attorney as a party, she must be represented by counsel other than the State's Attorney. And even if the States Attorney is not joined as a party, a conflict exists based on the types of relief that

7

President Preckwinkle will seek from the Court as a remedy for the issue of overcrowding in the Jail.

16. In addition, at the same time, President Preckwinkle also intends to advocate for fact finding and relief with regard to the Cook County Sheriff's continuing failures to properly exercise his powers to alleviate overcrowding at the jail.

17. The current Release Order permits the Sheriff of Cook County to release on electronic monitoring up to 1,500 pretrial detainees at any time. *See* Final Order of Three-Judge District Court (Dkt. No. 70.) Although the Sheriff claims that he is presently exercising his authority under the Release Order, his own recent pleading shows that the number of inmates actually being released on electronic monitoring is significantly short of the number permitted by the Order. In a March 8, 2013 filing with this Court, the Sheriff stated that in over 15 months of operating the Administrative Release Program (ARP) under the Release Order, "nearly 800" were released on electronic monitoring. Sheriff of Cook County's Position Paper Regarding Electronic Monitoring, Mar. 8, 2013 (Dkt. No. 159.) Even that number would be inadequate given the overall goal of the Release Order, but this is a *total* figure of the number of persons released over 15 months, not a snapshot of the number of inmates released on electronic monitoring at any given time, and thus shows how few inmates have actually been released on electronic monitoring. The number of individuals released at any one time during that same

8

15 month period has been well below the 1,500 individuals permitted under the current Release Order.

18. President Preckwinkle believes that there are likely significantly more individuals qualified for release under the Release Order, and that there has not been meaningful compliance with the Release Order and its underlying goal. Accordingly, President Preckwinkle may seek to have the Release Order modified to set a target number of pretrial detainees released at a time, or to revise the criteria for release on electronic monitoring currently in place, and, in that process, will seek relevant discovery from the State's Attorney's office regarding the State's Attorney's positions on eligibility for release on bond, electronic monitoring, or individual recognizance for certain groups of pre-trial detainees.

19. President Preckwinkle has also been reliably informed that attorneys from the State's Attorney's Office regularly appear in Bond Court, and consistently oppose release on I-bonds (release on individual recognizance) or release on electronic monitoring for individuals who likely qualify for release under the Release Order. This resistance to release on the part of the State's Attorney creates a conflict with President Preckwinkle's goal of increasing the numbers of qualified pre-trial detainees released from the Jail. The State's Attorney's performance of her role in the bond process creates a conflict between her position and President Preckwinkle's interests that cannot be reconciled or otherwise avoided. *See* 725 ILCS 5/110-5(a) (stating that State may provide Court with information in the determination the amount of bail and conditions of release); 725 ILCS 5/110-5(b)(5)

("Upon the filing of a written request demonstrating reasonable cause, the State's Attorney may request a source of bail hearing either before or after the posting of any funds . . . The State's Attorney has a right to attend the hearing, to call witnesses and to examine any witness in the proceeding.").

20. President Preckwinkle may seek to have this Court or the Three-Judge District Court set a cap on the average daily population of the Jail. In this regard as well, President Preckwinkle's interests would be adverse to the State's Attorney, as a cap would prevent or impede the detention of individuals for whom the State's Attorney would oppose release on bond or electronic monitoring. This inherent conflict further renders the State's Attorney's Office "interested" under 55 ILCS 5/3-9008(a).

21. President Preckwinkle is entitled to be represented by attorneys who can counsel her about, and seek on her behalf, relief and mechanisms to achieve compliance with the Agreed Order without either a conflict with existing duties or the appearance of such a conflict. *Cf.* 1977 Op.Atty.Gen. No. S-1254 (finding that a state's attorney can serve as legal consultant to a village, but only so long as no services were rendered to village that conflict in any way with duties as state's attorney).

22. The Special State's Attorneys who would take on representation of President Preckwinkle would not serve as a "special prosecutor." As such, the portion of 55 ILCS 5/3-9008(a) discussing the Court's role in contacting other public agencies does not apply. See 55 ILCS 5/3-9008(a) ("Prior to appointing a private

10

attorney under this subsection (a), the court shall contact public agencies . . . to determine a public prosecutor's availability to serve as a special prosecutor at no cost to the county.").

23. In accordance with 55 ILCS 5/3-9008(a) and the Cook County Board Resolution governing the appointment of Special State's Attorney counsel which is attached hereto as Exhibit A, the undersigned requests that this Court appoint Matthew J. Piers, Joshua Karsh, and Chirag G. Badlani of HUGHES SOCOL PIERS RESNICK & DYM, LTD., as Special State's Attorneys to represent the interests of President Preckwinkle in this action.

24. The Cook County State's Attorney's Office, as well as all current parties to this proceeding, has been served with a copy of this petition.

WHEREFORE, Petitioner Toni Preckwinkle, in her official capacity as Cook County Board President, respectfully requests the entry of an order appointing Matthew J. Piers, Joshua Karsh, and Chirag G. Badlani of HUGHES SOCOL PIERS RESNICK & DYM, LTD., as Special State's Attorneys *nunc pro tunc* to March 12, 2013, to represent the interests of President Preckwinkle in the present action.

By: /s/ Matthew J. Piers  
One of the Attorneys for Defendant Cook County Board President Toni Preckwinkle

Matthew J. Piers
Joshua Karsh
Chirag G. Badlani
HUGHES SOCOL PIERS RESNICK & DYM, Ltd.
70 W. Madison St., Suite 4000
Chicago, IL 60602
(312) 580-0100

Dated:      May 14, 2013