IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    PLAINTIFF, )<br>)<br>    v. )<br>)<br>COOK COUNTY, ILLINOIS; )<br>THOMAS DART, COOK COUNTY )<br>SHERIFF (in his official capacity); )<br>TODD H. STROGER, COOK COUNTY )<br>BOARD PRESIDENT (in his official )<br>capacity); )<br>COOK COUNTY BOARD OF )<br>COMMISSIONERS (in their official )<br>capacity); )<br>)<br>    DEFENDANTS. )<br>_____ ) | Civil No. 10-C0-2946<br><br>Judge Virginia M. Kendall |

## UNITED STATES' POSITION PAPER REGARDING MONITORING REPORTS AND STATUS OF COMPLIANCE

The Cook County Sheriff, through the Cook County Department of Corrections ("CCDOC"), and Cook County, through Cermak Health Services ("Cermak") and the Department of Facilities Management ("DFM"), have made significant progress toward achieving substantial compliance with the Agreed Order the Court entered on May 26, 2010 to resolve this matter. ECF No. 13. The latest round of reports from the Court-appointed monitors found the Sheriff and the County in substantial compliance with the majority of the Agreed Order's provisions, and in partial compliance with the remaining provisions. *See* April 2013 Corrections Monitoring Report of Susan McCampbell, ECF No. 161("McCampbell Rpt."); May 2013 Environmental and Life Safety Monitoring Report of Harry Grenawitzke, ECF No. 164 ("Grenawitzke Rpt."); June 2013 Correctional Mental Health Report of Dr. Jeffrey Metzner,

ECF No. 177 ("Metzner Rpt."); and July 2013 Correctional Medical Report Dr. Ronald Shansky, filing pending ("Shansky Rpt."). The monitors did not designate any provisions as "non-compliant." Despite this progress, the United States has continued concern about the issues noted below, which must be resolved before Defendants can achieve substantial and sustained compliance with all the provisions the Agreed Order to ensure constitutional conditions at the Cook County Jail ("Jail"). These ongoing issues are barriers to the ultimate dismissal of this case. Below the United States discusses the areas of overcrowding, communication and cooperation between the Defendants, transition to the new facility, and medical and mental health staffing, and provides a status update on the parties' efforts to identify a new medical monitor.

## I. Overcrowding

As a three-judge panel in this matter has already held, "overcrowding is a primary cause of unconstitutional conditions at the jail." *United States v. Cook County*, 761 F. Supp.2d 794, 797 (N.D. Ill. 2011). Each of the monitors confirmed that the increased Jail population is jeopardizing compliance with the Agreed Order:

- "[C]rowding in the facilities jeopardized long-term sustainability of the changes made. This is particularly critical, as the County's criminal justice system seems unwilling to accept their responsibilities to address crowding." McCampbell Rpt. at i.

- "It is very difficult to *overstate* how this upward population spiral jeopardizes the accomplishments of CCDOC to reach compliance with the consent agreement, threatens Constitutional conditions of confinement, strains resources, costs real

2

dollars, and potentially derails many of the initiatives to adopt currently accepted correctional practice in the organization." McCampbell Rpt. at iv.

- "[O]vercrowding on the third floor of the Cermak inpatient unit continues to result in patients with high medical acuity being assigned to plastic boats on the floor." Shansky Rpt. at 5.

- "Patient privacy . . . continues to be compromised due to significant overcrowding." Shansky Rpt. at 14.

- "CCDOC and Cermak should collaborate to effectively address overcrowding in the Cermak infirmary as soon as possible." Shansky Rpt. at 15.

- "The treatment program in Division II has become much more problematic as compared to the previous site assessment related, in large part, to decrease mental health staffing and the significantly increased numbers of ICU inmates." Metzner Rpt. at 10.

- "[T]he ever increasing detainee population in the facility will make it difficult to effectively maintain many of the provisions in the consent agreement." Grenawitzke Rpt. at 4.

The Agreed Order entered by this Court resolves the United States' claims of unconstitutional conditions of confinement by laying out comprehensive reforms necessary to remedy the constitutional deficiencies at the Cook County Jail. ECF No. 13. While the Sheriff and Cook County have been making steady progress toward substantial compliance with the Agreed Order, overcrowding at the facility is a serious threat to compliance.

In order to address the jail population in an effective and long-lasting manner, the Sheriff, the Cook County Board of Commissioners, the Circuit Court judges, the Office of the State's Attorney, and Office of the Public Defender must work collaboratively on comprehensive reforms to the justice system in Cook County. Ninety percent of the Cook County Jail's population is pretrial detainees. According to a July 2012 report by the Cook County Justice Advisory Committee ("JAC"), over 66% of Cook County Jail's pretrial detainees have a cash bond set at the initial bond hearing. JAC Report: Examination of Cook County Bond Court, at 3 (July 12, 2012). If, in accordance with Illinois law, a pretrial defendant is eligible for bail, the government's "only interest is in preventing flight, [and] bail must be set by a court at a sum designed to ensure that goal, and no more." *U.S. v. Salerno*, 481 U.S. 739, 754 (1987); *Heikkinen v. U.S.*, 208 F.2d 738, 740 (7th Cir. 1953) ("Bail set at an amount higher than that reasonably calculated to insure that an accused will appear to stand trial and submit to sentence if convicted is excessive, and falls within the proscription of the Eighth Amendment of the Constitution of the United States."). If pre-trial services were improved, the United States believes that more pretrial detainees could be released on their own-recognizance, on electronic monitoring, through payment of bail set at an appropriate amount, or in accordance with other detention alternatives, such as structured mental health programs. In addition, Cook County should continue assessing other aspects of the criminal justice system through increased review of charges and cases brought and analysis of the length of time to trial.

