UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10 CV 2946 |
| | ) | |
| COOK COUNTY, ILLINOIS; | ) | Virginia M. Kendall, Judge |
| THOMAS DART, COOK COUNTY | ) | |
| SHERIFF; TONI PRECKWINKLE, | ) | |
| COOK COUNTY BOARD | ) | |
| PRESIDENT, COOK COUNTY | ) | |
| BOARD OF COMMISSIONERS, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**COOK COUNTY SHERIFF THOMAS DART'S**
**POSITION PAPER REGARDING MONITORS' REPORTS**

NOW COMES Defendant, THOMAS DART, in his official capacity as Cook County Sheriff, by and though his attorneys, Peterson, Johnson & Murray Chicago LLC, appointed as Special Assistant State's Attorneys, and for his Response to the Monitors' Report, states as follows:

**Introduction**

Since the parties have entered into the Agreed Order, the defendants have made great strides to comply with the terms of the same. Taking into account the 138 provisions that are applicable to the Sheriff's Office, 96 of those provisions are in substantial compliance and 42 of the provisions are in partial compliance. Notably, there are no provisions of the agreed order that are deemed non-compliance. (Ex. 1, Compliance Statistics). However, there are some issues

1

with the provisions that in partial compliance that are out of the control and purview of the Sheriff, which are addressed below.

  **I.  Report of Susan W. McCampbell.**

There are a total of 77 provisions addressed in Monitor Mc Campbell's report, 60 of which are in substantial compliance and 17 that are in partial compliance. 21 of the 60 provisions that have been in substantial compliance have been in that category for at least 18 months. The most notably aspect of Monitor Mc Campbell's report is that four sub-parts of Provision 38 (Inmate Grievance Process) has been placed back into the partial compliance category. The Sheriff has overhauled the grievance process and the monitor has acknowledge that the work that has been done to "the grievance process will result in an effective outcomes." (Doc. No. 161, p. 44). Although the initial implementation of the new grievance procedure was not as smooth as the Sheriff's Office had hoped; however, the Sheriff has made significant strides in improving the grievance procedure. The Sheriff understands the commitment that is needed to change the grievance procedure and his staff will continue to refine the new process as needed to comply with the terms of the Agreed Order.

  **II.  Report of Harry E. Grenawitzke.**

There are a total of 39 provisions addressed in Monitor Grenawitzke's report, all of which are in substantial compliance except for 6 provisions. The Sheriff understands the challenges facing the CCDOC and is implementing polices to correct the deficiencies. We are proud to report that the Jail has become a much cleaner and sanitary facility in the last 3 years. In fact, there is only one "sanitation" provision that is in partial compliance, and the Sheriff and Cermak are working diligently to address it. One ongoing difficulty though is changing the detainees' perception of the laundry system. Detainees are reluctant to launder there personal

garments using the CCDOC laundry system and still choose to wash the same in their cells. In response the Sheriff has removed laundry detergent from commissary and continues to inform detainees about the risks associated with washing clothes in their cells. Monitor Grenawitzke has been helpful in providing direction in the partially compliant areas and the Sheriff is confident that compliance is attainable in the very near future.

### III. Report of Jeffrey L. Metzner.

There are a total of 13 provisions addressed in Monitor Dr. Metzner's report, five of which are in substantial compliance and 8 provisions remain in partial compliance. Dr. Metzner identified three primary areas that are impeding the ability of the Defendants to be substantially compliant, including 1) staffing vacancies and allocation issues, 2) physical plant limitations, and 3) institutional cultural issues. (Doc. No. 177, p. 18 of 21). He also identified other problems such as the vacancy of the chief psychiatrist, decreased numbers of mental health staff, and planning issues at the new RTU and RCDC. *Id*. at 17.

Dr. Metzner also reported that some detainees complained about not receiving personal hygiene items in a timely manner and being treated rudely by staff. Regarding the former claim, the Sheriff has made significant improvements in ensuring the chain of distribution for personal hygiene supplies is more efficient and monitored. This will continue to be a priority of the Sheriff's Office. Regarding the claim about rude staff, the Sheriff demands that the staff, as a whole, treat detainees, whether they have mental health issues or not, respectfully and professionally. Although there were cites in the report to a few unspecified incidents where this did occur, the Sheriff believes strongly that these were exceptions to the rule and do not reflect the conduct and attitudes of a large majority of staff. . In fact, to ensure proper treatment of inmates with mental health problems, the Sheriff requires that every new officer receives **80**

**hours** of advanced mental health training before graduating from the Training Academy. In addition, the Sheriff has required the last few recruit classes to receive crisis intervention training (CIT), which helps officers react to and appropriately handle volatile situations involving inmates experiencing mental health problems. There is also a plan to offer these trainings for more senior officers who have not yet received advanced mental health and/or or CIT training.

