# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

COOK COUNTY, ILLINOIS;
THOMAS DART, COOK COUNTY
SHERIFF (in his official capacity);
TONI PRECKWINKLE, COOK COUNTY
BOARD PRESIDENT (in her official capacity);
COOK COUNTY BOARD OF
COMMISSIONERS (in their official capacity),

        Defendants,

No. 10 C 2946

Judge Virginia Kendall

---

## Corrections Monitor Susan W. McCampbell's Report No. 8
## April 21, 2014

---

Susan W. McCampbell
McCampbell and Associates, Inc.
1880 Crestview Way
Naples, Florida 34119-3302
Email: susanmccampbell@mccampbellassociates.com

# Executive Summary
## Corrections Monitor Susan W. McCampbell's Report #8
## April 22, 2014

### Summary Overview

There has been steady progress as the Cook County Sheriff's Office (CCSO), Cook County Department of Corrections (CCDOC) and Cook County government work toward achieving compliance with the correctional practices' paragraphs of the Agreement. As with any organization in transition, facing the challenges of jail operations, and fiscal concerns, there are additional factors that influence compliance discussed below.

### On Site Tour – March 11 – 14, 2014

I toured CDOC March 11 – 14, 2014. During that time I interviewed staff and inmates, reviewed document, and consulted with CCDOC regarding government compliance issues. This was planned as a four-day tour acknowledging the many paragraphs of the Consent Agreement that had achieved on-going compliance. This schedule presented a challenge as half a day was devoted to briefing Judge Kendall, an unscheduled but very welcome addition to the agenda.

### Progress

Progress has been achieved in the following areas:

- Pending implementation of a revised inmate classification system, and a completed validation study, dated March 17, 2014;
- On-doing scrutiny of uses of force, review of reports, updating of relevant policies and procedures – including designation of a single source of data about uses of force, remedial training, and data analysis;
- By March 31, 2014 conclusion of the Office of Professional Responsibility's investigation into all use of force allegations through 2012, and allocation of resources to close investigations into allegations from 2013 cases as quickly as feasible;
- Planning for implementation of the pilot inmate grievance process throughout all facilities, including weekly meetings between Correctional Rehabilitation Workers (CRWs) and Cermak to identify and resolve inmate grievances;
- Maintaining the pace of hiring given "competition" for qualified individuals as the economy allows local and state governments to resume hiring;
- Naming a new Executive Director, Cara Smith, replacing retired John Murphy;
- Pending implementation of an updated jail management information system providing an increased capacity for accountability and using data to manage the organization;

- On-going maintenance of compliance with 50 paragraphs of the Consent Agreement; and
- Improving communications and problem solving relationship with Cermak.

## Remaining Challenges

Continuing challenges include, but are not limited to:

- Systemic, sustainable strategies to solve jail crowding; while although jail population is down, the endemic issues remain about a collaborative justice system;[1]
- Completing the update of use of force policies, and re-organization of responses to allegations and reporting, including data collection;
- Updating of the investigative hierarchy for use of force incidents;
- Implementing the new inmate classification system and attention to the impact on the housing plan;
- Implementing the updated and system-wide inmate grievance process;
- Providing oversight and training to officers working in the direct supervision units in Division 8 relating to security and inmate safety;
- OPR's completing of the review of use of force allegations for 2013;
- Continuing to improve collaboration between mental health and security regarding the safety of mental health clients, including recommendations for staffing; and
- Completing the staffing plan for CCDOC and examining the span-of-control of supervisors and managers, now scheduled for August 2014, as well as collaboration with Cermak.[2]

## Progress

This chart summarizes the progress made by CCDOC since the first report of September 20, 2010.

| Report # | Sustained Compliance | Substantial Compliance | Partial Compliance | Non-Compliance | Not Applicable | Total |
|---|---|---|---|---|---|---|
| 1 | | 3 | 62 | 12 | 8 | 77 |
| 2 | | 1 | 63 | 5 | 8 | 77 |
| 3 | | 22 | 55 | 0 | 4 | 77 |
| 4 | | 39 | 34 | 0 | 4 | 77 |
| 5 | | 53 | 20 | 0 | 4 | 77 |
| 6 | 21 | 39 | 17 | 0 | 0 | 77 |

[1] A recently completed review by the Illinois Supreme Court of the pre-trial program with significant recommendations for revisions should have an impact on lowering jail population.

[2] For clarification I note that I do not believe that CCDOC is "understaffed" but rather that the work to complete the staffing analysis and accompanying operations plans is not complete. Staffing is also a matter of effective deployment of resources at the times and places needed to insure inmate and staff safety.

| 7 | 35 | 31 | 11 | 0 | 0 | 77 |
|---|----|----|----|---|---|----|
| 8 | 50 | 17 | 10 | 0 | 0 | 77 |

## Compliance Report

The Agreed Order regarding corrections operations (A. Protection from Harm) includes 77 provisions. Here is a summary of CCDOC's compliance as of the tour in March 2014.

## Maintenance of Substantial Compliance (18 months) (N= 50)

The CCDOC has maintained substantial compliance with the following provisions of the Agreed Order for at least 18 months, and as such, are no longer are a primary focus of my monitoring, although these sections remain an active part of the Order (see Section VII.C.) and my reviews. These paragraphs are highlighted in light green in the full report. Paragraphs maintaining substantial compliance *added* since the Report # 7 to the Court are underlined.

- 31.a.
- 31.b.
- 31.c.
- 31.d.
- 31.e.
- 31.f.
- 31.g.
- 31.h.
- 31.i.
- 31.j.
- 31.k.
- 31.l.
- 31.m.

- 31.n.
- 31.o.
- 31.p.
- 31.r.
- 31.s.
- 31.t.
- 32.b.
- 32.g.
- 32.h.
- 32.j.
- 32.k.
- 32.l.
- 32.m.

- 33.a.
- 33.c.i.ii.
- 33.i.
- 33.j.
- 34.b.
- 34.d.
- 34.g.
- 34.h.
- 35.c.
- 35.d.
- 35.e.
- 35.f.
- 35.g.

- 36.b.
- 36.c.
- 36.d.
- 36.e.
- 36.f.
- 37.c.
- 38.c.
- 38.d.
- 40.
- 41.

## Substantial Compliance (N=17)

Paragraphs for which CCDOC has achieved substantial compliance (excluding the paragraphs referenced above) for less than 8 months, are as follows. (Paragraphs gaining substantial compliance since Report # 7 report to the Court are <u>underlined</u>):

- 31.q.
- 32.a.
- 32.c.
- 32.d.
- 32.e.

- 32.f.
- 32.i.
- 34.a.
- 34.c.
- 34.e.

- 34.f.
- 35.a.
- 36.a.
- 37.d.
- <u>37.e</u>

- 39.a.
- 39.b.

### Partial Compliance (N=10)

Seventeen paragraphs are in partial compliance.

- 33.b.
- 33.d.
- 33.e.

- 33.f.
- 33.g.
- 33.h

- 37.a.
- 37.b.
- 38.a.

- 38.b.

### Non-Compliance (N=0)

There are no paragraphs in non-compliance at this time.

### Update: Issues and Concerns About Achieving and Maintaining Substantial Compliance

**Update: Information System** – A revised information system is scheduled for implementation in July 2014. I previewed the system, and was impressed by the provision of real time management information data.

**Investigations into Allegations of Use of Force/Excessive Force** – CCDOC acted on my recommendation in Report # 7 and added resources to clear up the backlog of cases through 2012. The work on 2012 was due to be completed by 3/31/14, and the lessons learned and efficiencies identified in addressing the backlog are then going to hasten the review and action regarding cases from 2013. CCDOC is evaluating, based on the experience with the 2011 use of force directive, how to better organize, respond, investigate, record-keep, and analyze these events. These revised procedures will be updated before the next tour (scheduled for late September 2014).

**Video Surveillance** – The video surveillance project continues, facing the same contractual issues that surfaced in 2010. The County is the contractor, not CCDOC. The work is continuing, and, as noted in the last report, maintained in substantial compliance; but will be reviewed again in September if there is not progress on contract awards and installation.

**Classification Implementation Progress** - CCDOC should proceed with full implementation. The staffing and leadership are in place, briefings have been conducted with the managers in the organization, as well as training for newly hired employees, and inclusion of information as part of in-service training. Dr. Patricia Hardyman completed the initial validation study on March 17, 2014. The responsibility for the data analysis and "tweaks" to the classification system now rest with CCDOC in the short and long term. The implementation may also impact the housing designations compound-wide as well as critically inform what types of beds need to be constructed in the future.

**Facility Infrastructure** – As noted in my last two reports, the County completed a review of the jail buildings on the site, but the reports have not been publically available, and there were no funds in the President's capital budget for replacements of old buildings on the site.

During this tour, I received a brief update from the County regarding the draft reports of the facility assessments, and how this information was going to be used to plan for changes in jail facilities. I also was provided with the draft reports. The next step in the process, is identifying what is needed (see above, Classification), as well as the timetable for any new construction.

The County and the Sheriff are urged to develop a timetable for the replacement of aging, and increasing costly-to-maintain structures as soon as possible to ensure sustainable compliance with many parts of the Consent Agreement. While no community wishes to divert scarce funds to jail construction, a robust cost-benefit analysis of alternatives may well demonstrate the longer-term cost avoidance/savings through construction of more staff efficient and inmate-safer facilities.

**Challenges About Inmate Safety** – In March the Northwestern University Law School's Bluhm Legal Clinic filed a complaint in Federal Court alleging a wide range of abuses against inmates housed in CCDOC's Divisions 9 and 10. The allegations focused on excessive uses of force, failure to report and investigate allegations of abuse, and what the complainants' characterized as a "culture of brutality and lawlessness". While the complaint and subsequent legal responses continue from all parties, as the monitor who has been evaluating many of the areas of alleged deficiencies in the complaint, I take seriously my role in examining the facts that may be brought forth in the coming months as they relate to compliance with the various relevant paragraphs of the Consent Agreement.

## Conclusions

There are dynamic challenges in jail operations and management. As with all areas of public sector management, on-going accountability of the organizational components is essential, and failing to do so in the jail can result in serious consequences. CCDOC and Cook County have continued to devote resources and expertise to "fixing" the long-term issues of infrastructure (both human, information and facility) and to create sustainable operations. There has been a great deal of success, and some tough challenges – such as completion of the staffing study, implementation of classification, and full roll-out of the inmate grievance process.

## Administrative Release Program (ARP)

This Executive Summary in previous reports has provided information on the Administrative Release Program designed to limit jail crowding. This program is undergoing review, with potential changes to its organization under consideration by the Court.