Overcrowding delays, and indeed may prevent, the Sheriff and Cook County from achieving compliance with the Agreed Order and ensuring constitutional conditions of confinement at the Cook County Jail. To the extent that the United States can help facilitate

reform in Cook County to address overcrowding, we welcome the opportunity to continue to be a partner in such endeavors.

## II.     Communication and Cooperation between the Defendants

The Cook County Jail facilities are operated by the Sheriff, through CCDOC, but health care and facilities maintenance are directed by the County through Cermak and DFM. As a result, the Sheriff and Cook County must work together to provide constitutional conditions of confinement to all inmates. The division of authority between CCDOC, Cermak, and DFM has occasionally resulted in strife between the different entities and a lack of collaboration with regard to plans and practice within the Jail facilities. This is not uncommon in correctional institutions with similar divisions of authority. However, in some instances, it appears as if the lack of cooperation may be impeding the parties from achieving substantial compliance. For example, it appears that, to some degree, lack of clear communication and cooperation between Cermak and CCDOC may have delayed the Defendants' ability to open and operate the new residential treatment unit in accordance with its intended use: housing and treatment for prisoners with medical and mental health needs. Shansky Rpt. at 5-6. United States urges improved communication and collaborative planning between the leadership of CCDOC, Cermak, and DFM in order to better facilitate compliance across all areas of the Agreed Order. The monitors have discussed this issue and are working with the parties to further improve communication.

## III.    Transition to the New Jail Facility

As mentioned above, Defendants opened a new and much anticipated building at the Jail complex in June of this year, which contains a new receiving and diagnostic center and a

5

residential treatment unit for prisoners with medical and mental health needs.  While the new building is a tremendous improvement over the old facilities, the monitors expressed concerns regarding the pace and extent of transition planning for the new building, including preparation of new policies and procedures and staffing plans.  *See, e.g.*, August 2012 Corrections Monitoring Report of Susan McCampbell, ECF No. 133, at v.  During on-site tours of the new building before it opened, the monitors also identified some potential design concerns and operational issues.  While Defendants have attempted to remedy any outstanding issues, and a team from the National Institute of Corrections is reviewing the new facility in September to provide further guidance, we urge Defendants to ensure that any prisoner safety risks are minimized while the new building transitions to full operation.

**IV.**     **Medical and Mental Health Staffing**

As the Court is aware, delays in filling vacancies in medical and mental health staffing at Cermak have impeded the County's compliance with the Agreed Order.  This year, the County has made great strides in streamlining the hiring process and increasing the Cermak staff.  Metzner Rpt. at 17; Shansky Rpt. at 18.  Due to population increases, Cermak must include additional staff in the next budget to properly operate the new Residential Treatment Unit and house inmates with medical and mental health needs in the new building.  Shansky Rpt. at 5-6.  In addition, Cermak must further augment the current mental health staff to achieve compliance with the Agreed Order.  Metzner Rpt. at 18.  The County also must fill key leadership roles for medical and mental health care.  Shansky Rpt. at 18.  Finally, we understand that the County made a special effort to increase Cermak hiring due to the Agreed order.  We urge the County to

6

ensure that practical measures are in place to facilitate reasonable recruiting and hiring practices going forward.

## V. Resignation of the Medical Monitor

After providing excellent service for over three years, on July 23, 2013, Dr. Ronald Shansky resigned as medical monitor. The parties are currently interviewing candidates to replace Dr. Shansky and hope to provide the Court with a proposed monitor as soon as possible. However, we note that the process of selecting and integrating a new monitor may delay the next compliance assessment of the medical provisions of the Agreed Order.

                                                Respectfully submitted,

FOR THE UNITED STATES:

| | |
|---|---|
| GARY S. SHAPIRO<br>Acting United States Attorney<br>Northern District of Illinois | JOCELYN SAMUELS<br>Acting Assistant Attorney General<br>Civil Rights Division |
| PATRICK JOHNSON<br>Assistant United States Attorney<br>Northern District of Illinois<br>219 South Dearborn Street<br>Chicago, Illinois  60604<br>(312) 353-5327<br>patrick.johnson2@usdoj.gov | ROY L. AUSTIN, JR<br>Deputy Assistant Attorney General<br>Civil Rights Division<br><br>JONATHAN SMITH<br>Chief<br>Special Litigation Section<br><br>SHELLEY R. JACKSON<br>Deputy Chief<br>Special Litigation Section<br><br> *s/ Kerry Krentler Dean*<br>KERRY KRENTLER DEAN<br>Senior Trial Attorney<br>U.S. Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>950 Pennsylvania Avenue, NW<br>PHB 5026<br>Washington, D.C.  20530<br>(202) 514-6255<br>kerry.k.dean@usdoj.gov |

**CERTIFICATE OF SERVICE**

      I certify that on August 30, 2013, I served a true and correct copy of the <u>United States' Position Paper Regarding Monitoring Reports and Status of Compliance</u> with Clerk of the Court using the CM/ECF system, which will provide notification to all counsel of record.

                                                                            Respectfully submitted,

                                                                           *s/ Kerry Krentler Dean*
                                                                     KERRY KRENTLER DEAN
Senior Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
PHB 5026
Washington, D.C. 20530
(202) 514-6255
kerry.k.dean@usdoj.gov
FOR THE UNITED STATES