Finally, the Sheriff would like to emphasize his commitment to improving the acute mental health tiers on the 2nd Floor of Cermak Health Services. This floor houses the most acutely mentally ill inmates/patients on the entire compound. It is an incredibly difficult environment to provide intensive mental health treatment and programming while still balancing the legitimate security concerns these inmates pose to staff and other inmates. Dr. Metzner has recently provided some valuable direction on how to improve these units, even making a special 2 day visit to observe the units over multiple shifts. The Sheriff has also enlisted the help of the former director of the Mental Health Unit at Cermak, Dr. Carl Alaimo, to assist Cermak and his staff to address the problems facing the 2nd floor. In addition to Dr. Alaimo's contributions, the CCDOC is confident that Cermak's ability to hire more mental staff, particularly psychologists and mental health specialists, and the CCDOC's improved practices and policies for the will bring noticeable improvement by the time Dr. Metzner visits in November.

**IV.     Report of Dr. Ronald Shansky.**

Although Dr. Shansky has resigned and the parties are in the process of moving forward with the selection of a new medical monitor, there were several aspects of the last report that the Sheriff must address. Currently there are 11 provisions in the substantial compliance category and 11 provisions in the partial compliance category. Many of the provisions apply to more than

one defendant; however, a distinction should be drawn between the parties and their respective levels of compliance.

Dr. Shansky has determined that provision 43 (Medical Facilities) is in partial compliance. Subpart A of that provision states,

> a. CCDOC will work with Cermak to provide sufficient clinical space, as identified by Cermak staff, to provide inmates with adequate health care to meet the treatment needs of detainees, including:

It is the Sheriff's position that he has fulfilled its obligations under this provision and his efforts should be deemed in substantial compliance. The report does not identify any such deficiency on the part of the Sheriff in this regard. Furthermore, subpart f of the same provision provides,

> f. CCDOC shall allow operationally for inmates' reasonable privacy in medical and mental health care, and shall respect the confidentiality of inmates' medical status, subject to legitimate security concerns and emergency situations. Reasonable privacy typically includes sight and hearing privacy from other inmates and hearing privacy from staff that are not providing health care.

The report is devoid of any reference to a deficiency on the part of the Sheriff's Office or its correctional staff, yet this portion of the provision is placed in the partial compliance category. It is the Sheriff's position that policies and practices have accomplished substantial compliance with this provision and yet there is no basis for the characterization. Dr. Shansky has explicitly stated the male intake "provides sufficient space and privacy." The female intake was also redesigned to create additional privacy. These actions are evidence of substantial compliance. More direction is needed then about what exactly the Sheriff's obligations are relative to this provision if it is to be deemed only partial compliance.

In addition, the report acknowledges that the Sheriff's Office has met its obligations under provision 44 (Staffing, Training, Supervision, and Leadership). This provision is only in

5

partial compliance; however, Dr. Shansky found that the "officers continue to receive the required training at a rate of greater than 90%. In addition, the snapshot we took of the training received by officers working on the mental health unit demonstrated that all of them had received the required advanced training." The Sheriff has been in substantial compliance for over two years and thus, should be separated from Cermak Health Services pursuant to Section VII(c) of the Agreed Order.

Similarly, the Sheriff should also be separated from Cermak Health Services with respect to Provision 53 (Treatment and Management of Communicable Disease). The only recommendation is that the CCDOC should continue its practice of issuing soap. There is no deficiency of the Sheriff's Office highlighted and the monitor's only recommendation is that the CCDOC should continue what it is already doing. This is consistent with a finding of substantial compliance on the part of the Sheriff. Next, Provision 54 has been deemed to be in partial compliance; however, the recommendations to the Sheriff are processes that have already been implemented. For example, the monitor notes that "CCDOC and Cermak should orient inmates regarding the access to care policy and procedure upon arrival." This recommendation ignores that this process is already performed through the inmate handbook and the orientation video, which is played on the living units every day. Indeed, Cermak assisted in the development of the section of the handbook that deals with this.

Moreover, Provision 55 (Follow-up Care) recommends that "[w]ith regard to CCDOC's responsibility for medication administration, recommendations are:

a. Issue a post order for correctional officers to coincide with the Interagency Directive.
b. Provide audit evidence that correctional officers have been trained to support and execute their responsibilities as listed in the Interagency Directive and post order."

This recommendation ignores the fact that the Sheriff has prepared a mouth check video for its officers, which is shown during roll call. Moreover, there is an interagency directive on

point, which is the equivalent of a post order or general order. This recommendation seeks nothing more than a redundant policy that is of no meaningful consequence. As such, the current training practices satisfy what is being asked of the CCDOC.

In conclusion, the Sheriff remains committed to becoming substantially compliant with the terms of the Agreed Order. Although there were some setbacks in certain areas of the Agreed Order, overall, the Sheriff has continued to make progress towards substantial compliance with all of the terms of the Agreed Order.

                                              Thomas Dart, Cook County Sheriff

                                              By: s/Paul O'Grady
                                              One of its Attorneys

Paul O'Grady
Dominick L. Lanzito
Peterson, Johnson, & Murray – Chicago LLC
233 South Wacker Drive, Suite 8400
Chicago, Illinois 60606
(312)782-7150
pogrady@pjmlaw.com