The following data was provided by the Cook County Sheriff's Office regarding their review of candidates for release through this program.

|                               | 2011 | 2012  | 2013  |
|-------------------------------|------|-------|-------|
| Number of candidates reviewed | 2375 | 10061 | 21875 |
| Referred to magistrate        | 237  | 859   | 3967  |
| Ordered to the Program        | 22   | 246   | 945   |

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| A. | **Protection from Harm** | | | |
| 31. | **Use of Force by Staff** | | | |
| A. 31. a. (18) | CCDOC shall maintain comprehensive and contemporary policies and procedures, in accordance with generally accepted correctional standards, surrounding the use of force and with particular emphasis regarding permissible and impermissible uses of force. | x12/11 x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 | |
| A.31. b. (18) | CCDOC shall maintain use of force policies and pre-service and in-service training programs for correctional officers and supervisors that address the following impermissible uses of force: <br> 1. use of force as a response to verbal insults or inmate threats where there is no immediate threat to the safety of the institution, inmates, or staff; <br> 2. use of force as a response to inmates' failure to follow instructions where there is no immediate threat to the safety of the institution, inmates, or staff, unless CCDOC has attempted a hierarchy of nonphysical alternatives that are documented; <br> 3. use of force as punishment or retaliation; <br> 4. use of force involving striking, hitting, or punching a restrained and non-combative inmate; <br> 5. use of force against an inmate after the inmate has ceased to offer resistance and is under control; <br> 6. use of choke holds on an inmate, unless lethal force is justified; and <br> 7. use of inappropriate or excessive force. | x12/11 x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 | |
| A.31.c. (18) | CCDOC shall adopt a policy to ensure that staff adequately and promptly report all uses of force in accordance with generally accepted correctional standards | x12/11 x7/12 | x 9/10 x 3/11 | |

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| A.31.d. (19) | CCDOC shall require that use of force reports:<br>1. be written in specific terms in order to capture the details of the incident<br>2. contain an accurate account of the events leading to the use of force incident;<br>3. include a description of the instrument(s) of restraint or control, if any, and the manner in which it was used;<br>4. note whether an inmate disciplinary report was completed in connection with the incident that prompted the use of force;<br>5. describe the nature and extent of apparent and reported injuries sustained both by the inmate and staff member;<br>6. contain the date and time medical attention was actually provided;<br>7. describe, in detailed, factual terms, the type and amount of force used as well as the precise actions taken in a particular incident; and<br>8. note whether a use of force was videotaped. If the use of force is not videotaped, the reporting correctional officer and supervisor will provide an explanation as to why it was not videotaped. | x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.e. (19) | CCDOC shall continue to require prompt review by the shift commander of all use of force reports. The shift commander's review of use of force reports shall include review for completeness and procedural errors, as well as review of the substantive content. If the use of force report does not comply with provision 31.d. of this Agreed Order, the shift commander shall return it to the reporting officer for revision and resubmission until it is compliant. If the shift commander believes a use of force may have been inappropriate or excessive, he or she shall immediately refer the incident for investigation. | x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11 | |
| A.31.f. (20) | CCDOC shall ensure that senior management review of uses of force includes:<br>1. a timely review of medical documentation of inmate injuries, if any is submitted, as provided by Qualified Medical Staff, including documentation surrounding the initial medical encounter, an anatomical drawing that depicts the areas of sustained injury, and information regarding any further medical care;<br>2. the inmate disciplinary report, if any, associated with the use of force; and<br>3. the incident report, if any, associated with the use of force. | x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11 | |
| A. 31.g. (20) | CCDOC (and Cermak) shall establish criteria that trigger referral for inappropriate or excessive use of force investigations, including but not limited to, documented or known injuries that are extensive or serious; injuries involving fractures or head trauma; injuries of a suspicious nature | x12/11<br>x7/12<br>x2/13 | x 3/11<br>x 8/11 | x 9/10 |

April 21, 2014

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| | (including black eyes, injuries to the mouth, injuries to the genitals, etc.); and injuries that require treatment at outside hospitals. | x9/13<br>x3/14 | | |
| A. 31. h. (21) | When CCDOC review of use of force reports, and supporting records if applicable, reveals that reports of a use of force are materially inconsistent, conflicting, or suspicious, CCDOC shall refer that use of force incident for internal investigation. | x12/11<br>x7/12<br>x/2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.i. (21) | CCDOC shall develop and implement a system to track all incidents of use of force that, at a minimum, includes the following information:<br>1. a tracking number;<br>2. the inmate(s) name;<br>3. housing assignment;<br>4. date;<br>5. type of incident;<br>6. injuries (if applicable);<br>7. medical care provided (if applicable);<br>8. staff involved;<br>9. reviewing supervisor;<br>10. external reviews and results (if applicable);<br>11. remedy taken (if appropriate); and<br>12. administrative sign-off. | x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11 | |
| A.31.j. (22) | CCDOC shall ensure that, promptly following a use of force incident, video or photographs are taken of any and all reported or apparent injuries sustained by inmates and staff. The video or photographs will be maintained and will be included in the investigation package, if applicable. See 31. F. | x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11 | |
| A.31.k. (22) | CCDOC shall establish an "early warning system" that will document and track correctional officers who are involved in use of force incidents and any complaints related to the inappropriate or excessive use of force, in order to alert CCDOC administration to an potential need for retraining, discipline, problematic policies, or supervision lapses. Appropriate CCDOC leadership, supervision, and investigative staff shall have access to the information and monitor the occurrences. CCDOC senior management shall use information from the early warning system to improve quality management practices, identify patterns and trends, and take | x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11 | |

April 21, 2014

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| | necessary corrective action both on an individual and systemic level. | | | |
| A.31.l. (22) | CCDOC shall ensure that a supervisor is present during all pre-planned uses of force, such as cell extractions. | x12/11 x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 | |
| A.31.m. (23) | Where there is evidence of staff misconduct related to inappropriate or unnecessary use of force against inmates, CCDOC shall initiate personnel actions and seek disciplinary action appropriately for any correctional officer found to have:<br>1. engaged in inappropriate or excessive use of force;<br>2. failed to report or report accurately the use of force;<br>3. retaliated against an inmate or other staff member for reporting an inappropriate or excessive use of force; or<br>4. interfered or failed to cooperate with an internal investigation regarding use of force in a manner inconsistent with the staff member's statutory or contractual rights. | x12/11 x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 | |
| A.31.n. (23) | Where there is evidence of staff misconduct related to inappropriate or unnecessary use of force against inmates, CCDOC shall consider, develop, and initiate systemic remedies as appropriate. | x 8/11 x12/11 x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 | |
| A.31.o (24) | CCDOC shall maintain accountability policies and procedures for the effective and accurate maintenance, inventory, and assignment of chemical and other security equipment, in accordance with generally accepted correctional standards. | x12/11 x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 | |
| A.31.p. (24) | CCDOC shall continue to conduct use of force training in accordance with generally accepted correctional standards, including:<br>1. CCDOC shall maintain an effective and comprehensive use of force training program.<br>2. CCDOC shall continue to ensure that correctional officers receive adequate training in CCDOC's use of force policies and procedures, including de-escalation and defensive tactics relating to use of force.<br>3. CCDOC shall continue to ensure that correctional officers receive pre-service and in-service | x12/11 x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 | |

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| | training on reporting use of force and completing use of force reports. | | | |
| A.31.q. (25) | CCDOC shall provide a process for inmates to report allegations of the inappropriate or excessive use of force orally to any CCDOC staff member; said staff member shall give the inmate the opportunity to reduce his or her report to writing through a grievance or complaint form without discouragement. | x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x7/12<br>x2/13 | |
| A.31.r. (25) | Following a use of force, when CCDOC staff transport an inmate to receive medical care by Cermak, as necessary, the CCDOC staff member shall inform the Cermak staff member that the inmate was involved in a use of force. | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11 | |
| A.31.s. (25) | Cermak shall ensure that, when providing medical treatment or assessment to an inmate following a use of force, Qualified Medical Staff document the inmate's injuries, if any, and any medical care provided. Cermak shall provide CCDOC senior management [OPR] with a brief summary documenting the initial medical encounter following a use of force, including an anatomical drawing that depicts the areas of sustained injury, if any, and information regarding any further medical care. See 31.f. | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11 | |
| A.31.t. (26) | Cermak shall ensure that Qualified Medical Staff question, outside the hearing of other inmates or correctional officers if appropriate, each inmate who reports for medical care with an injury, regarding the cause of the injury. If, in the course of the inmate's medical encounter, a health care provider suspects staff-on-inmate or inmate-on-inmate abuse, that health care provider shall immediately:<br>1. report the suspected abuse to the Executive Director of the Office of Professional Review or other appropriate CCDOC administrator; and<br>2. adequately document the matter in the inmate's medical record. | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 3/11 | x 9/10 |
| 32. | **Safety and Supervision** | | | |
| 32. a. (26) | CCDOC shall maintain security and control-related policies, procedures, and practices that will result in a reasonably safe and secure environment for all inmates and staff, in accordance with generally accepted correctional standards.<br>Coordinate with Grenawitzke | x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11 | |

April 21, 2014

5

| Section (Page) | Language | Substantial compliance | Partial compliance | Non compliance |
|---|---|---|---|---|
| 32.b. (27) | CCDOC shall maintain policies, procedures, and practices to ensure the adequate supervision of inmate work areas and trustees, in accordance with generally accepted correctional standards. Coordinate with Grenawitzke | x7/12 x2/13 x9/13 x3/14 | x7/12 x8/11 x12/11 | x9/10 x3/11 |
| 32.c. (27) | CCDOC shall ensure that security staff conduct appropriate rounds with sufficient frequency to provide inmates with reasonable safety. Rounds shall be conducted at least once every half hour, at irregular intervals, inside each housing unit. In the alternative, CCDOC may provide direct supervision of inmates by posting a correctional officer inside the day room area of a housing unit to conduct constant surveillance. More frequent rounds shall be conducted for special management inmates who require more intensive supervision for security and safety reasons. All security rounds shall be documented on forms or logs that do not contain pre-printed rounding times. Video surveillance may be used to supplement, but must not be used to replace, rounds by correctional officers. | x2/13 x9/13 x3/14 | x9/10 x3/11 x8/11 x12/11 x7/12 | |
| 32.d. (27) | CCDOC shall ensure that security supervisors conduct daily rounds in the inmate housing units, and document the results of their inspections. | x2/13 x9/13 x3/14 | x3/11 x8/11 x12/11 x7/12 | x9/10 |
| 32.e. (28) | Cook County shall increase the use of overhead video surveillance and recording cameras to provide adequate coverage throughout the common areas of the Facility, including the RCDC, all division intake areas, mental health units, special management units, inmate housing units, and in common areas of the divisions. | x9/13 x3/14 | x9/10 x3/11 x8/11 x12/11 x7/12 x2/13 | |
| 32.f. (28) | CCDOC shall maintain a procedure to prevent inmates from possessing or having access to dangerous contraband, including conducting regular inspections of cells and common areas of the housing units to identify and prevent rule violations by inmates. | x2/13 x9/13 x3/14 | x9/10 x3/11 x8/11 x12/11 x7/12 | |
| 32.g. (28) | CCDOC shall review, and revise as applicable, all General Orders ("GOs"), Standard Operating Procedures ("SOPs"), and Post Orders on an annual basis, or more frequently as needed. | x8/11 x12/11 | x9/10 x3/11 | |

| Section (Page) | Language | Substantial compliance | Partial compliance | Non compliance |
|---|---|---|---|---|
| | | x7/12, x2/13, x9/13, x3/14 | | |
| 32.h. (29) | CCDOC shall revise policies, SOPs, and post orders for all armed posts to include proper use and safe handling of weapons and provide specific instructions on use of deadly force and when and under what circumstances such force should be used, in accordance with generally accepted correctional standards. | x12/11, x7/12, x2/13, x9/13, x3/14 | x 9/10, x 3/11, x/8/11 | |
| 32.i. (29) | CCDOC shall standardize security policies, procedures, staffing reports, and post analysis reports across the divisions, to the extent possible, taking into account the different security levels and different physical layouts in the various divisions. | x2/13, x9/13, x3/14 | x 9/10, x 3/11, x 8/11, x12/11, x7/12 | |
| 32.j. (29) | CCDOC shall provide formal training on division-specific SOPs to correctional officers in accordance with their assignments, and shall provide further specialized training for officers assigned to Special Management Units. Cermak Hospital shall provide Specialized training for officers assigned to psychiatric units. Coordinate with medical monitor and Dr. Metzner. See also 44.f., 44.g., 44.h., 46.b., 46.e., 68. | x7/12, x2/13, x9/13, x3/14 | x 9/10, x 3/11, x 8/11, x12/11 | |
| 32.k. (29) | CCDOC shall maintain in working order all monitoring equipment at the Facility that is under CCDOC's direct control, including cameras, alarms, radios (hand held), interior and exterior lighting, x-ray and other screening equipment, and walk-through metal detectors. To the extent that the maintenance of any Facility monitoring equipment is under the control of DFM, CCDOC shall promptly report any maintenance needs and DFM shall prioritize its services to ensure that all monitoring equipment is maintained in working order. Coordinate with Grenawitzke | x7/12, x2/13, x9/13, x3/14 | x 9/10, x 3/11, x 8/11, x12/11 | |
| 32.l. (30) | Absent exigent circumstances, CCDOC: (i) shall house each inmate assigned to a division that is celled to one permanent bed in a cell and shall not house any inmates (including those assigned to dormitory divisions) such that they are sleeping on the floor, on a mattress on the floor, or in any area not designed or redesigned as sleeping quarters; (ii) shall not house more than two inmates to a single cell (triple-bunking); and (iii) shall not hot-bunk any inmates. | x 8/11[3], x12/11, x7/12, x2/13, x9/13, x3/14 | | |

---

[3] Noted as "NA" in first two reports.

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| 32.m. (30) | When exigent circumstances give rise to triple-bunking, CCDOC shall provide the third inmate in the triple-bunked cell a "boat," stackable bunk, moveable platform, or cot, so that the inmate is not required to lay down directly on the cell floor or on a mattress on the floor. | x 8/11[4]<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | | |
| 33. | **Security Staffing.**<br>**The parties agree that correctional officer staffing and supervision levels at the Facility must be appropriate to adequately supervise inmates, to carry out the requirements of this Agreed Order, and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards. Cook County and CCDOC shall take such actions as shall ensure that correctional officer staffing and supervision of the Facility are sufficient to achieve these purposes. These actions shall include the following:** | | | |
| 33.a. (31) | In the fiscal year 2010 budget, Cook County shall allocate funds sufficient to allow for 210 additional correctional officer positions at the Facility. Consistent with provision 33.c, such funding may occur on a rolling basis, as appropriate in light of the time required to hire, train, and put on duty the additional 210 new correctional officers. | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11 | |
| 33.b. (32) | CCDOC shall use its best efforts (through the maintenance of the written staffing plan required by provision 33.h and otherwise) to ensure that the number of correctional officer vacancies is kept to the minimum practicable number at all times, taking into account that the timing of terminations and resignations and the resulting rate of attrition may, in ordinary course, result in there being some vacancies at any given time. | | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | |
| 33.c.i.ii (33) | CCDOC shall fill the 210 additional correctional officer slots provided for in provision 33.a; fill the 285 correctional officer vacancies that existed at the Facility as of July 17, 2009; and fill any correctional officer vacancies coming into existence after that date in the following manner:<br>i. By December 31, 2010, CCDOC shall hire, train, and put on duty at the Facility at least | x 8/11<br>x12/11<br>x7/12<br>x2/13 | | x 9/10<br>x 3/11 |

[4] Noted as "NA" in first two reports.

April 21, 2014

| Section (Page) | Language | Compliance - Substantial | Compliance - Partial | Non-compliance |
|---|---|---|---|---|
|  | 448 [381] newly qualified correctional officers (in addition to those on duty as of December 31, 2009).<br>ii. By March 30, 2011, CCDOC shall hire, train, and put on duty at the Facility at least 174 [107] newly qualified correctional officers (in addition to those on duty as of December 31, 2010). | x9/13<br>x3/14 |  |  |
| 33.d. (33) | The parties agree that for 30 months following the effective date of this Agreed Order, Cook County and CCDOC shall not be required to provide additional correctional officer staffing and supervision at the Facility beyond that which is necessary to ensure that correctional officer staffing and supervision are sufficient to achieve the purposes set out in the introductory paragraph of provision 33 and to comply with provisions 33.a-c above. Due date 11/13/2012 |  | x2/13<br>x9/13<br>x3/14 |  |
| 33.e. (33) | Within 30 months of the effective date of this Agreed Order, the CCDOC Monitor shall assess and make a recommendation on whether the correctional officer staffing and supervision levels are appropriate to adequately supervise inmates at the Facility, in accordance with generally accepted correctional standards. If the CCDOC Monitor determines that staffing is inadequate, the CCDOC Monitor will make a recommendation regarding the appropriate number of correctional officer staff. If the parties do not accept the CCDOC Monitor's staffing recommendation, CCDOC and Cook County shall agree to an independent, comprehensive study to determine the appropriate correctional officer staffing and supervision. The parties agree that the results of this staffing study shall provide guidance as to the sufficient number of qualified correctional officers necessary to operate the Facility safely and to carry out the requirements of this Agreed Order. Due date 11/13/2012 |  | x2/13<br>x9/13<br>x3/14 |  |
| 33.f. (34) | If the staffing study requires additional correctional officers, Cook County shall allocate funds sufficient to maintain correctional officer staffing levels necessary to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards. Due date 11/13/2012 |  | x2/13<br>x9/13<br>x3/14 |  |
| 33.g. (34) | If the staffing study requires additional correctional officers, and consistent with Cook County's allocation of funds for security staffing, CCDOC shall hire and train sufficient number of qualified correctional officers and other staff to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards, including:<br>1. Investigative staffing sufficient to meet the internal Investigation responsibilities outlined in this Agreed Order; |  | x2/13<br>x9/13<br>x3/14 |  |

| Section (Page) | Language | Substantial Compliance | Partial Compliance | Non-Compliance |
|---|---|---|---|---|
| | 2. Correctional officer staffing sufficient to provide inmates requiring treatment with adequate access to appropriate medical and mental health care by providing timely movement of inmates to medical units, transport of inmates who have been referred for outside specialty care, and escort, if necessary, to Qualified Medical and Mental Health Staff on housing units; and   [Coordinate with medical monitor and Dr. Metzner]<br><br>3. Qualified staff sufficient to monitor security cameras in real time and allow for supervisory viewing and retrieving at any time.  Due date 11/13/2012 | | | |
| 33.h. (35) | CCDOC shall maintain a written staffing plan that requires sufficient staffing to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards. | | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11 |
| 33.i. (35) | Absent exigent circumstances, CCDOC shall maintain a practice that does not allow for scheduled, planned, or expected cross-watching (a CCDOC practice of allowing one correctional officer to simultaneously supervise two housing units from the control center of one of the units) at any time on all maximum security and Special Management Units, and during first and second shifts throughout the Facility. | x 8/11[5]<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | | |
| 33.j. (35) | CCDOC may permit cross-watching on third shift in housing units that are not maximum security or Special Management Units only if the Monitor does not object after consultation and review. The Monitor's review of the appropriateness of third-shift cross-watching on a particular housing unit shall be guided by the sufficiency of sightlines between the units being cross-watched, the adequacy of video and/or audio technologies in place, and/or other factors that bear on the safety and security of inmates and staff.  If the Monitor later objects to any cross-watching that is in effect because of the Monitor's concerns that cross-watching on a particular housing unit presents an undue risk to the safety and security of inmates and staff, CCDOC shall immediately cease such cross-watching.  CCDOC may renew cross-watching on that unit again if, after further consultation with and review by the Monitor, the Monitor does not object to such renewal.  Although cross-watching is permitted under the limited circumstances described | x 8/11[6]<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | | |

[5] Noted as "NA" in first two reports.
[6] Noted as "NA" in first two reports.

April 21, 2014

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| 34. | herein, CCDOC will work to eliminate the practice at the Facility. | | | |
| | **Incidents and Referrals** | | | |
| 34. a. (36) | CCDOC shall continue to ensure that staff adequately and promptly document all reportable incidents, including inmate fights, rule violations, inmate injuries, suicides and suicide attempts, cell extractions, medical emergencies, contraband, vandalism, escapes and escape attempts, fires, and other incidents causing a disruption to standard CCDOC practice, in accordance with generally accepted correctional standards. | x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x7/12 | |
| 34.b. (36) | CCDOC shall continue to ensure that correctional officers receive pre-service and in-service training on proper incident reporting policies and procedures in accordance with generally accepted correctional standards. | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11 | |
| 34.c. (37 | CCDOC shall maintain a system to track all reportable incidents (as described in provision 34.a) that, at a minimum, includes the following information:<br>1. incident tracking number;<br>2. the inmate(s) name;<br>3. housing assignment;<br>4. date;<br>5. type of incident;<br>6. injuries (if applicable);<br>7. medical care (if applicable);<br>8. primary and secondary staff involved;<br>9. reviewing supervisor;<br>10. external reviews and results (if applicable);<br>11. remedy taken (if appropriate); and<br>12. administrative sign-off. | x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x7/12 | |
| 34.d. (37) | CCDOC shall require prompt administrative review of incident reports. Such reviews shall include a case-by-case review of individual incidents as well as a systemic review in order to identify patterns of incidents. CCDOC shall incorporate such information into quality management practices and take necessary corrective action. | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13 | x 9/10<br>x 3/11 | |

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| 34.e. (37) | CCDOC shall ensure that incident reports, use of force reports and inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, that it is referred for investigation. | x9/13 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x7/12<br>x2/13 | x3/14 |
| 34.f. (38) | CCDOC shall maintain policies, procedures and practices requiring investigations to resolve issues identified during review of incident reports, disciplinary hearings, or inmate grievances, and determine appropriate remedies, in accordance with generally accepted correctional standards. At a minimum, CCDOC shall require timely and appropriate investigations of all suicides, serious suicide attempts, inmate-on-inmate violence resulting in serious injury, inmate-on-staff violence, inmate injuries requiring treatment by an outside hospital, inmate injuries of a suspicious nature (including black eyes, injuries to the mouth, injuries to the genitals, etc.), sexual misconduct between inmates, sexual misconduct involving staff, fires, escapes, escape attempts, and deaths. | x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x7/12<br>x2/13 | |
| 34.g. (38) | CCDOC (OPR) shall ensure that any investigation reports indicating possible criminal behavior will be referred to the appropriate law enforcement authority. | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11 | |
| 35. | **Investigations:**<br><br>**Investigations of the Facility are conducted by independent departments under the Cook County Sheriff's Office, including the Office of Professional Review, the Criminal Investigations Unit, and the Sheriff's Police Department. The Cook County Sheriff will assume responsibility for requiring these investigatory units to comply with the relevant provisions of this Agreed Order.** | | | |
| 35.a. (39) | CCDOC [OPR] shall maintain comprehensive policies, procedures, and practices for the timely and thorough investigation of alleged staff misconduct, in accordance with generally accepted correctional standards. | x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x7/12 | |

| Section (Page) | Language | Substantial Compliance | Compliance Partial | Non-compliance |
|---|---|---|---|---|
| 35.b. (39) | Internal investigations [OPR] shall be conducted by persons who do not have supervisory responsibility for the staff member(s) being investigated. | x 7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11 | |
| 35.c. (39) | CCDOC [OPR] shall ensure that all internal investigations will include timely, thorough, and documented interviews of all relevant staff and inmates who were involved in, or witnessed, the incident in question. | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x 7/12<br>x2/13<br>x9/13<br>x3/14 | | |
| 35.d. (40) | CCDOC [OPR] shall ensure that internal investigation reports shall include all supporting evidence, including witness and participant statements, policies and procedures relevant to the incident, physical evidence, video or audio recordings, and relevant logs. | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x 7/12<br>x2/13<br>x9/13<br>x3/14 | | |
| 35.e. (40) | CCDOC [OPR] shall ensure that all investigatory staff will receive pre-service and in-service training on appropriate investigations policies and procedures, the investigations tracking process, investigatory interviewing techniques, and confidentiality requirements. | x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11 | |
| 35.f. (40) | CCDOC [OPR] shall provide all investigators who will be assigned to conduct investigations of use of force incidents with specialized training in investigating use of force incidents and allegations. | x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11 | |
| 35.g. (41) | CCDOC [OPR] shall ensure that the results of each internal investigation shall be documented in an investigation report. CCDOC administration shall review the investigation reports, along with the underlying documentation, and take appropriate action. CCDOC shall implement appropriate remedies based upon the results of internal investigations. | x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11 | |

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| **36.** | **Inmate Disciplinary Process** | | | |
| 36.a. (41) | CCDOC shall maintain policies, procedures, and practices for a formal disciplinary process, including prompt issuance of written disciplinary citations, administrative review and disciplinary reports for alleged minor rule violations, and due process for alleged major rules violations, in accordance with generally accepted correctional standards. | x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 x12/11 | x 9/10 x 3/11 x 8/11 x12/11 |
| 36.b. (41) | CCDOC shall ensure that inmate disciplinary hearings are conducted in a reasonably private and secure setting. | x 8/11 x12/11 x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 | |
| 36.c. (42) | shall ensure that all inmates places in lock down status are provided with appropriate due process that has been developed and implemented in policies and procedures, in accordance with generally accepted correctional standards.

In an emergency, the Executive Director of CCDOC may order a lock down of entire areas of the Facility in order to control the situation and address serious security concerns. In such circumstances, it is not necessary to provide disciplinary hearings to each inmate affected by the lock down. However, lock downs of this nature shall be limited to only the time and scope necessary to address the emergency.

For the purposes of this Agreed Order, a "lock down" shall not include the routine instances in which inmates are confined to their cells, including periods of count, over night, shift change, movement, and routine contraband sweeps. | x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 x12/11 | |
| 36.d. (42) | CCDOC shall ensure that the disciplinary board's written record accurately reflects the testimony and discussion from the disciplinary hearing, including any recommendations from a mental health professional regarding the extent to which disciplinary charges are related to an inmate's serious mental illness or suggestions for minimizing the deleterious effect of disciplinary measure on the mental health status of the inmate. | x7/12 x2/13 x9/13 x3/14 | x 3/11 x 8/11 x12/11 | x9/10 |
| 36.e. (42) | CCDOC shall alert Cermak when inmates are placed in disciplinary segregation or protective custody. | x7/12 x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 x12/11 | |

14

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| 36.f. (43) | CCDOC shall permit a Cermak Qualified Mental Health Staff member to serve on the disciplinary board. | x12/11 x7/12 x2/13 x9/13 x3/14 | x 3/11 x 8/11 | x 9/10 |
| 37. | **Classification** | | | |
| 37.a. (43) | CCDOC shall maintain policies and procedures for an appropriate, objective classification system that separates inmates in housing units by classification levels in order to protect inmates from unreasonable risk of harm. The system shall include consideration of an inmate's security level, severity of current charge, types of prior commitments, suicide risk, history of escape attempts, history of violence, and special needs. CCDOC shall use best efforts to anticipate periods of unusual intake volume and schedule sufficient classification staff to timely classify inmates. | | x 9/10 x 3/11 x 8/11 x12/11 x7/12 x2/13 x9/13 x3/14 | |
| 37.b. (44) | CCDOC shall ensure that classification staff have sufficient access to current information regarding cell availability on each division. | | x 9/10 x 3/11 x 8/11 x12/11 x7/12 x2/13 x9/13 x3/14 | |
| 37.c. (44) | CCDOC shall include information on each inmate's assignment to the Special Incarceration Unit "level system" at the Facility in the new Jail Management System, starting with the date the new Jail Management System becomes operational. | x 9/10 x 3/11 x 8/11 x12/11 x7/12 x2/13 x9/13 x3/14 | | |
| 37.d. (44) | CCDOC shall provide training and access to all correctional officer supervisors on the full capabilities of the new Jail Management System's classification and inmate tracking system (or | x2/13 x9/13 x3/14 | x 9/10 x 3/11 x 8/11 | |

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
|  | any replacement system). |  | x12/11<br>x7/12 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11 |
| 37.e. (45) | CCDOC shall provide ongoing internal and external review and validation of the inmate classification system to ensure its reliability and objectivity. | x3/14 | x7/12<br>x2/13<br>x9/13 | x3/14 |
| 38. | **Inmate Grievance Procedure** |  |  |  |
| 38.a. (45) | CCDOC shall maintain policies and procedures to ensure inmates have access to an adequate grievance process and to ensure that grievances may be accessed and filed confidentially, without requiring the intervention of a correctional officer, in accordance with generally accepted correctional standards. These policies and procedures should be applicable and standardized across all the Facility divisions. | x8/11<br>x12/11<br>x7/12 | x 9/10<br>x 3/11<br>x2/13<br>x9/13<br>x3/14 |  |
| 38.b. (46) | CCDOC shall ensure that the grievances receive appropriate follow-up, including informing the grievant of the outcome, providing a timely written response, and tracking implementation of resolutions. | x 8/11<br>x12/11<br>x7/12 | x 9/10<br>x 3/11<br>x2/13<br>x9/13<br>x3/14 |  |
| 38.c. (47) | CCDOC shall ensure that grievance forms are available on all units and are available in Spanish. CCDOC shall ensure that there is adequate opportunity for illiterate inmates and inmates who have physical or cognitive disabilities to access the grievance system. | x 8/11<br>x12/11<br>x7/12<br>x9/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x2/13 |  |
| 38.d. (47) | CCDOC shall ensure that inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, are referred for investigation. A member of the management staff shall review the grievance tracking system regularly in order to identify areas of concern. | x 8/11<br>x12/11<br>x7/12<br>x9/13<br>x3/14 | x 3/11<br>x2/13 | x 9/10 |
| 39. | **Access to Information** |  |  |  |
| 39.a. | CCDOC shall ensure that newly admitted inmates receive information, through an inmate | x2/13<br>x9/13 | x 9/10 |  |

| Section (Page) | Language | Substantial compliance | Partial compliance | Non-compliance |
|---|---|---|---|---|
| (47) | handbook or orientation video, regarding the following areas: facility rules and regulations; how to report misconduct; how to report sexual abuse or assault; the process for accessing medical and mental health care; emergency procedures; rules for sending and receiving mail; the visitation process; facility schedule; the disciplinary process; and how to seek redress of grievances. | x3/14 | x 3/11<br>x 8/11<br>x12/11<br>x7/12 | |
| 39.b. (48) | CCDOC shall ensure that materials on facility rules and services are available for non-literate and non-English speaking inmates. | X2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11<br>x 8/11<br>x12/11<br>x7/12 | |
| 40. (48) | CCDOC shall provide training and supervision to all correctional officers and supervisors sufficient to implement the provisions of this Agreed Order. | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 9/10<br>x 3/11 | |
| 41. (48) | Inter-Agency Agreement<br>a.   CCDOC shall enter into a written Inter-Agency Agreement with Cermak that delineates the mutual responsibilities of each party, relative to the provision of health care to inmates at the Facility. The Inter-Agency Agreement shall be finalized within 60 days of the effective date of this Agreed Order.<br>b.   Cermak shall enter into a written Inter-Agency Agreement with CCDOC that delineates the mutual responsibilities of each party, relative to the provision of health care to inmates at the Facility. The Inter-Agency Agreement shall be finalized within 60 days of the effective date of this Agreed Order. | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | x 3/11 | x 9/10 |
| 69. (49) | CCDOC shall ensure that security staff posts will be equipped, as appropriate, with readily available, safely secured, suicide cut-down tools. *Coordinate with Dr. Metzner | x 8/11<br>x12/11<br>x7/12<br>x2/13<br>x9/13<br>x3/14 | | x 9/10<br>x 3/11 |

### 31. Use of Force

a.    CCDOC shall maintain comprehensive and contemporary policies and procedures, in accordance with generally accepted correctional standards, surrounding the use of force and with particular emphasis regarding permissible and impermissible uses of force.

**March 2014 Status Update:** Substantial Compliance

**Status Update:** All relevant policies were implemented effective 9/19/2011. CCDOC is updating the Use of Force policies based on their experience, and recommendations from the Use of Force Monitor and the Use of Force Review Unit.

**Monitor's Assessment:** The quarterly report of the Use of Force Unit tracks uses of force in detail, as well as identifying deficiencies and need for improvement in the process and in the drafting of the actual reports.

**Monitor's Recommendations:** Continue refinements.

b.    CCDOC shall maintain use of force policies and pre-service and in-service training programs for correctional officers and supervisors that address the following impermissible uses of force:
1.    use of force as a response to verbal insults or inmate threats where there is no immediate threat to the safety of the institution, inmates, or staff;
2.    use of force as a response to inmates' failure to follow instructions where there is no immediate threat to the safety of the institution, inmates, or staff, unless CCDOC has attempted a hierarchy of nonphysical alternatives that are documented;
3.        use of force as punishment or retaliation;
4.    use of force involving striking, hitting, or punching a restrained and  non-combative inmate;
5.    use of force against an inmate after the inmate has ceased to offer resistance and is under control;
6.        use of choke holds on an inmate, unless lethal force is justified; and
7.        use of inappropriate or excessive force.

**March 2014 Status Update:** Substantial compliance.

**Status Update:** Remains in compliance; see 31.a.

**Monitor's Assessment:** see 31.a.

**Monitor's Recommendations:** See 31.a.

c.    CCDOC shall maintain a policy to ensure that staff adequately and promptly report all uses of force, in accordance with generally accepted correctional standards.

**March 2014 Compliance Status:**    Substantial Compliance

**Status Update:** Remains in compliance. See 31.a.

**Monitor's Assessment:** The latest quarterly report from the Use of Force Review Unit tracks the outcome of recommendations for improvements in previous reports. Importantly this involves collaboration with the training academy regarding not only the quality of reports, but the application of authorized force itself.

**Monitor's Recommendations:** See 31.a.

d.    CCDOC shall require that use of force reports:

1. Be written in specific terms in order to capture the details of the incident;
2. Contain an accurate account of the events leading to the use of force incident;
3. Include a description of the instrument(s) of restraint or control, if any, and the manner in which it was used;
4. Note whether an inmate disciplinary report was completed in connection with the incident that prompted the use of force;
5. Describe the nature and extent of apparent and reported injuries sustained both by the inmate and staff member;
6. Contain the date and time medical attention was actually provided;
7. Describe, in detailed, factual terms, the type and amount of force used as well as the precise actions taken in a particular incident; and
8. Note whether a use of force was videotaped. If the use of force is not videotaped, the reporting correctional officer and supervisor will provide an explanation as to why it was not videotaped.

**March 2014 Compliance Status:** Substantial compliance is maintained

**Status Update:** Remains in compliance. See 31.c. The Use of Force Review Unit examines use of force reports and makes recommendation for improvements, as well as returning reports to the author/supervisor when needed. The latest report notes specifically improvements that have been noted in completing the use of force forms and supervisory reviews.

**Monitor's Assessment:** As CCDOC and CCSO have more experience with the management of use of force, and evaluation of use of force reporting, changes are being made. These changes include potential organizations to expedite review of reports and more timely address investigations. This may include moving the responsibility for data management for use of force incidents from OPR to the Use of Force Review Unit.

**Monitor's Recommendations:** Continue monitoring compliance via the URFU.

e.      CCDOC shall continue to require prompt review by the shift commander of all use of force reports. The shift commander's review of use of force reports shall include review for

completeness and procedural errors, as well as review of the substantive content. If the use of force report does not comply with provision 31.d. of this Agreed Order, the shift commander shall return it to the reporting officer for revision and resubmission until it is compliant. If the shift commander believes a use of force may have been inappropriate or excessive, he or she shall immediately refer the incident for investigation.

**March 2014 Compliance Status:** Substantial compliance

**Status Update:** Remains in substantial compliance. See 31.d.

**Monitor's Assessment:** If any superintendent, or the Use of Force monitor identifies any discrepancies in reporting, the incident is referred to OPR. The UFRU's most recent data for CY 2013, of the 455 use of force total incident reports in CCDOC, 155 were referred to OPR. The vast majority of these referrals were related to the nature of the allegation itself, and for example, 7 because the subject was sent to the hospital, and 2 because of the nature of the subject's injuries. The use of force unit itself forwarded 87 incidents to OPR; and supervisors referred 68 incidents to OPR.

**Monitor's Recommendations:** Continue to use the data generated by the UFRU to manage and oversee uses of force.

f.     CCDOC shall ensure that senior management review of uses of force includes:
     1.      A timely review of medical documentation of inmate injuries, if any is submitted, as provided by Qualified Medical Staff, including documentation surrounding the initial medical encounter, an anatomical drawing that depicts the areas of sustained injury, and information regarding any further medical care;
     2.      The inmate disciplinary report, if any, associated with the use of force; and
     3.      The incident report, if any, associated with the use of force.

**March 2014 Compliance Status:**     Substantial compliance.

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:** See 31.d., and e.

**Monitor's Recommendations:** Continue to use the data generated by the UFRU to manage and oversee uses of force.

g.     CCDOC [and Cermak] shall establish criteria that trigger referral for inappropriate or excessive use of force investigations, including but not limited to, documented or known injuries that are extensive or serious; injuries involving fractures or head trauma; injuries of a suspicious nature (including black eyes, injuries to the mouth, injuries to the genitals, etc.); and injuries that require treatment at outside hospitals.

**March 2014 Compliance Status:**     Substantial compliance.

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** I met for the fourth consecutive tour with Cermak leadership to ask questions about this referral process. The leadership team is satisfied that there are no issues; and if there were, they had instant access to CCDOC's or OPR's leadership to address any issues.

**Monitor's Recommendations:** Continue to surface this issue at the inter-agency meetings.

h.       When CCDOC review of use of force reports, and supporting records if applicable, reveals that reports of a use of force are materially inconsistent, conflicting, or suspicious, CCDOC shall refer that use of force incident for internal investigation.

**March 2014 Compliance Status:**       Substantial Compliance.

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:** See 31.e. and 31g.

**Monitor's Recommendations:** See 31.e. and 31g.

i.       CCDOC shall develop and implement a system to track all incidents of use of force that, at a minimum, includes the following information:
1.       a tracking number;
2.       the inmate(s) name;
3.       housing assignment;
4.       date;
5.       type of incident;
6.       injuries (if applicable);
7.       medical care provided (if applicable);
8.       staff involved;
9.       reviewing supervisor;
10.      external reviews and results (if applicable);
11.      remedy taken (if appropriate); and
12.      administrative sign-off.

**March 2014 Compliance Status:**       Substantial compliance.

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** As noted in the executive summary to this compliance report, CCDCO will implement an undated jail management information system in July. The elements required above are part of that system.

**Monitor's Recommendations:** Continue refinements and updates.

j.     CCDOC shall ensure that, promptly following a use of force incident, video or photographs are taken of any and all reported or apparent injuries sustained by inmates and staff. The video or photographs will be maintained and will be included in the investigation package, if applicable.

**March 2014 Compliance Status:**     Substantial compliance

**Status Update:**  Remains in substantial compliance.

**Monitor's Assessment:** OPR investigative files were in order. The Use of Force Review Unit continues to evaluate the reports for compliance, and has noted recommendations to improve the process in each of its reports.

**Monitor's Recommendations:** The Use of Force Review Unit will monitor the use, and quality of the photographs/recordings and continue with recommendations to improve via pre-service and in-service training, and if necessary employee disciplinary action.

k.     CCDOC shall establish an "early warning system" that will document and track correctional officers who are involved in use of force incidents and any complaints related to the inappropriate or excessive use of force, in order to alert CCDOC administration to any potential need for retraining, discipline, problematic policies, or supervisory lapses. Appropriate CCDOC leadership, supervisors, and investigatory staff shall have access to this information and monitor the occurrences. CCDOC senior management shall use information from the early warning system to improve quality management practices, identify patterns and trends, and take necessary corrective action both on an individual and systemic level.

**March 2014 Compliance Status:**     Substantial compliance.

**Status Update:**  Remains in substantial compliance.

**Monitor's Assessment:** The Use of Force Review Unit reports in their current draft report that in 2013 48 officer were recommended for remedial training based on the early warning system.  The reasons provided included the application of OC spray, report writing, tactics, and/or failing to follow policy and procedure.

**Monitor's Recommendations:**  Continue to refine the process.  Track alerts, referrals and outcomes.  After two years of experience with the early warning system, perhaps CCDOC should conduct a formal review to see the impact of the program on inmate and staff safety.

l.     CCDOC shall ensure that a supervisor is present during all pre-planned uses of force, such as cell extractions.

**March 2014 Compliance Status:** Substantial compliance

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** Compliance is monitored by URFU. No issues reported.

**Monitor's Recommendations:** Continue to monitor compliance.

m.	Where there is evidence of staff misconduct related to inappropriate or unnecessary use of force against inmates, CCDOC shall initiate personnel actions and seek disciplinary action appropriately for any correctional officer found to have:

1.	engaged in inappropriate or excessive use of force;
2.	failed to report or report accurately the use of force;
3.	retaliated against an inmate or other staff member for reporting an inappropriate or excessive use of force; or
4.	interfered or failed to cooperate with an internal investigation regarding use of force in a manner inconsistent with the staff member's statutory or contractual rights.

**March 2014 Compliance Status:** Substantial compliance

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** Data provided by OPR for the Employee Discipline Unit indicates that actions are taken where misconduct allegations are sustained. In CY 2012, 359 actions were initiated; and in CY 2013 412 were initiated.

**Monitor's Recommendations:** Continue to work with the prosecutor. Assure that if cases are declined for prosecution, the reasons are noted in order to continue to improve, if necessary, CCSO's investigative procedures and/or quality control.

n.	Where there is evidence of staff misconduct related to inappropriate or unnecessary use of force against inmates, CCDOC shall consider, develop, and initiate systemic remedies as appropriate.

**March 2014 Compliance Status:** Substantial compliance

**Status Update:** Remains in compliance.

**Monitor's Assessment:** Employees are referred to the Merit Board for disciplinary action where the recommendation is more than 30 days, or termination. Disciplinary provisions are being revised inside CCDOC to assure that resources are devoted in a timely manner.

CCSO reports that in March 2013 the Employee Discipline Unit was reassigned from CCDOC to OPR.  A review in August 2013 showed there were 775

employee disciplinary actions pending, which were addressed immediately. The purpose of evaluating the system was to determine how best to review and allocate recommended disciplinary actions (ranging from time and attendance, violations of policy and procedure, to allegations of criminal activity). In other words, what disciplinary actions can be handled at the department/facility level; and what need OPR's resources to complete. Additionally employee grievances were being handled as well, taking resources.

Data provided by OPR indicates there were 359 cases handled in 2012, 412 in 2013 and none year to date for 2014. CCSO will continue to evaluate how best to manage employee discipline.

**Monitor's Recommendations:** Continue evaluation of current employee disciplinary procedures.

o.    CCDOC shall maintain accountability policies and procedures for the effective and accurate maintenance, inventory, and assignment of chemical and other security equipment, in accordance with generally accepted correctional standards.

**March 2014 Compliance Status:**    Substantial compliance.

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:** In reviewing reports provided by CCDOC I have seen two instances in the last six months where a canister of OC was noted as missing. So the process for checking is working. In both cases the canister had rolled away and was promptly found.

**Monitor's Recommendations:** Continue to evaluate the process.

p.    CCDOC shall continue to conduct use of force training in accordance with generally accepted correctional standards, including:

1.    CCDOC shall maintain an effective and comprehensive use of force training program.
2.    CCDOC shall continue to ensure that correctional officers receive adequate training in CCDOC's use of force policies and procedures, including de-escalation and defensive tactics relating to use of force.
3.    CCDOC shall continue to ensure that correctional officers receive pre-service and in-service training on reporting use of force and completing use of force reports.

**March 2014 Compliance Status:**    Substantial compliance.

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** No change from last report. The training academy continues to refine use of force training, and use of force reporting based on the

recommendations of the Use of Force Review Unit. Attention continues to be needed for training for staff working with inmates with mental illness.

**Monitor's Recommendations:** As noted in the last report, CCDOC should continue work to identify how best to train staff to work with inmates who are on the mental health caseload. I am working with Dr. Metzner on this issue.

q.    CCDOC shall provide a process for inmates to report allegations of the inappropriate or excessive use of force orally to any CCDOC staff member; said staff member shall give the inmate the opportunity to reduce his or her report to writing through a grievance or complaint form without discouragement.

**March 2014 Compliance Status:** Substantial compliance.

**Status Update:** See Section 38 of the report. Inmates' grievances are finding their way to OPR either from the Inmate Services Department, or the mail, or when the inmate is released from custody.

**Monitor's Assessment:** See recommendation in Section 38.

**Monitor's Recommendation:** Continue wider implementation of the grievance process pilot program. Continue monitoring inmate grievance flow.

r.    Following a use of force, when CCDOC staff transport an inmate to receive medical care by Cermak, as necessary, the CCDOC staff member shall inform the Cermak staff member that the inmate was involved in a use of force.

**March 2014 Compliance Status:**    Substantial Compliance.

**Status Update:**  Remains in substantial compliance.

**Monitor's Assessment:** Both Cermak and CCDOC report compliance;  no issues reported by Cermak in my meeting with them.

**Monitor's Recommendation:** Nothing at this time.

s.    Cermak shall ensure that, when providing medical treatment or assessment to an inmate following a use of force, Qualified Medical Staff document the inmate's injuries, if any, and any medical care provided. Cermak shall provide CCDOC senior management with a brief summary documenting the initial medical encounter following a use of force, including an anatomical drawing that depicts the areas of sustained injury, if any, and information regarding any further medical care.

**March 2014 Compliance Status:**    Substantial compliance.

**Status Update:**  Remains in substantial compliance

**Monitor's Assessment:** As noted earlier in this report, Cermak's leadership is satisfied with compliance with this matter. OPR reports a high level of coordination with Cermak in gaining the information they need to assess allegations and complete investigations.

**Monitor's Recommendations:** Continue to use the Interagency Coordinating Council to enhance operations.

f. Cermak shall ensure that Qualified Medical Staff question, outside the hearing of other inmates or correctional officers if appropriate, each inmate who reports for medical care with an injury, regarding the cause of the injury. If, in the course of the inmate's medical encounter, a health care provider suspects staff-on-inmate or inmate-on-inmate abuse, that health care provider shall immediately:
1. report the suspected abuse to the Executive Director of the Office of Professional Review or other appropriate CCDOC administrator; and
2. adequately document the matter in the inmate's medical record.

**March 2014 Compliance Status:** Substantial Compliance

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:** As noted in the last report, neither OPR, Cermak nor CCDOC report any issues. The Interagency Coordinating Committee is the vehicle to surface and address any concerns. Minutes of these meeting are maintained.

**Monitor's Recommendations:** Nothing at this time.

## 32. Safety and Security

a. CCDOC shall maintain security and control-related policies, procedures, and practices that will result in a reasonably safe and secure environment for all inmates and staff, in accordance with generally accepted correctional standards. Coordinate with Grenawitzke, medical monitor and Dr. Metzner.

**March 2014 Compliance Status:** Substantial compliance.

**Status Update:** The Office of Policy and Accountability (OPA) is responsible for updating written directives on a regular schedule.

**Monitor's Assessment:** OPA provided an updated listing of orders that have been issued/re-issued since September 2013, as well as those currently in the pipeline. CCSO has entered into a contract with Lexipol, a private vendor, who will assist with policy and procedure manuals and training bulletins.

**Monitor's Recommendation:** Nothing at this time.

b. CCDOC shall maintain policies, procedures, and practices to ensure the adequate supervision of inmate work areas and trustees, in accordance with generally accepted correctional standards. Coordinate with Grenawitzke.

**March 2014 Compliance Statue:** Substantial Compliance

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:** See 32.a.

**Monitor's Recommendations:** See 32.a.

c. CCDOC shall ensure that security staff conduct appropriate rounds with sufficient frequency to provide inmates with reasonable safety. Rounds shall be conducted at least once every half hour, at irregular intervals, inside each housing unit. In the alternative, CCDOC may provide direct supervision of inmates by posting a correctional officer inside the day room area of a housing unit to conduct constant surveillance. More frequent rounds shall be conducted for special management inmates who require more intensive supervision for security and safety reasons. All security rounds shall be documented on forms or logs that do not contain pre-printed rounding times. Video surveillance may be used to supplement, but must not be used to replace, rounds by correctional officers.

**March 2014 Compliance Status:** Substantial compliance.

**Status Update:** Continue in substantial compliance.

**Monitor's Assessment:** There are systems in place to evaluate whether rounds are conducted. Will audit on next tour.

**Monitor's Recommendations:** Nothing at this time.

d. CCDOC shall ensure that security supervisors conduct daily rounds in the inmate housing units, and document the results of their inspections.

**March 2014 Compliance Status:** Substantial Compliance

**Status Update:** See 32. C.

**Monitor's Assessment:** See 32.c.

**Monitor's Recommendations:** Continue to place responsibilities to assess compliance on facility superintendents. Continue the audits and any required corrective action plans.

e.     Cook County shall increase the use of overhead video surveillance and recording cameras to provide adequate coverage throughout the common areas of the Facility, including the RCDC, all division intake areas, mental health units, special management units, inmate housing units, and in common areas of the divisions.

**March 2014 Compliance Status:**     Substantial Compliance

**Status Update:** See Executive Summary.

**Monitor's Assessment:** See Executive Summary. Will evaluate again on next tour, expecting substantial progress by that time.

**Monitor's Recommendations:** None at this time.

f.     CCDOC shall maintain a procedure to prevent inmates from possessing or having access to dangerous contraband, including conducting regular inspections of cells and common areas of the housing units to identify and prevent rule violations by inmates.

**March 2014 Compliance Status:**     Substantial compliance

**Status Update:** CCDOC continues to regularly evaluate contraband through the "weapons free" process.

**Monitor's Assessment:** I reviewed the reporting compiled by Weapons Free. The process clearly identifies the source of the contraband and seeks to alleviate the source. The County invested substantial funds to re-do the lighting systems in the older facilities that resulted in a dramatic reduction in contraband from that source. As inmates never cease in their attempts to identify weapons, the efforts of CCDOC continue. Weapons from light fixtures have been replaced by boot inserts, medical devices, broken property boxes, and eyeglass parts.

**Monitor's Recommendations:** None at this time.

g.     CCDOC shall review, and revise as applicable, all General Orders ("GOs"), Standard Operating Procedures ("SOPs") and Post Orders on an annual basis, or more frequently as needed.

**March 2014 Compliance Status:**     Substantial Compliance

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** See 32.a. and 32. B.

**Monitor's Recommendations:** None at this time.

h.  CCDOC shall revise polices, SOPS, and Post orders for all armed posts to include proper use of and safe handling of weapons and provide specific instructions on use of deadly force and when and under what circumstances such force should be used, in accordance with generally accepted correctional standards.

**March 2014 Compliance Status:**  Substantial Compliance.

**Status Update:**  Remains in substantial compliance

**Monitor's Assessment:**  See 32.g.

**Monitor's Recommendations:** See 32.g.

i.  CCDOC shall standardize security policies, procedures, staffing reports, and post analysis reports across the divisions, to the extent possible, taking into account the different security levels and different physical layouts in the various divisions.

**March 2014 Compliance Status:**  Substantial compliance.

**Status Update:**  Remains in Substantial Compliance

**Monitor's Assessment:**  Appropriate procedures in place for each Division.

**Monitor's Recommendations:**  Evaluate on an annual basis.

j.  CCDOC shall provide formal training on division-specific SOPs to correctional officers in accordance with their assignments, and shall provide further specialized training for officers assigned to Special Management Units. Cermak Hospital shall provide specialized training for officers assigned to psychiatric units. [From Consent agreement "Special Management Units" means those housing units of the Facility designated for inmates in administrative or disciplinary segregation, in protective custody, on suicide precautions, or with mental illness."] Coordinate with medical monitor and Dr. Metzner.

**March 2014 Compliance Status:** Substantial Compliance.

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:** Although this remains in substantial compliance, I believe that additional work is needed to improve training for officers and supervisors assigned to mental health units.

**Monitor's Recommendations:** Continue refining improved collaboration in units housing special management inmates.

k.  CCDOC shall maintain in working order all monitoring equipment at the Facility that is under CCDOC's direct control, including cameras, alarms, radios (hand held), interior and exterior lighting, x-ray and other screening equipment, and walk-through metal detectors. To

the extent that the maintenance of any Facility monitoring equipment is under the control of DFM, CCDOC shall promptly report any maintenance needs and DFM shall prioritize its services to ensure that all monitoring equipment is maintained in working order. Coordinate with Grenawitzke.

**March 2014 Compliance Status:**     Substantial Compliance.

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:** I did not assess on-going compliance with this paragraph. Monitor Grenawitzke is monitoring this aspect of the agreement.

**Monitor's Recommendations:** None at this time.

l.      Absent exigent circumstances, CCDOC: (i) shall house each inmate assigned to a division that is celled to one permanent bed in a cell and shall not house any inmates (including those assigned to dormitory divisions) such that they are sleeping on the floor, on a mattress on the floor, or in any area not designed or redesigned as sleeping quarters; (ii) shall not house more than two inmates to a single cell (triple-bunking); and (iii) shall not hot-bunk any inmates.

**March 2014 Compliance Status:**     Substantial Compliance.

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** Nothing at that time.

**Monitor's Recommendations:** Nothing at this time.

m.      When exigent circumstances give rise to triple-bunking, CCDOC shall provide the third inmate in the triple-bunked cell a "boat," stackable bunk, moveable platform, or cot, so that the inmate is not required to lay down directly on the cell floor or on a mattress on the floor.

**March 2014 Compliance Status:**     Substantial Compliance

**Status Update:** See 32. l.

**Monitor's Assessment:** See 32.1.

**Monitor's Recommendations:** See 32.l.

**33.      Security Staffing.** The parties agree that correctional officer staffing and supervision levels at the Facility must be appropriate to adequately supervise inmates, to carry out the requirements of this Agreed Order, and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards. Cook County and CCDOC shall take such actions as shall ensure that correctional officer staffing and supervision at the Facility are sufficient to

achieve these purposes. These actions shall include the following:

a.     In the fiscal year 2010 budget, Cook County shall allocate funds sufficient to allow for 210 additional correctional officer positions at the Facility.  Consistent with provision 33.c, such funding may occur on a rolling basis, as appropriate in light of the time required to hire, train, and put on duty the additional 210 new correctional officers.

**March 2014 Compliance Status:**     Substantial Compliance

**Status Update:** Remains in substantial compliance.

The data provided by CCDOC reported there were 91 (2.9%) vacancies as of March 10, 2014 out of a current funded staffing of 3,125. CCDOC also reports that 98 additional employees are on leave of absences related to duty injury, disability, military, suspended or on unauthorized leave.  Of these 98 positions, 53 can be filled, and are part of the hiring plan (45 are on short-term leave and expected to return to work in the near future.  With the addition of the 91 vacancies, and the 98 vacant positions, the vacancy rate is 6%.  CCDOC reports there is sufficient overtime to fill mandatory posts as needed ($12 million in FY 2014).

Since the beginning of 2014, CCDOC reports that 13 officers have left employment, including 4 retirements. For CY 2013, 199 officers left employment, about 17 vacancies/month.  Of the number who left CCDOC in CY 2013 - 18% retired; 45% resigned; 32% going to other law enforcement/sheriff organizations; 4.5% were terminated; and 1.5% deceased.

CCDOC notes there are 31 new officers expected to graduate on 4/14/14; 41 expected to graduate on 6/2/14; 49 on 7/21/14 and 41 on 8/11/14. The goal is continue six pre-service training classes for 55 new employees, each, beginning 4/7/14 – through 4/27/15.

**Monitor's Assessment:** CCDOC reports that there are changes being made to the processing of applications at the Merit Board that will expedite hiring. CCDOC continues to demonstrate that it can hire given the attrition rate of 6.3% in CY 2013, a number that is remarkably low for a jail work environment.

I met with representatives of several of the unions who: maintain that there is not sufficient staffing, that their members are stressed, object to having supervisors  perform work designated for the officer level; and the struggle for supervisors to fill positions when staff call in sick immediately before a shift begins work.  We talked about the need for officers to report to work as scheduled and the role the unions can play, and how the unions, if they believe there is insufficient staff, can to conduct their own staffing assessment.  I invited them to

do so and provided the information to do that work. Also discussed was the impact of less overtime availability on their members.

When anything changes in a work environment – whether it is re-designation of the rank structure, reallocation human resources, or changes in work assignments, there is a potential outcry from workers. The union representatives which whom I met felt that they had access to the Executive Director and that she heard them. The dynamic tension between labor/management is a fact of life. I am happy to meet with the union at any time I am on-site, encourage their input into the staffing debate, and urge CCDOC leadership to involve the unions in the process of staffing analysis. I'm not sure there will ever be unanimity between labor/management about staffing, but their can be better understanding of the processes that drive it.

**Monitor's Recommendation:** See notes on the staffing analysis.

b.  CCDOC shall use its best efforts (through the maintenance of the written staffing plan required by provision 33.h and otherwise) to ensure that the number of correctional officer vacancies is kept to the minimum practicable number at all times, taking into account that the timing of terminations and resignations and the resulting rate of attrition may, in ordinary course, result in there being some vacancies at any given time.

**March 2014 Compliance Status:** Partial compliance

**Status Update:** CCDOC reports that the staffing plan is to be completed by August 2014.

**Monitor's Assessment:** The plan is underway, as noted above due to be completed in August. I recommended the following to CCDOC on 3/29/14 based on consultation with monitor Dr. Jeff Metzner.
- Cermak needs to be involved with both designing the methodology and the staffing review process, including the production and analysis of the activity review in each facility and on each shift.
- CCDOC needs to be involved with analyzing the staffing patterns for Cermak for functions, facilities, and shift.
- CCDOC and Cermak should together analyze how mutual staffing impacts the downtime of functions. I understand that inmate movement is halted for up to two hours during various times of the day.

**Monitor's Recommendations:** Complete the plan under the conditions noted above. Additionally, brief the unions regarding the process of how staffing analysis is done as a means to try to achieve mutual understand about the process.

c.    CCDOC shall fill the 210 additional correctional officer slots provided for in provision 33.a; fill the 285 correctional officer vacancies that existed at the Facility as of July 17, 2009; and fill any correctional officer vacancies coming into existence after that date in the following manner:

      i.    By December 31, 2010, CCDOC shall hire, train, and put on duty at the Facility at least 448 [381] newly qualified correctional officers (in addition to those on duty as of December 31, 2009).

      ii.   By March 30, 2011, CCDOC shall hire, train, and put on duty at the Facility at least 178 [107] newly qualified correctional officers (in addition to those on duty as of December 31, 2010).

**March 2014 Compliance Status:** Substantial Compliance.

**Status Update:** Remains in substantial compliance,

**Monitor's Assessment:** See 33.a.

**Monitor's Recommendations:** See 33. a.

d.    The parties agree that for 30 months following the effective date of this Agreed Order, Cook County and CCDOC shall not be required to provide additional correctional officer staffing and supervision at the Facility beyond that which is necessary to ensure that correctional officer staffing and supervision are sufficient to achieve the purposes set out in the introductory paragraph of provision 33 and to comply with provisions 33.a-c above.

**March 2014 Compliance Status:** Partial Compliance.

**Status Update:** See 33.a.

**Monitor's Assessment:** See 33.a. and c. The decision about whether there is a need to request more positions is awaiting the completion of the staffing analysis. I assigned partial compliance to this paragraph because CCDOC continues to do the work; just not reaching a conclusion about whether additional positions are needed.

**Monitor's Recommendations:** See 33.b.

e.    Within 30 months of the effective date of this Agreed Order, the CCDOC Monitor shall assess and make a recommendation on whether the correctional officer staffing and supervision levels are appropriate to adequately supervise inmates at the Facility, in accordance with generally accepted correctional standards. If the CCDOC Monitor determines that staffing is inadequate, the CCDOC Monitor will make a recommendation regarding the appropriate number of correctional officer staff. If the parties do not accept the CCDOC Monitor's staffing recommendation, CCDOC and Cook County shall agree to an independent, comprehensive study to determine the appropriate correctional officer staffing and supervision. The parties agree that the results of this staffing study shall provide guidance as to the sufficient number of qualified correctional officers necessary to operate the Facility safely and to carry out the requirements of this Agreed Order.

**March 2014 Compliance Status:** Partial Compliance

**Status Update:** See 33.d.

**Monitor's Assessment:** See 33.d.

**Monitor's Recommendation:** See 33.d.

f.     If the staffing study requires additional correctional officers, Cook County shall allocate funds sufficient to maintain correctional officer staffing levels necessary to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards.

**March 2014 Compliance Status:**     Partial compliance.

**Status Update:** See 33.d.

**Monitor's Assessment:**     See 33.d.

**Monitor's Recommendation:** See 33.d.

g.     If the staffing study requires additional correctional officers, and consistent with Cook County's allocation of funds for security staffing, CCDOC shall hire and train sufficient number of qualified correctional officers and other staff to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards, including:
1.     Investigative staffing sufficient to meet the internal investigation responsibilities outlined in this Agreed Order;
2.     Correctional officer staffing sufficient to provide inmates requiring treatment with adequate access to appropriate medical and mental health care by providing timely movement of inmates to medical units, transport of inmates who have been referred for outside specialty care, and escort, if necessary, to Qualified Medical and Mental Health Staff on housing units; and
3.     Qualified staff sufficient to monitor security cameras in real time and allow for supervisory viewing and retrieving at any time.

**March 2014 Compliance Status:**     Partial compliance.

**Status Update:**  There are currently vacancies in OPR. The decision to fill those vacancies is contingent on the organizational review currently underway regarding the Use of Force Review Unit, and reassignment and/or reallocation of duties among various other functions.

**Monitor's Assessment:**     CCDOC is reevaluating the best means to promptly conduct investigations, including allegations of use of excessive force. Until that is done, the decision has been made to hold vacancies open. This

reorganization and staffing will be assessed on the next tour.

**Monitor's Recommendation:** Promptly conclude the deliberation process as soon as possible, and reorganize, or not, the functional roles, and adjust staffing.

h.      CCDOC shall maintain a written staffing plan that requires sufficient staffing to carry out the requirements of this Agreed Order and to allow for the safe operation of the Facility, consistent with generally accepted correctional standards.

**March 2014 Compliance Status:**      Partial compliance.

**Status Update:** See 33.b.

**Monitor's Assessment:** See 33.b.

**Monitor's Recommendation:** See 33.b.

i.      Absent exigent circumstances, CCDOC shall maintain a practice that does not allow for scheduled, planned, or expected cross-watching (a CCDOC practice of allowing one correctional officer to simultaneously supervise two housing units from the control center of one of the units) at any time on all maximum security and Special Management Units, and during first and second shifts throughout the Facility.

**March 2014 Compliance Status:** Substantial Compliance

**Status Update:** CCDOC reports no deficiencies.

**Monitor's Assessment:** In January, I was notified by an employee that there was cross-watching happening on the day shift in Division 4. I brought this immediately to the attention of counsel, and, according to the employee, it was immediately stopped, and an announcement was made that this was not to happen. Counsel advises that appropriate notifications were made to the leadership in Division 4 about their responsibilities. Cross-watching was not a concern raised by the unions in my meeting with them.

This one reported incident is not a reason to move this section out of substantial compliance; without further evidence of frequent or continued violation of policy.

**Monitor's Recommendation:** I urge CCDOC to consider how the leadership can track whether cross-watching happens, even with the written direction of how and when it can occur.

j.      CCDOC may permit cross-watching on third shift in housing units that are not maximum security or Special Management Units only if the Monitor does not object after consultation and review. The Monitor's review of the appropriateness of third-shift cross-watching on a particular

housing unit shall be guided by the sufficiency of sightlines between the units being cross-watched, the adequacy of video and/or audio technologies in place, and/or other factors that bear on the safety and security of inmates and staff. If the Monitor later objects to any cross-watching that is in effect because of the Monitor's concerns that cross-watching on a particular housing unit presents an undue risk to the safety and security of inmates and staff, CCDOC shall immediately cease such cross-watching. CCDOC may renew cross-watching on that unit again if, after further consultation with and review by the Monitor, the Monitor does not object to such renewal. Although cross-watching is permitted under the limited circumstances described herein, CCDOC will work to eliminate the practice at the Facility.

**March 2014 Compliance Status:** Substantial Compliance

**Status Update:** See 33.i.

**Monitor's Assessment:** See 33.i.

**Monitor's Recommendation:** See 33.i.

## 34.    Incidents and Referrals

a.    CCDOC shall continue to ensure that staff adequately and promptly document all reportable incidents, including inmate fights, rule violations, inmate injuries, suicides and suicide attempts, cell extractions, medical emergencies, contraband, vandalism, escapes and escape attempts, fires, and other incident causing a disruption to standard CCDOC practice, in accordance with generally accepted correctional standards.

**March 2014 Compliance Status:** Substantial Compliance.

**Status Update:** The new jail management system will be implemented in July 2014. Even during the development and implementation phase of this work, the provision of this paragraph have been met.

**Monitor's Assessment:** The updated information system will provide more flexibility in the ability to generate reports about various phases of the operation.

**Monitor's Recommendation:** None at this time.

b.    CCDOC shall continue to ensure that correctional officers receive formal pre-service and in-service training on proper incident reporting policies and procedures, in accordance with generally accepted correctional standards.

**March 2014 Compliance Status:** Substantial compliance

**Status Update:** Training continues both at pre-service and in-service level.

**Monitor's Assessment:** As noted in previous reports, I am impressed by the feedback that the Use of Force Review Unit provides to the training staff about

what can be included and/or emphasized in training based on the Unit's review of use of force reports.

**Monitor's Recommendations:** None at this time.

c. CCDOC shall maintain a system to track all reportable incidents (as described in provision 34.a) that, at a minimum, includes the following information:
   1. incident tracking number;
   2. the inmate(s) name;
   3. housing assignment;
   4. date;
   5. type of incident;
   6. injuries (if applicable);
   7. medical care (if applicable);
   8. primary and secondary staff involved;
   9. reviewing supervisor;
   10. external reviews and results (if applicable);
   11. remedy taken (if appropriate); and
   12. administrative sign-off.

**March 2014 Compliance Status:** Substantial compliance

**Status Update:** See 34.a.

**Monitor's Assessment:** See 34.a.

**Monitor's Recommendation:** Nothing at this time.

d.      CCDOC shall require prompt administrative review of incident reports. Such reviews shall include a case-by-case review of individual incidents as well as a systemic review in order to identify patterns of incidents. CCDOC shall incorporate such information into quality management practices and take necessary corrective action.

**March 2014 Compliance Status:** Substantial Compliance.

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** See also 34.a.   CCDOC has successfully shortened the time for administrative reviews.

**Monitor's Recommendation:** Note at this time.

e.      CCDOC shall ensure that incident reports, use of force reports and inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, that it is referred for investigation.

**March 2014 Compliance Status:** Substantial Compliance.

**Status Update:** See 31.q. See the data provided in 38.d.

**Monitor's Assessment:** See 31.q. See the data provided in 38.d.

**Monitor's Recommendation:** See 31.q.

f.      CCDOC [OPR] shall maintain policies, procedures and practices requiring investigations to resolve issues identified during review of incident reports, disciplinary hearings, or inmate grievances, and determine appropriate remedies, in accordance with generally accepted correctional standards. At a minimum, CCDOC shall require timely and appropriate investigations of all suicides, serious suicide attempts, inmate-on-inmate violence resulting in serious injury, inmate-on-staff violence, inmate injuries requiring treatment by an outside hospital, inmate injuries of a suspicious nature (including black eyes, injuries to the mouth, injuries to the genitals, etc.), sexual misconduct between inmates, sexual misconduct involving staff, fires, escapes, escape attempts, and deaths.

**March 2014 Compliance Status:** Substantial compliance

**Status Update:** See 31.q.

**Monitor's Assessment:** See 331.q Sufficient policies and procedures are in place, and there is evidence in reporting of these referrals. Cermak reports no concerns about either making referrals to OPR or receiving responses to those referrals. All inmates have access to the grievance process; CCDOC is focusing on improvements through the pilot grievance program. As noted elsewhere in this report, the system-wide implementation of the revised/updated grievance process will be an asset to both the inmates and CCDOC.

**Monitor's Recommendation:** See 31.q.

g.      CCDOC [OPR] shall ensure that any investigation reports indicating possible criminal behavior will be referred to the appropriate law enforcement authority.

**March 2014 Compliance Status:** Substantial compliance

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** I reviewed files at OPR to determine referrals. There are referrals being made to the prosecutor.

**Monitor's Recommendation:** None at this time. Continue to work with the prosecutor to stress the importance of timely reviews of referrals and specific reasons given if prosecutions are declined, as a means of furthering improvements in CCDOC investigations.

**35. Investigations** - Investigations at the Facility are conducted by independent departments under the Cook County Sheriff's Office, including the Office of Professional Review, the Criminal Investigations Unit, and the Sheriff's Police Department. The Cook County Sheriff will assume responsibility for requiring these investigatory units to comply with the relevant provisions of this Agreed Order.

a.     CCODC (OPR) shall maintain comprehensive policies, procedures, and practices for the timely and thorough investigation of alleged staff misconduct, in accordance with generally accepted correctional standards.

**March 2014 Compliance Status:**     Substantial Compliance

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment**: As noted in this report's executive summary, CCSO heard my recommendations about the backlog in clearing investigations into allegations of excessive force/force, and devoted the resources to clearing the backlog. CCSO indicated that as of 3/3/1/14 the investigations into nearly all cases dated 2012 (and before) will be done, and OPR is focusing on more recent allegations. Since February of 2014, over 120 excessive force cases have been closed, and work is ongoing to thoroughly investigate and expeditiously complete all 2013 excessive force allegations.

A number of the cases that were reviewed are resulting in recommendations to the Merit Board of disciplinary actions for employees.

**Monitor's Recommendations:** CCSO should continue to monitor the case flow, ensure that the most serious allegations are prioritized, and bring the workload to current.

b.     Internal investigations shall be conducted by persons who do not have supervisory responsibility for the staff member(s) being investigated.

**March 2014 Compliance Status:**     Substantial compliance.

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:**     Nothing at this time.

**Monitor's Recommendations:** None at this time.

c.     CCDOC (OPR) shall ensure that all internal investigations will include timely, thorough, and documented interviews of all relevant staff and inmates who were involved, or witnessed, the incident in question.

**March 2014 Compliance Status:**     Substantial compliance.

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** See 35.a.

**Monitor's Recommendations:** See 35.a.

d.       CCDOC [OPR] shall ensure that internal investigation reports shall include all supporting evidence, including witness and participant statements, policies and procedures relevant to the incident, physical evidence, video or audio recordings, and relevant logs.

**March 2014 Compliance Status:**     Substantial compliance.

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** Case files are in order.

**Monitor's Recommendations:** None at this time.

e.       CCDOC (OPR) shall ensure that all investigatory staff will receive pre-service and in-service training on appropriate investigative policies and procedures, the investigative tracking process, investigatory interviewing techniques and confidentiality requirements.

**March 2014 Compliance Status:**     Substantial compliance.

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:** Nothing at this time.

**Monitor's Recommendations:** None at this time.

f.       CCDOC shall provide all investigators who will be assigned to conduct investigations of use of force incidents with specialized training in investigating use of force incidents and allegations .

**March 2014 Compliance Status:**     Substantial compliance.

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** Nothing at this time.

**Monitor's Recommendations:** None at this time.

g.    CCDOC [OPR] shall ensure that the results of each internal investigation shall be documented in an investigation report. CCDOC administration shall review the investigation reports, along with the underlying documentation, and take appropriate action. CCDOC shall implement appropriate remedies based upon the results of internal investigations.

**March 2014 Compliance Status:**    Substantial Compliance.

**Status Update:**  Remains in substantial compliance.

**Monitor's Assessment:**  Nothing at this time.

**Monitor's Recommendations:**  None at this time.

### 36.    Inmate Disciplinary Process

a.    CCDOC shall maintain policies, procedures, and practices for a formal disciplinary process, including prompt issuance of written disciplinary citations, administrative review and disciplinary reports for alleged minor rule violations, and due process for alleged major rules violations, in accordance with generally accepted correctional standards.

**March 2014 Compliance Status:**    Substantial compliance

**Status Update:** Written directive [11.14.8.0] was effective 12/22/11.

**Monitor's Assessment:** The Inmate Disciplinary Unit is functioning.  Their year end report for 2013 indicated that 9,675 reports were written in 2013 (an increase of 8% over 2012).  Of those 2013 reports, 7.002 resulted in findings of guilty, 1,526 as not guilty, 249 as expired, 268 as invalid, 430 inactive for inmates no longer in the facilities or transferred.  Importantly, there were 341 requests for review of an inmate's file by the Cermak psychological staff after the hearings so that mental health practitioners can assess the inmate's condition prior to a decision on housing to serve disciplinary sanctions, an increase of 82% of referrals over 2012. The unit maintains statistics by division.

As a result of the work done for the classification update, the data for past inmate discipline, by inmate, is readily accessible for review by the Unit.

**Monitor's Recommendations:**  Continue to track data.  As the new information system comes on-line, gather and analyze data by type of offense.

b.    CCDOC shall ensure that inmate disciplinary hearings are conducted in a reasonably private and secure setting.

**March 2014 Compliance Status:**    Substantial compliance

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** Space is identified in each division.

**Monitor's Recommendations:** None at this time.

c.     CCDOC shall ensure that all inmates placed in lock down status are provided with appropriate due process that has been developed and implemented in policies and procedures, in accordance with generally accepted correctional standards.

In an emergency, the Executive Director of CCDOC may order a lock down of entire areas of the Facility in order to control the situation and address serious security concerns. In such circumstances, it is not necessary to provide disciplinary hearings to each inmate affected by the lock down. However, lock downs of this nature shall be limited to only the time and scope necessary to address the emergency. For the purposes of this Agreed Order, a "lock down" shall not include the routine instances in which inmates are confined to their cells, including periods of count, over night, shift change, movement, and routine contraband sweeps.

**March 2014 Compliance Status:**     Substantial compliance.

**Status Update:** Substantial compliance

**Monitor's Assessment:** I interviewed the inmates held in lock-down (SI), and in other units in Division 9, and while they were not uniformly happy with the disciplinary process, no inmate provided an examples of not receiving their notice of charges, or having a hearing. They did not always agree with the charges or the outcome of the hearing.

**Monitor's Recommendations:** None at this time.

d.     CCDOC shall ensure that the disciplinary board's written record accurately reflects the testimony and discussion from the disciplinary hearing, including any recommendations from a mental health professional regarding the extent to which disciplinary charges are related to an inmate's serious mental illness or suggestions for minimizing the deleterious effect of disciplinary measures on the mental health status of the inmate.

**March 2014 Compliance Status:**     Substantial compliance

**Status Update:** Remains in substantial compliance

**Monitor's Assessment:** See 36.a., b. I will evaluate a sampling of disciplinary reports during the next tour.

**Monitor's Recommendations:** See 36.a., b.

e.     CCDOC shall alert Cermak when inmates are placed in disciplinary segregation or protective custody.

**March 2014 Compliance Status:** Substantial compliance.

**Status Update:** The process continues to work without the aid of technology, but is expected to improve with the new information system. In my meeting with Cermak leadership they expressed no concerns.

**Monitor's Assessment:** Nothing at this time.

**Monitor's Recommendations:** Continue to evaluate processes, especially after the new jail information system is implemented.

f.     CCDOC shall permit a Cermak Qualified Mental Health Staff member to serve on the disciplinary board.

**March 2014 Compliance Status:** Substantial Compliance.

**Status Update:** Cermak has declined to have a staff member sit on the disciplinary board. Cermak reports that they have input, most of time, regarding mental health clients, help in pre-hearing segregation, prior to sentencing, and during their time in disciplinary segregation.

**Status Update:** Remains in substantial compliance.

**Monitor's Assessment:** Nothing at this time.

**Monitor's Recommendations:** Continue to evaluate processes.

### 37.   Classification

a.     CCDOC shall maintain policies and procedures for an appropriate, objective classification system that separates inmates in housing units by classification levels in order to protect inmates from unreasonable risk of harm. The system shall include consideration of an inmate's security level, severity of current charge, types of prior commitments, suicide risk, history of escape attempts, history of violence, and special needs. CCDOC shall use best efforts to anticipate periods of unusual intake volume and schedule sufficient classification staff to timely classify inmates.

**March 2014 Compliance Status:**     Partial compliance

**Status Update:** Dr. Hardyman has produced her final report on March 17, 2014. CCDOC has designated the staff, found appropriate office space in the RCDC, and is preparing for full implementation.

**Monitor's Assessment:** CCDOC needs to fully implement. During this time, attention needs to be paid for any changes needed to housing designations

due to the use of the new system.

CCDOC reports that 21 officers have been added to the booking function in the new RCDC that allows for cross-training. Eight civilian classification specialists have been hired since May 2013. Additionally presentations have been made to newly promoted supervisors, and to each of the pre-service training classes.

**Monitor's Recommendations:** Continue implementation efforts; assure careful review during the implementation phase.

b.       CCDOC shall ensure that classification staff have sufficient access to current information regarding cell availability on each division.

**March 2014 Compliance Status:**       Substantial compliance.

**Status Update:**  The newly implemented procedures by which the Classification staff will be assigning housing, the unit has access to the location of all vacant cells, including cells that may not be available due to repair issues.

**Monitor's Assessment:** In compliance. There has been a transition period during which the staff in the individual facilities have had to get accustomed to the central classification staff making housing assignments.

**Monitor's Recommendation:** Continue to monitor implementation.

c.       CCDOC shall include information on each inmate's assignment to the Special Incarceration Unit "level system" at the Facility in the new Jail Management System, starting with the date the new Jail Management System becomes operational.

**March 2014 Compliance Status:**       Substantial compliance.

**Status Update:** No change from last report

**Monitor's Assessment:** The implementation of the classification system will allow for better tracking on inmates coming into and out of the disciplinary level system.

**Monitor's Recommendation:** None at this time.

d.       CCDOC shall provide training and access to all correctional officer supervisors on the full capabilities of the new Jail Management System's classification and inmate tracking system (or any replacement system).

**March 2014 Compliance Status:**       Substantial Compliance.

**Status Update:** As noted in the Executive Summary, CCDOC will be implementing a new information management system.

**Monitor's Assessment:** Awaiting implementation and re-training. These newer information systems, coupled with the increase in general knowledge in the workforce about using computers, and the user-friendly nature of the system, make implementation less training –driven. I will review at the time of the next tour.

**Monitor's Recommendation:** None at this time.

e. CCDOC shall provide ongoing internal and external review and validation of the inmate classification system to ensure its reliability and objectivity.

**March 2014 Compliance Status:** Substantial compliance.

**Status Update:** The validation report was submitted.

**Monitor's Assessment:** I have reviewed the report and concur with the analysis, findings, and recommendations .

**Monitor's Recommendation:** Continue with classification implementation.

### 38. Inmate Grievance Process

a. CCDOC shall maintain policies and procedures to ensure inmates have access to an adequate grievance process and to ensure that grievances may be accessed and filed confidentially, without requiring the intervention of a correctional officer, in accordance with generally accepted correctional standards. These policies and procedures should be applicable and standardized across all the Facility divisions.

**March 2014 Compliance Status:** Partial Compliance.

**Status Update:** CCDOC continues to work toward compound-wide implementation of the pilot study. A revised draft policy is dated 3/6/14 was provided. The Inmate Services Department that oversees the inmate grievance process reported that between September 2013 and January 2014, 3206 grievances were received, of which 55% were forwarded to Cermak for action, 1.6% to investigations, 4.7% to commissary, 3.5% to facilities management, 2.3% forwarded to CCDOC administration, 3.6% to inmate services, 1.6% to the mail room, 5.3% to OPR, 20% to the divisional superintendent, and 2.5% to support services. The Unit maintains data regarding the breakdown of each category – for example, for support services there were grievances regarding the barbershop, laundry, living conditions, religious services, food services, visitation, inmate payroll, etc. Referrals to OPR were for allegations of physical

misconduct by staff and grievances alleging failure-to-protect.

CCDOC reports that Division 5 (closed in January 2014 with the population drop) and 6 continue to be the site of the pilot program. A longer-term change to involve collaboration between CRWs and corrections staff to enhance inmate access to the grievance process is underway. To assure there is a way for inmates to submit their grievances, CCDOC reports that if an CRW does not get to an assigned, he facility superintendent is notified so that the superintendent can make arrangements to have those units visited, and grievances collected.

CCDOD reports that the data base is being updated with the 2013 and year to date 204 grievances entered into the data based. A sampling of completed grievance forms is provided to counsel for review to assure quality control. The Unit also tracks the length of time to respond to grievances

**Monitor's Assessment**: CCDOC is making a concerted effort to fully implement the grievance process. All inmates have the ability to file grievances, even though the intensive efforts to respond more timely and fully are anchored for now in Division 6.

A concern is that when I reviewed logs in Division 9 – there was not consistent sign-in into the units by CRWs, and it was not clear how long they spent in each unit. This was reported to the Unit's supervisor who will reinforce training about logging, and legibility. [The same issue existed for medical providers' sign-in/sign-out.)

**Monitor's Recommendations:** Expand the full program as soon as practical. Assure logging per the Supervisor's direction; complete the policy/procedure; insure collaboration between officers and CRWs, and improve the data reporting system. As part of the staffing analysis review, there needs to be focus on the staffing levels for CRWs.

b.      CCDOC shall ensure that the grievances receive appropriate follow-up, including informing the grievant of the outcome, providing a timely written response, and tracking implementation of resolutions.

**March 2014 Compliance Status:**      Partial compliance

**Status Update:** See 38.a.

**Monitor's Assessment**: See 38.a. Substantial compliance will be established when the pilot program is fully implemented system-wide.

**Monitor's Recommendations:** See 38.a.

c.     CCDOC shall ensure that grievance forms are available on all units and are available in Spanish. CCDOC shall ensure that there is adequate opportunity for illiterate inmates and inmates who have physical or cognitive disabilities to access the grievance system.

**March 2014 Compliance Status:**     Substantial Compliance

**Status Update:**  Remains in substantial compliance

**Monitor's Assessment:**  Forms available; some minor issues; but form management and availability is a focus of the Inmate Services Department.

**Monitor's Recommendations:** See 38.a.

d.     CCDOC shall ensure that inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, are referred for investigation. A member of the management staff shall review the grievance tracking system regularly in order to identify areas of concern.

**March 2014 Compliance Status:**     Substantial Compliance

**Status Update:** See 31.q.  Grievances are screened and allegations forwarded to OPR.  CCDOC reports that between September 2013 and January 2014, a total of 169 grievances were forwarded to OPR: 138 grievances alleging physical abuse by employees; 13 alleging non-physical abuse by an employee; and 31 alleging failure to protect.

OPR reports that for CY 2013, 253 unduplicated grievances resulted in investigations being opened. Of that count, 141 grievances alleged use of excessive force; 33 alleged failure to protect; and 19 alleged verbal disrespect.

**Monitor's Assessment:**  See 31.q.

**Monitor's Recommendations:** See 31.q.

### 39.    Access to Information

a.     CCDOC shall ensure that newly admitted inmates receive information, through an inmate handbook or orientation video, regarding the following areas: facility rules and regulations; how to report misconduct; how to report sexual abuse or assault; the process for accessing medical and mental health care; emergency procedures; rules for sending and receiving mail; the visitation process; facility schedule; the disciplinary process; and how to seek redress of grievances.

**March 2014 Compliance Status:**     Substantial compliance

**Status Update:** Substantial compliance

**Monitor's Assessment:** I was not able to ask every inmate I interviewed if they had an inmate handbook. The women just moved to RTU- fifth floor didn't have a handbook, which I advised the Superintendent. I'll reevaluate next tour.

**Monitor's Recommendations:** CCDOC conduct their own audit of whether inmates have handbooks, and develop action plans, if necessary.

b.      CCDOC shall ensure that materials on facility rules and services are available for non-literate and non-English speaking inmates.

**March 2014 Compliance Status:**      Substantial compliance.

**Status Update:** Substantial Compliance maintained

**Monitor's Assessment:** I did not have an opportunity to assess the frequency of CRW availability to non-English speakers, and will do that via interviews and log reviews during the next tour.

**Monitor's Recommendations:** Facility superintendents should assess how non-English speakers housed in their divisions are receiving information and services.

**40.**      CCDOC shall provide training and supervision to all correctional officers and supervisors sufficient to implement the provisions of this Agreed Order.

**March 2014 Compliance Status:** Substantial Compliance.

**Status Update:**   Continuing compliance

**Monitor's Assessment:**   There are no issues with continuing compliance.

**Monitor's Recommendations:** Nothing at this time.

### 41.     Inter-Agency Agreement

a.      CCDOC shall enter into a written Inter-Agency Agreement with Cermak that delineates the mutual responsibilities of each party, relative to the provision of health care to inmates at the Facility. The Inter-Agency Agreement shall be finalized within 60 days of the effective date of this Agreed Order.

b.      Cermak shall enter into a written Inter-Agency Agreement with CCDOC that delineates the mutual responsibilities of each party, relative to the provision of health care to inmates at the Facility. The Inter-Agency Agreement shall be finalized within 60 days of the effective date of this Agreed Order.

**March 2014 Compliance Status:**    Substantial compliance.

**Status Update:** On-going function.

**Monitor's Assessment**: On-going meetings; but perhaps need to structure the agenda to meet emerging issues, for example, the staffing analysis.

**Monitor's Recommendations:** None at this time.

**69.**    CCDOC shall ensure that security staff posts will be equipped, as appropriate, with readily available, safely secured, suicide cut-down tools. Coordinate with Dr. Metzner

**March 2014 Compliance Status:**    Substantial Compliance

**Status Update:** The Suicide Prevention Committee continues to meet. One area of concern was wear and tear on the cutting tools. After examination, 9 were replaced.

**Monitor's Assessment**: Data provided by CCDOC indicates that in CY 2013, the rescue tool was used 31 times, and through April 12, 2104, using 13 times in CY 2014.

**Monitor's Recommendations:**   None at this time.